# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LAYNE DREXEL,                                    :
                                               :

        Plaintiff,                               :

                                               :   C.A. No. 05-00428 (JJF)

        v.                                      :

                                               :   Jury Trial Demanded

HARLEYSVILLE INSURANCE CO.,              :

                                               :

        Defendant.                               :

---

## PLAINTIFF'S OPENING BRIEF IN SUPPORT OF
## HIS MOTION FOR SUMMARY JUDGMENT

---

Kathleen M. Miller (ID No. 2898)
Robert K. Beste, III (ID No. 3931)
SMITH, KATZENSTEIN & FURLOW LLP
Post Office Box 410
Wilmington, Delaware 19899
Telephone:   (302) 652-8400
Facsimile:    (302) 652-8405
Email:       rkb@skfdelaware.com

*Attorneys for plaintiff*

May 17, 2007

*Table of Contents*

*Page*

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       i.     Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       ii.    Delaware Substantive Law Governs this Dispute . . . . . . . . . . . . . . . . . 10

       iii.   The Policy Is Clear and Unambiguous—Harleysville
              Failed to Comply with the Policy's 10 Date Advance
              Notice Provision and Its Purported Retroactive
              Cancellation of the Policy Was Not Effective . . . . . . . . . . . . . . . . . . . . . 11

       iv.   Even if Harleysville Can Set Forth Another Reasonable
              Interpretation of the Policy or the Nonpayment Provision,
              Drexel Is Entitled to Summary Judgment Under the
              Principle of Contra Proferentem . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       v.    In the Event the Court Determines Harleysville Failed to
              Terminate Drexel's Coverage Prior to the Date of the Fire,
              Drexel Is Entitled to Recover The Attorneys' Fees and Costs
              Associated with this Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Table of Authorities*

**Cases**                                                                                          **Pages**

*DCV Holdings, Inc. v. ConAgra, Inc.*,
    889 A.2d 954 (Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Delmarva Health Plan, Inc. v. Aceto*,
    750 A.2d 1213 (Del. Ch. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hallowell v. State Farm Mutual Automobile Insurance Co.*,
    443 A.2d 925 (Del. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-18

*Hudson v. State Farm Mutual Automobile Insurance Co.*,
    569 A.2d 1168 (Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Knight v. International Longshoremen's Association*,
    286 F. Supp. 2d 360 (D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*New Castle County v. National Union Fire Insurance Co.*,
    174 F.3d 338 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 16, 18

*New Castle County v. National Union Fire Insurance Co.*,
    243 F.3d 744 (3rd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Phillips Home Builders, Inc. v. Travelers Insurance Co.*,
    700 A.2d 127 (Del. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State Farm Mutual Automobile Insurance Co. v. O'Brien*,
    535 P.2d 46 (Ariz. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Whistman v. West American of the Ohio Casualty Group of Insurance Cos.*,
    686 P.2d 1086 (Wash. Ct. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 19

**Statutes and Other Authorities**                                                                 **Pages**

18 *Del. C.* § 904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 *Del. C.* § 4102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

18 *Del. C.* § 4502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### Nature and Stage of the Proceedings

Plaintiff, Layne Drexel, filed this action in the Superior Court of the State of Delaware, In and For New Castle County, on May 29, 2005. The dispute centers around a policy of property insurance issued by Harleysville Mutual Insurance Company ("**_Harleysville_**") and providing coverage for losses to a property owned by Layne Drexel at all relevant times, specifically 1740 West Fourth Street in Wilmington, Delaware. As the result of a June 22, 2004 fire, that property sustained heavy damage. Harleysville refuses to provide insurance coverage for this damages under its policy of insurance covering the property.

Layne Drexel's complaint sets forth 4 separate claims against Harleysville. First, Layne Drexel avers that Harleysville breached the insurance contract by refusing to provide insurance coverage for the damages to the property sustained during the fire. The second court asserts promissory estoppel and alleges that, due to its actions and the actions of its agents, Harleysville should be estopped from refusing coverage for the fire damage. Third, Layne Drexel avers that Harleysville had no reasonable justification to deny the fire damage claim, that it denied the claim in bad faith, and, accordingly, that Harleysville breached the implied covenant of good faith and fair dealing. If successful, that claim would permit Layne Drexel to recover punitive damages. Lastly, Layne Drexel brings a claim for attorneys' fees and costs under 18 _Del. C._ § 4012.

Harleysville removed the matter to this Court on June 24, 2005 on the basis of diversity of citizenship. Since that removal, the parties engaged in written discovery and document production. Harleysville, however, refuses to allow Drexel to undertake any

1

meaningful discovery aside from that initial round of written discovery and document production. In response, Layne Drexel filed a Motion to Compel and for Sanctions against Harleysville on May 9, 2007, which the parties are briefing. In light of these discovery disputes, Layne Drexel advances this motion for summary judgment on a limited record.[1]

Despite the current discovery disputes, Layne Drexel asserts that no *material* facts with significance to count I (breach of contract) or count IV (attorneys' fees) are in dispute. Accordingly, Layne Drexel filed a motion for summary judgment on May 17, 2007 asserting he is entitled to judgment as a matter of law on counts I and IV. (D.I. 33) This is Layne Drexel's Opening Brief in support of that motion for summary judgment.

---

[1]As detailed in Drexel's Motion to Compel and for Sanctions, Harleysville continues to stonewall in this matter and refuses to provide meaningful discovery responses and depositions. (D.I. 31) In light of the Court's May 18, 2007 dispositive motion deadline (D.I. 24), however, Drexel now moves for summary judgment on the issues set forth herein. Drexel reserves the right to raise additional grounds supporting summary judgment based on future discovery.

## *Summary of Argument*

1.    Plaintiff, Layne Drexel, is entitled to summary judgment on his breach of contract claim, because the language of Harleysville's property insurance policy expressly precludes Harleysville's attempted retroactively cancellation of coverage from being effective prior to the fire at issue. Since the policy language prevents Harleysville's purported cancellation from taking effect prior to the fire, Harleysville must provide coverage for the damages sustained during that fire.

2.    Layne Drexel's interpretation of the policy language set forth in argument 1, *supra*, is a reasonable interpretation of that language. As such, even if Harleysville manages to provide some other reasonable interpretation of the language (which it cannot), the principle of *contra proferentem* requires that the Court give effect to Layne Drexel's reasonable interpretation of the policy language.

3.    If Layne Drexel succeeds in either arguments 1 or 2, he also is entitled to attorneys' fees and other costs under 18 *Del. C.* § 4502.

### *Statement of Facts*

Plaintiff, Layne Drexel ("***Drexel***"), is a Delaware resident who owned 1740 West Fourth Street in Wilmington, Delaware (the "***Property***") at all relevant times. *See* Compl., ¶3 (Ex. A). Defendant, Harleysville Mutual Insurance Company ("***Harleysville***"), insured the Property against certain losses as specified in its Commercial Package Policy No. MPA 812988 (the "***Policy***"). *See* Ex. B. Drexel first insured the Property with Harleysville in June 1999. *See* Ex. A, ¶4; Answer, ¶4 ("Harleysville insured Drexel's property . . . from June 1999 . . . . ") (Ex. C). The Policy required Drexel to pay premiums at certain times in each successive year, as demonstrated by Harleysville's Premium Invoices from 2002, 2003, and 2004. *See* Exs. D, E, & F, respectively.[2]

The Policy contains a specific provision governing how Harleysville may cancel the Policy based on Drexel's nonpayment of a premium (the "***Nonpayment Provision***"):

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation *at least*:
> a.　　 *10 days before the effective date of cancellation* if we cancel *for nonpayment of premium* . . . .

Ex. B at 481 (emphasis added). No other provisions of the Policy detail the method of policy cancellation or expiration based on Drexel's nonpayment of a premium. *Id.*, *passim*. Further, the Policy does not address the consequences of late premium payments. *Id.*

On March 26, 2004, Harleysville issued Commercial Policy Package MPA 812988 to Drexel. *See* Ex. B at 471. In conjunction therewith, Harleysville advised Drexel that "[w]e renew this policy for the period [of June 8, 2004 to June 8, 2005] in return for your

---

[2]Despite Drexel's request, Harleysville failed to produce the Premium Invoices from 2000 or 2001.

payment of the premium." *Id.* at 472.  The policy package, however, does not condition the renewal on Harleysville's receipt of Drexel's premium payment prior to the renewal date. *Id.*

Also on March 26, 2004, Harleysville issued its 2004 Premium Invoice and requested the premium by June 8, 2004.  *See* Ex. F.  That invoice specifically advised Drexel of the potential consequences on late premium payments (in language mirroring the Nonpayment Provision):

> **LATE PAYMENTS:**
> Minimum due shown on the front of this invoice must be received by the company on or before the due date shown *to avoid issuance of a notice of cancellation for nonpayment of premium.  If a cancellation notice issues*, all amounts past due plus the current installment must be paid to reinstate your policy. . . .  The company must receive this payment *before the cancellation effective date*.

*Id.* (emphasis added).  With this language, in conjunction with the Nonpayment Provision, Harleysville informed Drexel that it had a right to cancel the Policy for nonpayment of premium with 10 days notice *prior to* the effective date of cancellation.  *See also* Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured *written notice of cancellation at least . . . 10 days before the effective date of cancellation* if we cancel for nonpayment of premium . . . .") (emphasis added).  Harleysville did not receive Drexel's premium payment by June 8, 2004.

On or about June 14, 2004, it appears that Harleysville issued a "No-pay Invoice" to Drexel, purportedly establishing a policy cancellation date of June 30, 2004 (after the fire). Despite *repeated* requests and Drexel's motion to compel (D.I. 31), Harleysville refuses to produce this alleged nonpayment invoice sent to Drexel (or, alternatively, to confirm its

5

inability to produce the invoice).  Harleysville's claim file, nonetheless, appears to show that Harleysville sent the invoice.  *See* Ex. G at 200 ("ADV. RENEWAL PROCESSED 3/26/04 W/ INVOICE.  NO MONIES REC'D AND ON 6/14/04 SENT NP INVOICE FOR $283.80 DUE 6/30/04."), 209 ("The non-pay issued on 06/14/04 asking for $283.80 due before the can date of 06/30/2004.").  *See also* Ex. H at 654.  Assuming *arguendo* that Harleysville actually sent this notice on June 14, 2007, and further assuming *arguendo* this nonpayment invoice set the cancellation effective date for June 30, 2004, the Nonpayment Provision of the Policy prevents Harleysville from cancelling the Policy for nonpayment of premium prior to June 24, 2004—*two days after the fire*.  *See* Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation *at least . . . 10 days before the effective date of cancellation* if we cancel *for nonpayment of premium . . . .*") (emphasis added).  Of course, it appears Harleysville's nonpayment invoice set June 30, 2004 as the effective cancellation date—*8 days after the fire*.

On June 22, 2004, fire partially destroyed the Property.  Harleysville's adjuster remarks confirm that Drexel notified Harleysville of the fire, that Harleysville acknowledged the claim, and that Harleysville began to investigate the fire and adjust the claim.  *See* Ex. I at 203–04.  Drexel subsequently paid the late premium to Harleysville, which Harleysville deposited and, on July 14, 2004, caused Drexel's bank to pay Harleysville the premium of $283.80.  *See* Ex. J.  After accepting and depositing Drexel's 2004 premium, Harleysville attempted to refund that premium on or about July 15, 2004 by issuing him a check for the same amount.  *See* Ex. K.  Drexel neither accepted nor negotiated that purported refund and, as such, Harleysville continues to hold the premium payment at issue.  *Id.*

On July 7, 2004, 15 days *after* the fire it had been notified of, Harleysville took the action which is central to this lawsuit. Specifically, it purported to retroactively cancel the Policy based on Drexel's nonpayment of the premium, effective June 8, 2004, by asserting the policy "expired" when Drexel failed to pay the premium. *See* Ex. L. More importantly, however, the "Confirmation of Termination" explicitly states: "The interest of the Loss Payee/Mortgagee will cease at the above cancellation or termination date, or 15 days from the issue date of this notice, *whichever is later*." *Id.* (emphasis added). By it own terms, this notice is not effective until *15 days after the issue date of July 6, 2004*, a date long after the fire at issue.

Of note, Harleysville failed to produce a copy of the notice allegedly sent to Drexel, instead producing only a copy of a notice sent to Ocwen Federal Bank (Ocwen held a mortgage on the Property until late in 2002). *See* Ex. L.[3] Despite Harleysville's purported "expiration" notice (which it cannot prove it actually sent to Drexel), Harleysville's claim file shows that it *cancelled* Drexel's policy for nonpayment of the initial 2004 premium installment. *See, e.g.*, Ex. M at 208 ("According to our records your policy was cancelled for non-payment of premium."), at 209 ("The policy confirmed cancellation on 7/6/04 effective for 6/30/04."), at 211 ("The captioned policy was cancelled for non-payment . . . ."), at 212 ("[A]ccording to the info we have, policy was cancelled due to non payment.").

---

[3]Although the purported notice of expiration indicates that Harleysville sent an "additional copy" to Drexel, neither Harleysville nor Drexel possess such a document (or, at least, Harleysville has failed to produce yet another document). *Id.* Harleysville has not produced any proof of mailing with respect to this notice purportedly sent to Drexel.

Despite its purported cancellation, Harleysville continued for, several months, to adjust the claim and work with the contractors, third parties, and Drexel to complete the repairs to the Property. On August 13, 2004, Harleysville issued Drexel a check to cover the repairs. *See* Ex. N. Harleysville later cancelled this check on the same day it was issued to Drexel. *See* Ex. K.

## *Argument*

As Drexel will demonstrate, the Policy language at issue lends itself to straightforward application under the facts of this case.  At the very least, Drexel's interpretation of the Policy is reasonable and, consequently, the Court should enforce his interpretation even if Harleysville offers another reasonable interpretation of the Policy under the principle of *contra proferentem*.

### i.     *Standard of Review*

This Court articulated the standard of review applicable to Drexel's motion for summary judgment based on Rule 56 of the Federal Rules of Civil Procedure as follows:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976).  However, a court should not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 . . . .  Thus, to properly consider all of the evidence, the "court should give credence to the evidence favoring the non-movant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 . . . (1986)).

> To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to show that there is more than "some metaphysical doubt as to the material facts . . . .  In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 . . . (1986) (quoting Fed. R. Civ. P. 56(c)).  Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a

> court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
> 242, 252 . . . (1986).

*Knight v. Int'l Longshoremen's Assoc.*, 286 F. Supp. 2d 360, 363–64 (D. Del. 2003).

As Drexel demonstrates herein, he is entitled to summary judgment because all *material* facts are undisputed and Delaware law dictates that, at least in these circumstances, the Court should interpret the Policy as a matter of law.

### ii.    *Delaware Substantive Law Governs this Dispute*

Harleysville, a Pennsylvania corporation, removed this action from Delaware's Superior Court based on diversity of citizenship.  (D.I. 1, ¶¶ 4–6)  The suit involves a property insurance policy covering commercial property situated in Delaware and owned at all relevant times by Drexel, a Delaware resident.  *See*, *e.g.*, Ex. A, ¶¶1–4.  This Court, therefore, should apply the law of the State where the dispute arose and the Property is situated—Delaware.  *See*, *e.g.*, *New Castle County v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 342 (3rd Cir. 1999) (holding Delaware substantive law applies to a dispute between a Pennsylvania insurer and New Castle County arising out of policies issued to New Castle County and insuring activities in Delaware); *New Castle County v. Nat'l Union Fire Ins. Co.*, 243 F.3d 744, 749 (3rd Cir. 2001) (same).

In these circumstances, under Delaware substantive law, the interpretation of a disputed contract is for the Court to decide as a matter of law.  *See*, *e.g.*, *Hudson v. State Farm Mut. Auto. Ins. Co.*, 569 A.2d 1168, 1170 (Del. 1990) ("A court's interpretation of an insurance policy is a determination of law.") (citation omitted).

### iii.     *The Policy Is Clear and Unambiguous—Harleysville Failed to Comply with the Policy's 10 Date Advance Notice Provision and Its Purported Retroactive Cancellation of the Policy Was Not Effective*

On March 26, 2004, Harleysville send Drexel the 2004 policy package and advised him that "[w]e renew this policy for the period [of June 8, 2004 to June 8, 2005] in return for your payment of the premium." Ex. B at 472.  Harleysville did not, however, condition the renewal on Drexel's payment of the premium by any specific date. *Id.*  Although Drexel's 2004 premium arrived late, it did arrive and Harleysville deposited the check and caused the funds to be withdrawn from Drexel's account. *See* Ex. J.

The Policy is clear and the Court should enforce its plain meaning.  Under the Nonpayment Provision, Harleysville must provide written notice of cancellation *at least 10 days prior to the effective date of cancellation*.  The specific language provides:

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation *at least*:
> a.        *10 days before the effective date of cancellation* if we cancel *for nonpayment of premium . . . .*

Ex. B at 481 (emphasis added).  This language, by its explicit terms, applies to all "nonpayment[s] of premium," and it does not exclude any types of premium payments from its purview.  The Policy contains no provisions pertaining to Harleysville's purported ability to allow the Policy to "expire" if Drexel failed to make a timely premium payment. *Id.*, *passim*.  Further, it contains no language indicating Drexel's failure to pay a "renewal" premium would be treated any differently from another "nonpayment of premium" under the Nonpayment Provision. *Id.*  Rather, the Nonpayment Provision expressly requires Harleysville to provide 10 days advance notice when it cancels the Policy for *any* "nonpayment of premium." *Id.* at 481.

11

Regardless of whether Harleysville describes the termination in coverage as a "cancellation," an "expiration," or a "lapse," it cannot dispute that it refuses to pay Drexel's claim based on his failure to pay the 2004 premium installment in a timely fashion. This fact is confirmed repeatedly by Harleysville's own materials. For example, Harleysville wrote Drexel on September 14, 2004 to formally advise Drexel it would not provide coverage for the fire damage:

> According to our records *your policy was cancelled for non-payment of premium*. The effective date of cancellation was 6/8/04. Since the fire loss of 6/22/04 occurred after the cancellation date we are unable to afford you coverage under the policy.

Ex. M at 208 (emphasis added). Harleysville's claim file also shows that it cancelled the Policy due based on Drexel's failure to pay the premium in a timely fashion. *See id.* at 209 ("The policy confirmed cancelled on 7/6/04 effective for 6/30/04."), at 211 ("The captioned policy was cancelled for non-payment . . . ."), at 212 ("[A]ccording to the info we have, policy was cancelled due to non payment."). As such, Harleysville cannot seriously maintain it refuses to cover the claim for any reason aside from Drexel's "nonpayment of [a] premium." *See* Ex. B at 481.

Aside from Harleysville's assertion that the policy "expired" due to Drexel 's failure to pay the 2004 premium, *see* Ex. L, it has not offered any other authority or justification supporting its cancellation of the Policy.[4] Presumably, Harleysville will argue Drexel failed

---

[4]As detailed in Drexel's motion to compel (D.I. 31), Harleysville has prevented any depositions of its employees from occurring (or, more accurately, any meaningful depositions). Due to that failure, Drexel must assume that Harleysville's sole justification for cancellation of his coverage was his failure to pay the partial 2004 premium in a timely fashion as shown by Exhibit N.

to renew the Policy by paying the premium late, and thus that the Policy simply expired. In order to make this argument, Harleysville must assert that Drexel's failure to pay a *renewal premium* (*i.e.*, the first premium installment due during each successive 1 year coverage term) should be treated differently that a failure to pay a *mid-period premium* and, consequently, that the Policy's Nonpayment Provision does not require 10 days advance notice when Harleysville cancels coverage due to nonpayment of a renewal premium. Conversely, Harleysville must assert that the Nonpayment Provision applies *only* to mid-period premiums, as opposed to all premium payments—*despite the fact that the Nonpayment Provision contains absolutely no language limiting its application to specific premium payments*. The actual insurance contract between the parties undercuts Harleysville's assertion, as the language requires Harleysville to provide notice of cancellation 10 days prior to the *effective date of any cancellation based on Drexel's* "*nonpayment of premium*" regardless of whether the premium at issue is a renewal premium or an installment premium. Ex. B at 481. Further, Harleysville's expiration argument ignores the absence of *any* contract provisions detailing when or how the policy can "expire" when a premium payment is late. Ex. B, *passim*.

When interpreting the Policy language at issue, Delaware law mandates a plain meaning, common sense approach. The Court must also read the language in the context of the entire Policy. *See*, *e.g.*, *National Union*, 174 F.3d at 343 (applying principles of contract interpretation under Delaware law) (citations omitted). Here, there is no dispute that Harleysville refused coverage based on Drexel's failure to make his premium payment in a timely fashion. The Nonpayment Provision identifies the *possible* consequences of such a

failure—Harleysville *can* cancel coverage with 10 days *advance* notice *prior to the effective date*. *See* Ex. B at 481. No other provisions of the Policy are implicated here. *Id.*, *passim*. If Harleysville terminates coverage due to Drexel's nonpayment of a premium, which it did here, that cancellation cannot take effect until 10 days after Harleysville issues its cancellation notice. Until the effective date arrives, however, the Policy remains in full force. The Policy does not provide for any lapse or expiration of coverage between when Harleysville issues a notice of cancellation and the effective date of that cancellation. *Id.* Thus, unless Harleysville can demonstrate it cancelled the Policy on or before June 11, 2004 (10 days prior to fire on June 22, 2004), the coverage was intact at the time of the fire and Harleysville must pay the claim. Of course, Harleysville is unable to supply such proof.

The Washington Court of Appeals interpreted substantively identical language in *Whistman v. West American of the Ohio Casualty Group of Insurance Cos.*, 686 P.2d 1086 (Wash. Ct. App. 1984). The policy at issue in *Whistman* provided: "'When you have not paid the premium . . . we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect.'" *Id.* at 1088.[5] The Court, interpreting that language, held:

> The reference to "premium" *is not limited to premiums paid during the term of insurance and reasonably could be read as including premiums due in order to effect renewal*. . . .
>
> [W]e construe the policy language here as requiring West to give 10 days notice prior to cancellation for failure to pay a renewal premium. Since West's notice of cancellation was not effective prior to the date of the fire loss, that loss is covered by the policy.

---

[5]*See also* Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least . . . 10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .").

14

*Id.* at 1088–89 (emphasis added). As in *Whistman*, the Nonpayment Provision governs the impact of Drexel's nonpayment of *any* premium, and it fails to provide for differing treatment of premium payments depending on when the premium is due. The Court, therefore, should enforce the plain language of the Nonpayment Provision and require 10 days notice prior to the effective date of the cancellation when it is based on Drexel's nonpayment of a premium.

Prior to learning of the extensive damage to the Property, Harleysville itself interpreted the Nonpayment Provision in the manner Drexel advances here. Harleysville first requested the premium at issue in its 2004 premium invoice. *See* Ex. F. In that invoice, Harleysville explained:

> **LATE PAYMENTS:**
> Minimum due shown on the front of this invoice must be received by the company on or before the due date shown *to avoid issuance of a notice of cancellation for nonpayment of premium.*

*Id.* (emphasis added). *See also* Ex. L ("The interest of the Loss Payee/Mortgagee will cease at the above cancellation or termination date, or 15 days from the issue date of this notice, whichever is later."). As Harleysville explained, Drexel's nonpayment of the premium gives Harleysville the right to issue a cancellation notice. The only language in the Policy giving Harleysville such a right, however, is the Nonpayment Provision. *See* Ex. B at 481. Importantly, the Nonpayment Provision mandates that Harleysville provide notice of cancellation 10 days prior to the effective date of the cancellation. *Id.* Since Harleysville did not issue a notice 10 days prior to the fire, coverage was intact on the day of the fire.

Lastly, the Policy contains one—*and only one*—provision detailing the impact of Drexel's nonpayment of a premium. Even if Harleysville could fashion an "expiration"

argument from a hodgepodge of language in the Policy (which it cannot), Delaware law requires that Court give effect to the specific nonpayment of premium language in the contract over any other general language. The Delaware Supreme Court has stated this rule in express language:

> Well-settled rules of contract construction require that a contract be construed as a whole, giving effect to the parties' intentions. *Specific language in a contract controls over general language, and where specific and general provisions conflict, the specific provisions ordinarily qualifies the meaning of the general one.*

*DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005) (citations omitted, emphasis added). *See also Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 927 (Del. 1982) ("[T]he Court will look to the reasonable expectations of the insured . . ." and refused to enforce a policy that "contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print."); *Delmarva Health Plan, Inc. v. Aceto*, 750 A.2d 1213, 1216 (Del. Ch. 1999) ("Because the procedure fits so easily within the policy's definition of covered services, an exclusion should not be lightly inferred but must rest on a 'limitation' or 'exclusion' deriving from a natural and unrestrained reading of other language in the policy."). Here, the Policy's Nonpayment Provision specifically details the possible consequences of Drexel's failure to pay a premium in a timely fashion, and the Court should enforce that language. *See also National Union*, 174 F.3d at 343 ("'Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it,' . . . because 'creating an ambiguity where none exists could, in effect, create a new contract with rights, liabilities and duties to which the parties ha[ve] not assented.'") (citations omitted, alteration in original).

16

> **iv.** *Even if Harleysville Can Set Forth Another Reasonable Interpretation of the Policy or the Nonpayment Provision, Drexel Is Entitled to Summary Judgment Under the Principle of Contra Proferentem*

Based on the straightforward interpretation of the Policy detailed above, Drexel respectfully submits his interpretation of the Nonpayment Provision, and the Policy as a whole, is a reasonable interpretation of the language at issue. *See*, *e.g.*, *Hallowell*, 443 A.2d at 926 ("[A] doctrine has emerged in insurance law which, in essence, states that an insurance policy should be construed 'to effectuate the reasonable expectations of the average member of the public who buys it . . . .'") (citation omitted). The reasonableness of Drexel's interpretation is demonstrated not only by the language of the Policy, but also the court's opinion in *Whistman*. *See Whistman*, 686 P.2d at 1088 ("[W]e construe the policy language here as requiring West to give 10 days notice prior to cancellation for failure to pay a renewal premium. Since West's notice of cancellation was not effective prior to the date of the fire loss, that loss is covered by the policy."). Moreover, Harleysville's own pre- and post-fire interpretations of the Nonpayment Provision buttresses the reasonableness of that interpretation. *See* Ex. L ("The interest of the Loss Payee/Mortgagee will cease at the above cancellation or termination date, or 15 days from the issue of this notice, whichever is later."); Ex. F ("Minimum due shown on the front of this invoice must be received by the company on or before the due date shown to avoid issuance of a notice of cancellation for nonpayment of premium.").

Assuming the Court agrees that Drexel's interpretation of the Policy is reasonable, Delaware law mandates that the Court give effect to Drexel's interpretation under the principle of *contra proferentem*—even if Harleysville shows that another interpretation is

reasonable. Such a showing here would only demonstrate that the Policy is ambiguous and require that the Court give effect to Drexel's interpretation. Under Delaware law, "'[t]he settled test for ambiguity is whether the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'" *National Union*, 174 F.3d at 344 (quoting *Phillips Home Builders, Inc. v. Travelers Ins. Co.*, 700 A.2d 127, 129 (Del. 1997)). If the Policy is susceptible to more than 1 reasonable interpretation:

> [D]ue to the insurer's dominant position, when an ambiguity is found in an insurance policy language, [the Court] must construe the language against the insurer as a matter of Delaware law. And therefore, unlike other types of contracts, [the Court] need not inquire into the parties' actual intent.

*National Union*, 174 F.3d at 343–44 (citations omitted). *See also Hallowell*, 443 A.2d at 926 ("[A]n ambiguity exists when the language in a contract permits two or more reasonable interpretations.") (citation omitted). Thus, as a matter of Delaware law, even if Harleysville demonstrates an alternate interpretation of the Policy or the Nonpayment Provision is reasonable, the Court should hold that the Policy continued to provide coverage on the date of the fire.

In 1975, the Arizona Court of Appeals held that substantively identical language is ambiguous and susceptible to more that 1 reasonable interpretation. That court considered a cancellation provision which provided that: "notice of cancellation for non-payment shall be mailed to the named insured not less than 10 days prior to the effective date thereof."

*State Farm Mut. Auto. Ins. Co. v. O'Brien*, 535 P.2d 46, 48 n.1 (Ariz. Ct. App. 1975).[6]  The

Court held:

> In reviewing the various policy provisions, we find that the trial court was
> justified in holding that the provisions are ambiguous and therefore should
> be construed in a manner most favorable to the insured.  *The appellant's
> contention that the policy automatically expired at the end of the policy
> period is clouded by that clause which states that cancellation for
> nonpayment shall not occur without prior notice.*

*Id.* at 48 (emphasis added).  The *Whistman* court, at least in part, also based its holding on

ambiguity in substantively identical language.  *See Whistman*, 686 P.2d at 1088 ("It is a well-

settled rule of construction that ambiguities in insurance policies are resolved in favor of the

interpretation which provides coverage. . . . Accordingly, we construe the policy language

here as requiring West to give 10 days notice prior to cancellation.") (citation omitted).

Consequently, although Drexel asserts Nonpayment Provision is clear and

unambiguous in the present circumstances (*see* subsection (iii), *supra*), the Court should

apply Drexel's interpretation even if Harleysville can rebut Drexel's interpretation with

another reasonable interpretation, under the principle of *contra proferentem*.

### v.     *In the Event the Court Determines Harleysville Failed to Terminate Drexel's Coverage Prior to the Date of the Fire, Drexel Is Entitled to Recover The Attorneys' Fees and Costs Associated with this Suit*

In the event the Court rules in Drexel's favor on the issue of coverage under the

Policy (on the basis of either argument advanced above), Drexel is entitled to recover the

---

[6]*See also* Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first
Named Insured written notice of cancellation at least . . . 10 days before the effective date
of cancellation if we cancel for nonpayment of premium . . . .").

attorneys' fees and other costs he incurred in prosecuting this action as a matter of law. *See* 18 *Del. C.* § 4102 ("The court upon rendering judgment against any insurer upon any policy of property insurance, as 'property' insurance is defined in § 904 of this title, shall allow the plaintiff a reasonable sum as attorney's fees to be taxed as part of the costs."); 18 *Del. C.* § 904 ("Property insurance is insurance on real or personal property of every kind and of every interest therein against loss or damage from any and all hazard or cause, and against loss consequential upon such loss or damage, other than noncontractual legal liability for any such loss or damage."). Drexel respectfully requests that the Court award him the attorneys' fees and other expenses associated with this action, pursuant to 18 *Del. C.* § 4102.

### *Conclusion*

The plain, unambiguous language of Harleysville's insurance policy prevents Harleysville from retroactively cancelling coverage and from cancelling the coverage with less than 10 days advance notice.  Since Harleysville failed to cancel the coverage at issue at least 10 days prior to the fire at issue, the policy continued to provide coverage on the day of the fire, and Layne Drexel is entitled to coverage.

Moreover, even if Harleysville comes forward with an alternate, but reasonable, interpretation of the language at issue, the Court should apply the principle of *contra proferentem* and construe the policy in Drexel's favor.

If the Court determines that Harleysville must provide coverage for the fire, Layne Drexel is entitled to recover the attorneys' fees and costs incurred in prosecuting this action from Harleysville.


SMITH, KATZENSTEIN & FURLOW LLP

    */s/ Robert K. Beste*
Kathleen M. Miller (ID No. 2898)
Robert K. Beste, III (ID No. 3931)
Post Office Box 410
Wilmington, Delaware 19899
Telephone:    (302) 652-8400
Facsimile:    (302) 652-8405
Email:        rkb@skfdelaware.com

*Attorneys for plaintiff*