**EXHIBIT A**



## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| LAYNE DREXEL, | : | |
| Plaintiff, | : | C.A. No. 05C-05–_____ |
| v. | : | Arbitration Case |
| HARLEYSVILLE INSURANCE CO., | : | Jury Trial Demanded |
| Defendant. | : | |

### COMPLAINT

1.     Plaintiff, Layne Drexel, is an adult resident of the State of Delaware, residing at 1910 Old Capitol Trial in Newark, Delaware.

2.     Defendant, Harleysville Insurance Company (hereinafter "**Harleysville**"), upon information and belief, is an insurance corporation licensed to sell insurance in the State of Delaware, authorized to conduct business in the State of Delaware, and is subject to service through the Insurance Commissioner of the State of Delaware under the provisions of 18 *Del. C.* § 525.

3.     Layne Drexel, at all relevant times, was the fee simple owner of certain real estate located within the State of Delaware, namely 1740 W. 4th Street in Wilmington, Delaware (hereinafter "**Insured Premises**"). Layne Drexel operated the Insured Premises as a rental property, which consisted of 1 commercial and 2 residential rental units.

4.     Commencing in approximately June 1999, Layne Drexel insured the Insured Premises through defendant, Harleysville, under Commercial Package Policy No. MPA 812988 ("**Commercial Policy**"). Layne Drexel renewed the Commercial Policy on a

10001339.WPD

continuing basis through June 8, 2005. Harleysville issued the Commercial Policy in effect for the period of June 8, 2004 to June 8, 2005 on or about March 26, 2004.

5.      The Commercial Policy provides coverage for losses sustained, caused, and related to fires, including accidental fires.

6.      The Commercial Policy was in full force and effect between June 8, 2004 and June 8, 2005.

7.      Upon information and belief, on or about June 18, 2004, Harleysville mailed a letter to Layne Drexel indicating that $283.80 in premium payment was due under the terms of the Commercial Policy (hereinafter **"Premium Letter"**).

8.      On June 22, 2004, the Insured Premises sustained serious damage as the result of an accidental fire.

9.      On or about June 22, 2004, Layne Drexel submitted a claim for coverage under the Commercial Policy, which Harleysville acknowledged that same day. Layne Drexel made a claim for the damage to the Insured Premises and for lost of income.

10.     Layne Drexel, upon receipt of and in response to the Premium Letter after the fire, promptly forwarded a draft (hereinafter **"Draft"**) in the amount of $283.80 to Harleysville to cover the premiums due under the terms of the Commercial Policy.

11.     Harleysville received, accepted, negotiated, and subsequently received good funds from Layne Drexel under the terms of the Draft.

12.     Following the fire, Tower Insurance Services Inc. (hereinafter "**Tower Services**"), by and through, among others, its employee, agent, or representative George Powell, both of which were acting as the agents, employees, or representatives of

Harleysville, notified Layne Drexel that Harleysville assigned to Tower Services the task of investigating and adjusting Layne Drexel's claim in relation to the fire under the Commercial Policy.

13.    On multiple occasions, Tower Services assured and advised Layne Drexel that Harleysville would assume and pay all costs associated with the repair and restoration of the Insured Premises, including the payment of certain other compensation such as lost rental revenue, covered under the terms of the Commercial Policy due to the loss from the fire. Tower Service's assurances included an offer, on behalf of Harleysville, to pay lost income coverage as those losses occurred.

14.    Upon information and belief, Tower Services, as directed and authorized by Harleysville, retained, hired, and instructed Booth Insurance Restorations (hereinafter "**Booth Restorations**") to make necessary repairs to the Insured Premises, and in the process again, and repeatedly over the course of several weeks, assured Layne Drexel that Harleysville would and was assuming the cost of repair to the Insured Premises.

15.    On or about August 1, 2004, Tower Services, on behalf of Harleysville, notified Booth Restorations that "Certainly, Mr. Drexel is encouraged to begin repair actively for the fire that occurred over one month ago . . . . "

16.    By or shortly after mid-August 2004, Booth Restorations completed the necessary repair and restoration to the Insured Premises under the approval, supervision, and direction of Tower Services.

17.    On or about August 9, 2004, Booth Restorations and Tower Services reached an agreement whereby Booth Restoration would repair the Insured Premises for $49,877.20.

Booth Restorations commenced, and subsequently completed, the repairs to the Insured Premises.

18.    In a letter dated September 14, 2004, Harleysville notified Layne Drexel for the first time that it canceled the Commercial Policy for non-payment of premium and was refusing to pay for the repairs and restoration of the Insured Premises, which were performed at Harleysville's request and pursuant to its direction. Harleysville September 14, 2004 denial was clearly without any reasonable justification.

<u>**Count I — Breach of Contract**</u>

19.    Layne Drexel repeats, re-alleges, and incorporates by reference herein the foregoing paragraphs 1 through 19.

20.    At all relevant times, the Commercial Policy was in full force and effect and all premiums associated with the policy were fully paid. Layne Drexel complied with all of the terms and conditions of the policy.

21.    Pursuant to the terms of the Commercial Policy, the June 22, 2004 fire in the Insured Premises, and the damages and consequential losses associated thereto, is a Covered Cause of Loss.

22.    Pursuant to the terms of the Commercial Policy, Harleysville is required to pay for the complete cost of restoration and repair to the Insured Premises, as well as pay the claim for lost income.

23.    Harleysville's refusal to pay for the covered losses related to the June 22, 2004 fire is a material breach of the Commercial Policy and contact of insurance, as well as obligations thereto implied as a matter of law.

24.    As a direct result of Harleysville's breach of the Commercial Policy, Layne Drexel has sustained damages in the amount of $53,675.20; which is comprised of $49,877.20 in repair expenses, $618.00 in lost income for the commercial unit (representing 1 month's rent), and $2,180.00 in lost income from the residential units (representing 2 months' rent for 2 units at $545.00 a month).

## Count II — Promissory Estoppel

25.    Layne Drexel repeats, re-alleges, and incorporates by reference herein the foregoing paragraphs 1 through 24.

26.    Through their actions, representations, and directions, both those made directly and those made through their agents, employees, and representatives, Harleysville is estopped from denying coverage and refusing to provide payment for the damages sustained in the June 22, 2004 fire. The actions, representations, and directions were undertaken by or on behalf of Harleysville and Tower Services with the reasonable expectation that those actions, representations, and directions would induce action or forbearance on the part of Layne Drexel and the other individuals or entities involved or connected with the repair and restoration of the Insured Premises.

27.    Layne Drexel reasonably and detrimentally relied on the actions, representations, and directions of Harleysville and Tower Services, both those made directly and those made through their agents, employees, and representatives, including those actions, representations, and directions directed at other individuals or entities involved or connected with the repair and restoration of the Insured Premises.

28.     Layne Drexel incurred substantial additional costs that he would not otherwise have incurred were it not for their actions, representations, and directions of Harleysville and Tower Services, both those made directly and those made through its agents, employees, and representatives.

29.     Injustice can be avoided only by requiring Harleysville to compensate Layne Drexel for the complete cost of restoration and repair to the Insured Premises, as well as to compensate him for certain other losses sustained as a result of the fire for which the Commercial Policy provides coverage, in the amount of $53,675.20, as detailed in the prior Count.

### Count III — Bad Faith Breach of Contract

30.     Layne Drexel repeats, re-alleges, and incorporates by reference herein the foregoing paragraphs 1 through 29.

31.     Harleysville's denial of Layne Drexel's claim was clearly without any reasonable justification and made with reckless disregard for the rights of Layne Drexel.

32.     Harleysville, in its denial of Layne Drexel's claim, its actions in investigating said claim, and its interactions with the various entities and individuals involved in the investigation and adjustment of the claim, breached the obligations of good faith and fair dealing which are implied into the Commercial Policy as a matter of law.

33.     Harleysville's continuing bad faith refusal to pay Layne Drexel's claim, and its breaches to the implied obligations of good faith and fair dealing, entitle Layne Drexel to the award of punitive damages and other recovery as allowed under Delaware law.

### Count IV — Attorneys' Fees

34.     Layne Drexel repeats, re-alleges, and incorporates by reference herein the foregoing paragraphs 1 through 34.

35.     Pursuant to 18 *Del. C.* § 4103, the Insured Premises is a "Qualified Property" subject to the provisions of Title 18, Chapter 41 of the Delaware Code.

36.     Pursuant to 18 *Del. C.* §§ 904 and 4102, the Commercial Policy qualifies as "property insurance."

37.     Upon the return of a judgment against Harleysville in this civil action, Layne Drexel is entitled to recover his attorneys fees and costs from Harleysville.

**WHEREFORE** plaintiff, Layne Drexel, demands judgment in his favor in the amount of $53,675.20, plus punitive damages, costs, an award of attorney's fees, and other relief this Court deems just.

SMITH, KATZENSTEIN & FURLOW LLP

Kathleen M. Miller (ID No. 2898)
Robert K. Beste, III (ID No. 3931)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899 (Courier 19801)
Telephone: 302.652.8400
Facsimile:   302.652.8405

*Attorneys for plaintiff, Layne Drexel*

May 9, 2005