IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LAYNE DREXEL, : | |
| : | C.A. No.: 05-428 JJF |
| Plaintiff, : | |
| v. : | |
| : | |
| HARLEYSVILLE INSURANCE CO. : | |
| : | |
| Defendant. : | |

Defendant Harleysville Insurance Co. moves for Summary Judgment on the ground there are no disputed facts and defendant is entitled to judgment as a matter of law.

                                               CASARINO, CHRISTMAN & SHALK

                                                  /s/ Stephen P. Casarino,
                                               STEPHEN P. CASARINO, ESQUIRE
                                               Bar I.D. No. 174
                                               800 North King Street, Suite 200
                                               P.O. Box 1276
                                               Wilmington, DE 19899-1276
                                               302 594-4500
                                               Attorney for Defendant Harleysville

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAYNE DREXEL, | : | |
| | : | C.A. No.: 05-428 JJF |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| HARLEYSVILLE INSURANCE CO. | : | |
| | : | |
| Defendant. | : | |

Defendant's Brief in Response to Plaintiff's Motion for Summary Judgment and in support of its Motion for Summary Judgment.

          CASARINO, CHRISTMAN & SHALK

          /s/ Stephen P. Casarino,
          STEPHEN P. CASARINO, ESQUIRE
          Bar I.D. No. 174
          800 North King Street, Suite 200
          P.O. Box 1276
          Wilmington, DE 19899-1276
          302 594-4500
          Attorney for Defendant Harleysville

Dated: June 5, 2007

**TABLE OF CONTENTS**

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Nature of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument:
        Plaintiff's policy was not cancelled by Harleysville. Plaintiff failed to renew his policy in a timely manner and his insurance coverage terminated prior to the loss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**TABLE OF CITATIONS**

*Adams v. Lemars Mutual Insurance Company of Iowa*, 2001 WL 709905 (Iowa Apps. 2001) .................................................. 7

*Blackwell v. Farmers Insurance Exchange*, 2005 WL 1595246 (Ohio Apps. 2005) .. 7

*Dimenico v. Selective Insurance Company of America*, 833 A.2d 984 (Del. Super 2002) .......................................................... 9

*Iagar v. Transport Insurance Company*, 2003 WL 22849756 (Mich Apps.) .......... 8

*Ludke v. Audubon Insurance Company*, 874 S.2d 1029 (Miss Apps. 2004) .......... 8

*Moore v. Travelers Indemnity Insurance Company*, 408 A.2d 298 (Del. Super 1979) ....................................................... 5,6

*Progressive Northwestern Insurance Company v. Torres* 1999 WL 956693 (Conn. Super 1999) ....................................................... 7

*Ralston v. American Family Mutual Insurance Company*, 2004 WL 2952677 (Iowa Apps. 2004) ............................................................ 7

*Sitto Enterprises, Inc. v. Badger Mutual Insurance Company*, 414 F Sup.2d 700 (ED Mich. 2006) ............................................................ 6

*State Farm Mutual Automobile Insurance Co. v. Mundof*, 659 A.2d 215 (Del. 1995) ................................................................. 6

*State Farm Mutual Automobile Insurance Company v. O'Brien*, 535 P. 2d 46 (Arz. Apps. 1975) ........................................................... 10

*Wahl v. Country Mutual Insurance Company*, 640 NW.2d 689 (ND 2002) .......... 8

*Whistman v. West American, et al*, 686 P.2d 1086 (Wash Appls. 1984) ............ 10

**STATUTES**

18 Del. C. §4121 .................................................................. 5

18 Del. C. §4122 .................................................................. 4

**NATURE OF THE PROCEEDINGS**

Plaintiff has brought this action against Harleysville Insurance Company alleging that it breached its contract with plaintiff by not providing insurance coverage for a fire loss that occurred on June 22, 2004. The defendant has denied that there was a contract of insurance in effect at the time of the loss.

The plaintiff has filed a motion for summary judgment claiming that he is entitled to judgment as a matter of law. The defendant has also filed a motion for summary judgment.

This is the defendant's Brief in response to the plaintiff's motion for summary judgment and in support of its motion for summary judgment.

## SUMMARY OF ARGUMENT

Plaintiff's policy was not cancelled for non payment.  Plaintiff failed to renew his policy in a timely manner and there was no policy in effect at the time of his loss.

**STATEMENT OF FACTS**

The plaintiff had a policy of property insurance with Harleysville Insurance Company [Harleysville] effective June 8, 2003 through June 8, 2004. On March 26, 2004, prior to the termination of the policy Harleysville sent plaintiff a PREMIUM INVOICE giving him the opportunity to renew the policy at a premium of $1394.00. (Exhibit A) The premium invoice required a minium payment in the amount of $283.80 by June 8, 2004. The notice stated "minimum due must reach us by the due date."

The plaintiff did not exercise his option to renew the policy and on June 15, 2004 a NOTICE OF POLICY EXPIRATION was sent to the plaintiff advising that Harleysville had not received his premium payment and coverage had expired on June 8, 2004. (Exhibit B) The notice also indicated that if plaintiff wanted continuous protection the past due amount had to be received by Harleysville by June 30, 2004, 12:01 a.m. The plaintiff did not exercise his right to extend insurance coverage and on July 7, 2004 a CONFORMATION OF TERMINATION was sent to plaintiff advising that his policy had expired because the renewal offer had not been accepted. (Exhibit C)

On June 22, 2004 the plaintiff sustained a fire on his property. On July 14, 2004, 6 weeks after the policy was cancelled and more than 3 weeks after the fire, the defendant received a check from plaintiff drawn on the account of Wilmington Savings Fund Society. The check No. 4359 was dated June 7, 2004. The records from the WSFS indicate that the check was actually written on or about July 1, 2004 after the policy had expired. Plaintiff's checks No. 4356 through 4363 were all issued on July 1, 2005. (Exhibit D) The plaintiff back dated the check in order to obtain insurance coverage.

**ARGUMENT**

PLAINTIFF'S POLICY WAS NOT CANCELLED BY HARLEYSVILLE. PLAINTIFF FAILED TO RENEW HIS POLICY IN A TIMELY MANNER AND HIS INSURANCE COVERAGE TERMINATED PRIOR TO THE LOSS.

Plaintiff argues that Harleysville did not properly cancel its insurance policy. In fact, plaintiff's renewal policy was never in force because plaintiff failed to pay his premium for the renewal policy.

Although cancellation and non renewal appear to be used interchangeably, in reality they have distinct meanings. Plaintiff's policy was not cancelled. Cancellation refers to a policy already in effect. Plaintiff's policy had lapsed for non-payment and plaintiff did not take the opportunity to renew that policy.

18 Del. Code. Chapter 41 relates to Property Insurance Contracts. Section 4122 deals with notification and reasons for declination or termination. Subsection (c) deals with the issues in this case.

> "(c) At least 30 days before the end of a policy period, as described in § 4121 (a) of this title, an insurer shall deliver or mail to the named insured, at the last known address of the named insured, either of the following: (1) Written notice of the insurer's offer to renew the policy if the applicable premium for the policy is received within a specified billing period; or (2) written notice of the insurer's intention not to renew the policy upon expiration of the current policy period. The notice of intention not to renew shall include or be accompanied by a written explanation of the insurer's specific reason or reasons for the nonrenewal. Proof of mailing of either notice shall be retained by the insurer for a period of not less than 1 year. If the insurer fails to comply with either paragraph (1) or (2) of this subsection, coverage shall be deemed renewed under the same terms and conditions until the named insured has accepted replacement coverage with another insurer or until the named insured has agreed to the nonrenewal."

This provision was followed by the defendant. It notified the plaintiff at least thirty days prior to the end of the of the policy period that it would renew the policy if the premium was paid

by a certain date.

    Section 1421 makes it clear that this is a renewal policy.

> "(a) "Renewal" or "to renew" means the issuance and delivery by an insurer at the end of a policy period of a policy superseding a policy previously issued and delivered by the same insurer or the issuance and delivery of a certificate or notice extending the term of an existing policy beyond its policy period or term."

The Insurance Code, §4121 (b) also explains that " non payment of premium" shall include the failure to pay dues or fees where payment of such dues or fees is a prerequisite to obtaining or continuing property insurance coverage.

    It is also significant that the Insurance Code uses *termination* to mean either *cancellation* or *non renewal*. (§1421(c)) A *cancellation* occurs during the policy term. A *non renewal* occurs at the end of the policy term.

    The Harleysville policy in question does not mention notice requirements for termination of a policy when an insured fails to pay the premium. The Insurance Code however specifically states that notification is not required, other than notification thirty days before the end of the policy that the policy will be renewed upon payment of the premium.

    Although plaintiff did not pay his premium by June 8, 2004, Harleysville went one step further and gave the insured the opportunity to continue his policy if payment was received by June 30, 2004. This issue was discussed in *Moore v. Travelers Indemnity Insurance Company*, 408 A.2d 298 (Del. Super 1979). Although *Moore* involved an automobile policy, the facts are similar. The insured's policy lapsed and payment was not made until after the date set forth in the renewal notice. Plaintiff's policy ended August 16, 1973. The next policy ran from August 16, 1973 to February 16, 1974. On or about July 17, 1973 Travelers sent a letter to plaintiff advising that no premium payment had been made. As in the present case it made an offer to reinstate the policy if payment

was received by September 15.  Payment was not received until December 11.

The court noted that this was not a cancellation for non payment.  Cancellation is an affirmative act taken by an insurance company to terminate an existing policy.  The insurance company did not renew the policy for non payment of premium.  In short, notice requirements do not apply when an insurer fails to renew a policy solely for non payment of premium.  Therefore, the policy was terminated. This holding in *Moore* was ratified by the Delaware Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Mundof*, 659 A.2d 215 (Del. 1995).

In *Sitto Enterprises, Inc. v. Badger Mutual Insurance Company*, 414 F Supp.2d 700 (ED Mich. 2006) the court concluded that the policy language requiring notice of cancellation did not apply when the insured failed to pay the renewal premium.  As the present case, the carrier sent a notice of the premium payment stating that the failure to renew the policy prior to its expiration date would terminate the coverage.  The body of the policy, however indicated that the insurance company could cancel the policy for non payment of premium upon 10 days notice.  The court held that a cancellation notice was not required to terminate insurance coverage at the natural end of the term of the insurance policy.  The cancellation notice applied to late installment payments, not the payment of a subsequent policy renewal.  The cancellation provisions did not apply because the policy was never actually renewed.

> "An interim installment payment is a payment that continues a policy the insurer knows is in effect.  Policy cancellation is possible for a late or unpaid interim installment payment; the policy is in effect until such cancellation occurs. An initial installment payment on the renewal is different. Until the installment payment on renewal is made, an insurer does not know whether the insured needs or wants to continue coverage. The insured may have decided to get a policy through another carrier, or may have sold the insured property."

In *Blackwell v. Farmers Insurance Exchange*, 2005 WL 1595246 (Ohio Apps. 2005) the same fact pattern occurred. The insured was sent a renewal notice indicating that the policy would

expire on March 29, 2003 unless payment was received by a certain date. When the payment was not received, the insurance company sent another letter titled "Important Expiration Notice" which stated that although the due date has passed, the policy holder could still accept the company's offer to renew the policy if payment was received within 15 days. The policy holder did not pay in a timely manner and the policy was terminated. The court held that the policy lapsed for non payment of renewal premium and because the policy lapsed, the carrier had no duty to comply with the policy provisions regarding cancellations.

Accord, *Ralston v. American Family Mutual Insurance Company*, 2004 WL 2952677 (Iowa Apps. 2004), where the policy holder failed to pay the renewal premium, the policy terminated by its own terms. Upon such termination, the insurance company had no further obligation to contact its insured.; *Adams v. Lemars Mutual Insurance Company of Iowa*, 2001 WL 709905 (Iowa Apps. 2001) where the court made it clear that cancellation and non renewal are not synonymous. The policy was terminated because the policy holder did not pay the renewal premium. Failure to pay the required renewal means that the insured did not accept the insurance policy because the insured did not pay the renewal premium, the policy was not cancelled because it had been terminated prior to the policy being in effect; *Progressive Northwestern Insurance Company v. Torres* 1999 WL 956693 (Conn. Super 1999) where a notice of payment due for a renewal was sent to the insured indicating the policy would expire on July 11, 1996 and that if the defendant wanted to continue the insurance it had to be paid by that date. The court noted that the letter to the insured went out thirty days as set forth by the insurance code. Since the defendants did not pay the premium in a timely manner there was no insurance coverage.; *Wahl v. Country Mutual Insurance Company*, 640 NW.2d 689 (ND 2002) where the court held "as a matter of law, the cancellation and non renewal provisions

of the policy did not impose a duty upon Country Mutual to give notice to Wahl to terminate coverage for the failure to pay a renewal premium upon expiration of the policy term"; *Ludke v. Audubon Insurance Company*, 874 S.2d 1029 (Miss Apps. 2004) where the court concluded the policy was not cancelled but lapsed for non-payment; *Iagar v. Transport Insurance Company*, 2003 WL 22849756 (Mich Apps.), where the court noted that the renewal notice was clear and unambiguous.

Plaintiff claims that the "the policy package, however, does not condition the renewal on Harleysville's receipt of Drexel's premium payment prior to the renewal date." Defendant submits the premium notice and insurance contract make the policy contingent upon payment of the premium.

    A.    Under Renewal Certificate (plaintiff's Exhibit B, DR0471)

"In return for the payment of the premium and subject to all of the terms of this policy, we agree to provide the insurance as stated in this policy."

    B.    Under RENEWAL INSURANCE AGREEMENT (plaintiff's Exhibit B, DR0472)

"We renew this policy for the period stated on the renewal declarations in return for your payment of the premium."

    C.    On the signature page of the insurance policy (plaintiff's Exhibit B, DR0478)

"We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions."

    D.    On the premium notice it states: (Exhibit A)

    Minium Due:    $283.80
    Due Date:    06/08/2004
    Minium due date must be reach us by due date.

Plaintiff argues that the premium notice had a provision for late payment however, that section clearly states that the company must receive the payment before the cancellation effective

9

date. As pointed out above, this was not a cancellation, but in any event the check was not received until after the termination date.

In *Dimenico v. Selective Insurance Company of America*, 833 A.2d 984 (Del. Super 2002) one of the arguments made by the plaintiff was that the notice of cancellation was inadequate. The court noted that the carrier Imperial captioned its 10 day notice of cancellation as "notice of intent to cancel." The document unmistakably put plaintiffs on notice that their insurance coverage would be cancelled unless they were current with their payment. Further, the actual notice of cancellation sent by the carrier to the plaintiffs is unequivocal that the cancellation was effective.

It is hard to imagine that plaintiff did not understand the premium notice that required minimum payment by June 8, 2004. It is further hard to imagine that plaintiff did not understand the notice of expiration which stated that the premium had not been paid and that coverage had expired, and that continuous protection would be possible only if the insured paid the minium by June 30, 2004. It is hard to imagine that even with such clear notification, the plaintiff did not pay the premium in a timely manner. The insured knew that he had to pay in a timely manner, however because he backdated the check to make it appear as if he did issue the payment on June 7, 2004.

Plaintiff argues that Harleysville did not condition the renewal of plaintiff's payment of the premium by any specific date. Of course, the plaintiff is mistaken. The premium notice clearly states that the minium payment must reach Harleysville by June 8, 2004.

Plaintiff argues that there is no difference between failure to renew a policy and failure to pay a premium during mid term. Of course, there is a major difference. Once a person has an insurance policy and is under a fee schedule, the policy can be cancelled for non payment of premium. However, if a person does not accept the insurance company's offer for insurance

coverage, then there is no insurance policy issued in the first place. See *Moore v. Traveler's* <u>supra</u> and case cited herein.

Plaintiff insist that the clear language of the policy applies. However, plaintiff misses the key element in this case that there was no policy because the plaintiff did not accept Harleysville's offer to purchase the new policy. Because plaintiff did not pay his minium premium, the policy expired on June 8, 2004. The plaintiff was given an opportunity to have extended protection had he paid he premium by June 30, which he failed to do.

Plaintiff attempts to boot strap Harleysville by arguing that it cashed his check. His policy was not renewed for non payment of premium. He then sent a check to Harleysville, after termination, and that check was cashed. Checks that are sent to the insurance company are routinely cashed. The plaintiff can't argue that by cashing the check it decided to afford him insurance that he had already been cancelled. As noted in plaintiffs' brief Harleysville sent plaintiff its check to return the premium on 7/15/2004 the day after plaintiff's check was received. (plaintiff's Exhibit K)

Plaintiff relies upon *Whistman v. West American, et al*, 686 P.2d 1086 (Wash Appls. 1984). However, the facts in *Whistman* case are distinguishable. The agent wrote to the deceased insured's representative stating that a cancellation of the policy was requested. There was no lapse or termination notice. Because the carrier stated that it was cancelling the policy, the court concluded that the cancellation clause in the policy must apply.

Plaintiff also relies upon *State Farm Mutual Automobile Insurance Company v. O'Brien*, 535 P. 2d 46 (Arz. Apps. 1975). *O'Brien* is also distinguishable. In *O'Brien* the court found an ambiguity in the policy because it stated that the failure to make a renewal premium would give the company

11

the <u>right</u> to cancel as apposed to an automatic expiration. Further the policy required <u>notice</u> of expiration. That language was critical and the court noted, "this point is a significant distinction because it sets the instant policy apart from the ordinary term policy which could expire without notice and makes reference to cases interpreting the usual term policy inappropriate." Not withstanding, this case was subject to a strong dissent. The dissent noted that the majority "consistently fails to distinguish between Cancellation and Renewal." It should also be noted that in *O'Brien* the insured was given no notice that his policy was about to terminate. In the present case, the insured was notified in accordance with Delaware statute at least 30 days prior to the expiration of the policy and the insured was notified once again after he failed to pay that the policy could be reinstated if payment was made within 15 days.

## **CONCLUSION**

For the reasons stated herein plaintiff's Motion for Summary Judgment should be denied and judgment entered in favor of the defendant.

<div style="margin-left: 3em;">

CASARINO, CHRISTMAN & SHALK

    /s/ Stephen P. Casarino,
STEPHEN P. CASARINO, ESQUIRE
Bar I.D. No. 174
800 North King Street, Suite 200
P.O. Box 1276
Wilmington, DE 19899-1276
302 594-4500
Attorney for Defendant Harleysville

</div>