# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LAYNE DREXEL,                          :
                                       :
    Plaintiff,                     :
                                       :    C.A. No. 05-00428 (JJF)
        v.                   :
                                       :    Jury Trial Demanded
HARLEYSVILLE INSURANCE CO.,            :
                                       :
    Defendant.                     :

---

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT AND ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Kathleen M. Miller (ID No. 2898)
Robert K. Beste, III (ID No. 3931)
SMITH, KATZENSTEIN & FURLOW LLP
Post Office Box 410
Wilmington, Delaware 19899
Telephone:    (302) 652-8400
Facsimile:    (302) 652-8405
Email:        rkb@skfdelaware.com

*Attorneys for plaintiff*

June 14, 2007

## *Table of Contents*

*Page*

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      i.     The Statutes Relied on by Harleysville Are Not Controlling,
           and the Court Should Reject Harleysville's Attempts to
           Rewrite The Policy Through Those Statutes . . . . . . . . . . . . . . . . . . . . . . . 4

      ii.    The Plain Language of the Policy Controls and Should Be
           Enforced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      iii.   Alternatively, the Principle of Contra Proferentem Requires
           the Court to Enforce Plaintiff's Reasonable Interpretation of
           the Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      iv.   Even if the Court Agrees that the Policy "Expired," Delaware
           Law Precludes the Court from Giving Effect to the Hidden
           Trap Created by the Nonpayment Provision . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Table of Authorities*

**Cases**                                                                **Pages**

*Blackwell v. Farmers Insurance Exchange,*
  2005 WL 1595246 (Ohio Ct. App.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dimenco v. Selective Insurance Company of America,*
  833 A.2d 984 (Del. Super. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Fogle v. Le Mars Mutual Insurance Company,*
  2001 WL 709905 (Iowa Ct. App.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hallowell v. State Farm Mutual Automobile Insurance Company,*
  443 A.2d 925 (Del. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

*Iagar v. Transport Insurance Company,*
  2003 WL 22849756 (Mich. Ct. App.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Little v. MGIC Indemnity Corporation,*
  836 F.2d 789 (3rd Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Luedke v. Audubon Insurance Company,*
  874 So.2d 1029 (Miss. Ct. App. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Moore v. Travelers Indemnity Insurance Company,*
  408 A.2d 298 (Del. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*New Castle County v. National Union Fire Insurance Company,*
  174 F.3d 338 (3rd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 11, 12, 14, 16

*Progressive Northwestern Insurance Company v. Torres,*
  1999 WL 956693 (Conn. Super. Ct.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ralston v. American Family Mutual Insurance Company,*
  2004 WL 2952677 (Iowa Ct. App.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sitto Enterprises, Incorporated v. Badger Mutual Insurance Company,*
  414 F. Supp. 2d 700 (E. D. Mich 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State Farm Mutual Automobile Insurance Company v. Mundorf,*
  659 A.2d 215 (Del. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 13,16

*State Farm Mutual Automobile Insurance Company v. O'Brien*,
    535 P.2d 46 (Ariz. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15, 16

*Wahl v. Country Mutual Insurance Company*,
    640 N.W.2d 689 (N.D. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Whistman v. West American of the Ohio Casualty Group of Insurance Companies*,
    686 P.2d 1086 (Wash. Ct. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 15, 16

### Statutes and Other Authorities                                            *Pages*

18 *Del. C.* § 3905 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

18 *Del. C.* § 4121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 *Del. C.* § 904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 *Del. C.* §§ 4101–4102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 *Del. C.* §§ 4103–4113 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 *Del. C.* §§ 4120–4128 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

### *Argument*

Plaintiff's motion for summary judgment concerns primarily legal issues, and it requires that the Court consider only 1 undisputed fact—Harleyville did not cancel plaintiff's policy prior to June 11, 2004 (10 days before the June 22, 2004 fire). Because plaintiff has shown that there are no disputes of material fact, the burden has shifted to Harleysville to affirmatively show that a material fact is in dispute. It has failed to do so. Harleysville's answering brief does not even attempt to present evidence showing it cancelled the Policy[1] on or before June 11, 2004. As such, plaintiff is entitled to judgment as a matter of law.

As plaintiff established in his opening brief (D.I. 34 ("OB")), the Policy contains a Nonpayment Provision which requires Harleysville to provide plaintiff with 10 days advance notice when it intends to cancel plaintiff's coverage based on his failure to pay a premium in a timely fashion. (OB at 4) Although plaintiff contends the policy is clear in that regard, plaintiff alternatively has shown that, if the provision is found to be ambiguous, his interpretation of the Nonpayment Provision, and the Policy as a whole, is a reasonable one. Accordingly, the principle of *contra proferentem* requires that the Court apply that interpretation to the Policy. Thus, the inescapable conclusion is that coverage remained in place on the date of the fire, and Harleysville is obligated to comply with its contractual obligation to compensate plaintiff for the loss.

In response to plaintiff's brief, Harleysville relies upon statutes and caselaw which simply do not apply or change the result sought by plaintiff. Harleysville also takes great pains to avoid discussing the Nonpayment Provision, even though long-established Delaware

---

[1]Capitalized terms not defined herein have the meaning ascribed to them in the opening brief.

law mandates that the Court apply the insurance policy as it is written. Instead of discussing the key provision in the Policy, Harleysville attempts to rewrite its own policy through reliance on barely-relevant case law, all in an effort to avoid the advance notice obligation it imposed on itself by including the Nonpayment Provision in the Policy. For the reasons explained below, the Court should grant plaintiff's motion for summary judgment.

Plaintiff does not require additional discovery to support his motion for summary judgment (but that is not to say it could not lend additional support for plaintiff's arguments). Nonetheless, Harleysville's bad faith litigation tactics must be addressed. Harleysville refuses to provide plaintiff with basic discovery responses. Despite that refusal, Harleysville seeks an order granting it summary judgment and permanently preventing plaintiff from investigating the assertions Harleysville makes in its motion.

On September 14, 2006, plaintiff informed Harleysville of delinquent discovery responses.[2] The discovery included a request for a "NP Invoice" dated June 15, 2004, a few days before the fire. On December 18, 2006, plaintiff again requested that Harleysville produce the "NP Invoice."[3] Still not having received a response from the multiple requests, plaintiff filed his pending Motion to Compel and for Sanctions (D.I. 31 ("Motion to Compel")) on May 9, 2007 seeking an order which, among other things, compelled production of the "NP Invoice."

---

[2] *See* Ex. A at 1, 3 ("I note that Harleysville has not produced . . . the "NP Invoice" dated June 14, 2004 and referenced at DR 0200 . . . .").

[3] *See* Ex. B at 2 ("I note that Harleysville has not produced . . . the "NP Invoice" dated June 14, 2004 and referenced at DR 0200.").

Despite all of these prior requests, Harleysville did not produce the document until it apparently determined the invoice might possibly support its own motion for summary judgment.[4]  Harleysville even had the audacity to claim it was "surprised" that plaintiff did not have a copy of the invoice, and blamed the failure to produce the invoice (and other documents) on Harleysville's prior attorney (who ceased representing Harleyville on September 22, 2006).[5]  The record, however, demonstrates that plaintiff repeatedly requested this document from Harleysville.  Naturally, Harleysville then relied upon that notice extensively in support of its motion for summary judgment (which it filed after the dispositive motion deadline and without leave of court).  (D.I. 41)[6]

These events are plain evidence of Harleysville's bad faith litigation tactics and refusal to provide required discovery responses.  Plaintiff's Motion to Compel, which plaintiff incorporates herein, outlines numerous important areas where Harleysville continues to stonewall in response to plaintiff's discovery requests.  Accordingly, plaintiff submits that permitting Harleysville to advance its own motion for summary judgment,

---

[4]*See* Ex. C (Harleysville's May 30, 2007 letter); D.I. 37 (Harleysville's request for permission to file a motion for summary judgment after the deadline).

[5]*See* Ex. C ("When I read your brief I was surprised that you had not received a copy of the June 14, 2004 notice.  As you know I did not have the case originally and I assumed that all documentation was sent to you."); D.I. 22 (Harleysville's September 22, 2006 Substitution of Counsel).  Plaintiff cannot understand how defense counsel could have been surprised, because plaintiff sent 2 letters and filed 2 motions to compel over an 8 month period, all of which directly advised him of the outstanding discovery responses.

[6]As an aside, the NP Invoice does not change the result of plaintiff's motion for summary judgment.  Assuming momentarily that the invoice effectively cancelled the Policy, the invoice was not sent until June 15, 2004.  The Nonpayment Provision, however, requires 10 days *advance notice* of cancellation, and a June 15 notice could not effectively cancel the Policy before the June 22, 2004 loss.

-3-

without allowing plaintiff to investigate his claims in a meaningful way through discovery, is highly prejudicial. For these reasons, and those detailed in plaintiff's letter opposing Harleysville's request (D.I. 38), plaintiff respectfully requests that the Court reject Harleysville's request for permission to file a summary judgment motion past the deadline. In the event the Court permits Harleysville to present its motion for summary judgment, plaintiff hereby submits this brief in opposition to that motion, although he reserves the right to provide a more complete response once the Court resolves plaintiff's Motion to Compel and plaintiff is able to complete his discovery.[7]

### i.      *The Statutes Relied on by Harleysville Are Not Controlling, and the Court Should Reject Harleysville's Attempts to Rewrite The Policy Through Those Statutes*

Harleysville attempts to misdirect the Court's attention from the real issue in this case—the plain language of its own Nonpayment Provision—by relying upon Delaware statutory authority that has no impact, *whatsoever*, on plaintiff's claims or the Policy. While Harleysville may have complied with the statutes it relies upon (a point plaintiff does not concede), those statutes simply do no apply to this case. As such, the Court should reject Harleysville's attempts to rewrite its own insurance policy by incorporating irrelevant statutory provisions into the policy. Naturally, plaintiff submits that the Court should apply

---

[7]Should plaintiff succeed on the motion for summary judgment, his bad faith claims would still need to be tried. Harleysville's motion for summary judgment does not address plaintiff's estoppel claims (Count II), his bad faith claims (Count III), or his claim for attorney's fees (Count IV). Thus, summary judgment in favor of either party would not moot plaintiff's Motion to Compel.

the plain language of the Policy or, alternatively, to recognize that plaintiff's interpretation of the Policy is a reasonable interpretation.

In its answering brief, Harleysville asserts that "Subsection (c) [of 18 *Del. C.* § 4122] deals with the issues in this case [and] . . . [t]his provision was followed by defendant." (D.I. 41 at 5 ("AB").  It goes on to assert that 18 *Del. C.* § 4121 also governs the Policy.  (AB at 6)  These provisions, it asserts, provide that it was not required to provide notification of termination of the Policy for nonpayment of premiums.  Accordingly, it continues, its failure to provide the 10 days notice it committed to providing (in the Nonpayment Provision) is irrelevant.  These assertions have no basis in law or in fact.

Title 18, Chapter 41 of the Delaware Code is divided into 3 Subchapters, *but only 2 of those Subchapters apply to the Policy*.  Subchapter I (18 *Del. C.* §§ 4101–4102) applies generally to any property insurance contract including this contract (and forms the basis of plaintiff's claims for attorneys' fees).[8]  Subchapter II (18 *Del. C.* §§ 4103–4113) also generally applies to property insurance contracts by providing legislative guidance to the Insurance Commissioner of the State of Delaware with respect to such policies.  Subchapter III (18 *Del. C.* §§ 4120–4128), however, applies only to a limited and specific number of property insurance contracts (it essentially applies to residential properties which include up to 3 rental units in the same structure).  The initial provision of Subchapter III expressly limits its application:

---

[8]*See* 18 *Del. C.* § 904 ("Property insurance is insurance on real or personal property of every kind and of every interest therein against loss or damage from any and all hazard or cause . . . ."); 18 *Del. C.* § 4101 ("All contracts of property insurance . . . are subject to the applicable provisions of Chapter 27 . . . and to other *applicable* provisions of this title.") (emphasis added).

> This subchapter shall apply to policies of property insurance . . . covering risks to property located in this State . . . *and which insure any of the following contingencies*:
>
>   (1)  Loss of or damage to real property which consists of not more than 4 residential units, *1 of which is the principle place of residence of the named insured* . . . .

18 *Del C.* § 4120 (emphasis added).  Harleysville's argument ignores the fact that the Policy covered commercial property owned by plaintiff.  Harleysville did not, and cannot, supply any evidence to show plaintiff used the property as his principle residence.  *Compare* Compl. at ¶ 1 ("Plaintiff is an adult . . . residing at 1910 Old Capital Trail in Newark, Delaware."), *with id.* at ¶ 3 (Plaintiff . . . was the fee simple owner of . . . 1740 W. 4th Street in Wilmington, Delaware . . . and operated the Insured Premises as a rental property, which consisted of 1 commercial and 2 residential rental units.).[9]

    Accordingly, by the very terms of the statutes, 18 *Del. C.* §§ 4120–4128 do not apply.  Rather than looking to irrelevant statutory provisions, Delaware law mandates that the Court apply the language of the policy in the context of the entire policy and, in doing so, utilize a plain meaning common sense approach, as discussed below.  *See*, *e.g.*, *New Castle County v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 342 (3rd Cir. 1999).

### ii.    *The Plain Language of the Policy Controls and Should Be Enforced*

    Despite clear Delaware precedent mandating that the Court enforce the Policy language, *see National Union*, 174 F.3d at 342, Harleysville fails to mention, let alone

---

[9]OB, Ex. A.  Because Harleysville did not (and cannot) satisfy its burden to show that there is a genuine dispute of material fact regarding the use of the property, this issue does not create an issue of fact precluding the granting of plaintiff's motion for summary judgment. *See* Fed. R. Civ. P. 56.

discuss, the governing provision of its own policy. (AB at 5–12)[10] The Policy contains a single Nonpayment Provision which dictates the consequences of *any* "nonpayment of premium." No other provision in the Policy addresses the issue. The Nonpayment Provision requires Harleysville to provide plaintiff with *10 days advance notice of cancellation* which, importantly, Harleysville does not argue it provided to plaintiff. Because Harleysville failed to provide advance notice of coverage termination at least 10 days before the June 22, 2004 fire, coverage remained in place on the date of the fire. The specific language of the Nonpayment Provision provides:

> We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation *at least*:
> a.     *10 days before the effective date of cancellation* if we cancel *for nonpayment of premium* . . . .

OB, Ex. B at 481 (emphasis added).[11] This language governs all "cancellations" of coverage, regardless of whether Harleysville seeks to classify it as a "cancellation," a "termination," or an "expiration," as long as coverage ends due to plaintiff's "nonpayment of premium." The Nonpayment Provision fails to exclude, or differentiate between, any forms of "nonpayment," and no other policy language addresses the potential consequences of a missed premium payment. Without such additional language or provisions, Harleysville's

---

[10]Harleysville does mention, although only once and without much discussion, certain statements included in correspondence provided to plaintiff with its annual delivery of the Policy and amendments thereto. (AB at 9) Plaintiff will return to that issue.

[11]In light of this language, plaintiff fails to understand how Harleyville can assert that its policy "does not mention notice requirements for termination of a policy when an insured fails to pay the premium." (AB at 6) This assertion appears to have no basis in fact, because the Nonpayment Provision expressly requires advance notice of cancellation for nonpayment of a premium.

assertion that the annual premium should be treated differently from other mid-term premium installments has no basis in the Policy language.

Further, Harleysville's own "Cancellation Memorandum" confirms that plaintiff's coverage was cancelled under the Nonpayment Provision for "Non-Payment." *See* Ex. D.[12] In line with its practices, Harleysville refused to produce this important document until it sought permission to file its own motion for summary judgment.[13]  This newly produced "Cancellation Memorandum," which appears to be the first notice of cancellation actually sent to plaintiff, is dated July 6, 2004—*2 weeks after the fire*.  By the terms of the Policy, this Cancellation Memorandum was not an effective cancellation prior to the date of loss.

Of course, the Court must apply the actual language of the Policy.  *See National Union*, 174 F.3d at 343.  In doing so, the Court should recognize that the Policy contains one, *and only one*, provision detailing the potential consequences of plaintiff's "nonpayment of premium."  Straightforward application of that language shows that the Policy remained in full force and effect on the date of the fire.  Not only does the plain language of the Policy control, but well-settled Delaware substantive law rejects Harleysville's "expiration" argument in the circumstances of this case.

In drawing the purported distinction between cancellation and nonrenewal, Harleysville relies heavily upon *Moore v. Travelers Indemnity Insurance Co.*, 408 A.2d 298

---

[12]Of note, it appears that Harleysville may not have produced the entire memorandum, because the 1 page Harleysville produced is labeled with "Page 1," leading plaintiff to believe it may have contained additional language that could be relevant.

[13]Again, plaintiff is left to image what additional support exists in Harleysville's records to support his motion and this suit generally.  Allowing Harleyville to present a motion for summary judgment despite these discovery abuses is highly prejudicial.

(Del. 1979).  As with its arguments regarding Delaware's property insurance statutes, however, the *Moore* decision is inapposite in that it depends upon statutes not implicated in this dispute.  That is because Delaware's uninsured motorist statute deliberately and expressly differentiates between "cancellations" and "nonrenewals," and also requires different treatment of those 2 events.  The court's decision in *Moore* was driven by that statutory distinction, which does not find any application in this case.[14]

Of greater importance, the Delaware Supreme Court specifically refused to apply the reasoning of *Moore* in a context strikingly similar to the facts here—*and it rejected the precise argument made by Harleysville*.  In *State Farm Mutual Automobile Insurance Co. v. Mundorf*, 659 A.2d 215 (Del. 1995), the Delaware Supreme Court considered a policy cancellation provision included in regulations governing Delaware's assigned risk automobile insurance plan.  That provision is substantively identical to the Nonpayment Provision and provided:

> If the premium is not received by the company by the due date specified, the policy may be cancelled by mailing . . . a notice of cancellation *to be effective no sooner than the tenth day* following the date of notice.

*Id.* at 219 (emphasis added, citation omitted).[15]

---

[14]*Id.* at 300 ("Title 18 *Del. C.* § 3905(a) provides . . . that: ' . . . where *cancellation* is for nonpayment of premium, at least 10 days notice of cancellation . . . shall be given.'  If absence of coverage is not the result of 'cancellation,' Section 3905(a) does not apply.  This case concerns the nonrenewal for nonpayment of a premium—not cancellation.  18 *Del. C.* § 3905(b) sets forth notice requirements in cases of 'nonrenewals.'") (citations omitted, emphasis in original).

[15]*See also* OB, Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least . . . 10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .").

State Farm, referencing the *Moore* decision (as Harleysville does (AB at 6–7), relied upon the uninsured motorist statute to argue that the court should read the "cancellation" and "nonrenewal" provisions into the assigned risk policy even though the statutes were not controlling. State Farm "argue[d] that the policy was deemed 'non-renewed' for nonpayment of premium . . ." and invited the court to hold that the policy lapsed prior to the date of loss *because the insured failed to pay the premium prior to the due date*. *Id*. at 219. State Farm's argument in *Mundorf* matches Harleysville's argument here almost identically.

The Delaware Supreme Court rejected State Farm's argument in unmistakable, persuasive language:

> [W]e conclude that the Plan *clearly and unambiguously* mandates that an insurer send its insured a notice of cancellation when the insured *fails to renew by nonpayment of premium*. Whereas Section 3905(b) specifically excepts the insurer from its duty to give notice to the insured when the insured fails to renew for nonpayment of premium, *the Plan makes no such exception. In fact, the Plan makes no distinction between "cancellations" and "nonrenewals*." The decision to omit a provision is deemed to be purposeful. . . .
>
> If the Insurance Commissioner intended such a distinction with respect to assigned risk policies, she could have easily so provided. *The distinction may*
> *not be drawn judicially, however, in the absence of such a clearly expressed intention by the Insurance Commissioner*. . . .
>
> *The Plan states that any attempt by an insurer to terminate an assigned risk policy for nonpayment of premium will be ineffective "unless notice of cancellation for nonpayment is mailed to the named insured*." It is not the function of the court to read into, or carve out, exceptions to a clearly-worded legislative or regulatory enactment.

*Id.* at 220 (emphasis added). The Delaware Supreme Court's logic and reasoning in *Mundorf* applies with equal force to Harleysville's Policy—because it contains only 1 provision detailing the potential consequences of plaintiff's nonpayment of premium; that

provision controls all "cancellations," "terminations," "expirations," or other cessation in coverage based on nonpayment. In essence, because the Policy fails to distinguish between different types of nonpayment, this Court should refuse to rewrite the Policy under the guise of construing it, and apply the Nonpayment Provision as written under the plain meaning rule.[16]

### iii.     *Alternatively, the Principle of Contra Proferentem Requires the Court to Enforce Plaintiff's Reasonable Interpretation of the Policy*

Even if the Court determines that the Nonpayment Provision is not as clear as plaintiff submits, summary judgment remains appropriate because plaintiff's interpretation is reasonable. As such, *contra proferentem* requires the Court to give effect to plaintiff's interpretation. *See, e.g.*, *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926–27 (Del. 1982). The *Mundorf* decision establishes, as a matter of Delaware law, that plaintiff's interpretation of the Nonpayment Provision is reasonable. In other words, where a policy of insurance contains only 1 provision detailing the consequences of "nonpayment of premium," that provision controls all instances of coverage termination based on nonpayment. The reasonableness of plaintiff's interpretation also finds support elsewhere.

Two other courts have concluded that plaintiff's interpretation of the Nonpayment Provision is reasonable. In *Whitman v. West American of the Ohio Casualty Group of Insurance Cos.*, 686 P.2d 1086 (Wash. Ct. App. 1984),[17] the court held:

---

[16]*See, e.g.*, *National Union*, 174 F.3d at 343.

[17]According to plaintiff's research, the *Whitman* court is the only court in the nation to consider a provision substantively identical to the Nonpayment Provision in the context of a homeowners' insurance policy similar to the policy at issue.

> The reference to "premium" *is not limited to premiums paid during the term of insurance and reasonably could be read as including premiums due in order to effect renewal. . . .*
>
> [W]e construe the policy language here as requiring West to give 10 days notice prior to cancellation for failure to pay a renewal premium.

*Id.* at 1088 (emphasis added).[18]  In *State Farm Mutual Automobile Insurance Co. v. O'Brien*, 535 P.2d 46 (Ariz. Ct. App. 1975), the court interpreted substantively identical language and reached a similar conclusion in the context of an automobile policy.[19]  The *O'Brien* court held that the clause at issue was ambiguous[20] which, under *contra proferentem*,[21] necessarily required the court to determine whether plaintiff's interpretation was a reasonable interpretation.  The court found that plaintiff's reading of the policy (that the policy could

---

[18]*Compare Whistman*, 686 P.2d at 1088 ("[W]hen you have not paid the premium . . . we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect."), *with* OB, Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least . . . 10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .").

[19]*Compare O'Brien*, 535 P.2d 46, 48 n.1 ("notice of cancellation for non-payment shall be mailed to the named insured not less than 10 days prior to the effective date thereof."), *with* OB, Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least . . . 10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .").

[20]*O'Brien, 535 P.2d* at 48 ("In reviewing the various policy provisions, we find that the trial court was justified in holding that the provisions are ambiguous and therefore should be construed in a manner most favorable to the insured.  *The appellant's contention that the policy automatically expired at the end of the policy period is clouded by that clause which states that cancellation for nonpayment shall not occur without prior notice.*") (emphasis added).

[21]*See, e.g., id.* at 49 ("Thus, it reasonably appears that appellant's policy has imposed a duty to give the insured notice that he is no longer covered."); *National Union*, 174 F.3d at 344 ("'[t]he settled test for ambiguity is whether the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings.'") (citation omitted).

not be cancelled without 10 days advance notice) was reasonable. *Id.* at 48–49. Because an insurance policy is construed in favor of the insured, the court held that the policy was still in effect on the date of loss because the 10 days advance notice had not been provided. *Id.*

Harleysville's attempt to distinguish *O'Brien* actually lends further support for plaintiff's position. (OB at 11–12) First, although Harleysville's "expiration" argument might carry some weight in construing policies which do not contain a Nonpayment Provision, the essential distinction here *is that the Policy contained a Nonpayment Provision*. A similar provision formed the precise basis for the *O'Brien* decision:

> Thus, it reasonably appears that appellant's policy has imposed a duty to give the insured notice that he is no longer covered. *This point is a significant distinction because it sets the instant policy apart from the ordinary term policy which could expire without notice and makes reference to cases interpreting the usual term policy inappropriate.*

*O'Brien*, 535 P.2d at 49 (citation omitted, emphasis added).[22] Here, as in *O'Brien* (and *Mundorf*), the governing language imposes a duty on the insurer to provide *advance* notice of cancellation for nonpayment of a premium. For this same reason, the cases cited by Harleysville do not apply here, as the policies at issue did not contain a nonpayment

---

[22]Harleysville's unsupported assertion that the *O'Brien* policy "required <u>notice</u> of expiration" appears to be not only unsupported, but also baseless, because the Court relied only on a substantively identical nonpayment provision and does not even mention a "notice of expiration" provision. (AB at 12 (emphasis in original)); *O'Brien*, 535 P.2d at 48, n.1 ("[N]otice of cancellation for non-payment shall be mailed to the named insured not less than 10 days prior to the effective date thereof.").

provision,[23] contained a specific nonrenewal provision,[24] or dealt with an effective cancellation with adequate notice.[25]  None of those circumstances are present here.

Second, Harleysville's attempt to undercut the *O'Brien* decision by pointing out it "was subject to a strong dissent" lends further support for plaintiff's argument that the policy language, at a minimum, is ambiguous (which would require the Court to apply plaintiff's interpretation).  *See New Castle County v. Nat'l Union Fire Ins. Co.*, 243 F.3d 744, 754 ("[S]ome courts have held the language at issue is ambiguous simply because of the wide variance among judicial decisions.") (citation omitted); *Little v. MGIC Indem. Corp.*, 836 F.2d 789, 796 (3rd Cir. 1987) ("We also believe that the case law supports our reading of the policy in a somewhat different respect: that different courts have arrived at conflicting interpretations of the policy is strongly indicative of the policy's essential ambiguity.")

---

[23]*Iagar v. Transp. Ins. Co.*, 2003 WL 22849756 (Mich. Ct. App.) (Ex. E); *Progressive Nw. Inc. Co. v. Torres*, 1999 WL 956693 (Conn. Super. Ct.) (Ex. F).

[24]*Wahl v. Country Mut. Ins. Co.*, 640 N.W.2d 689, 697 (N.D. 2002) ("An insurer shall renew the policy, unless at least thirty days prior to the date of expiration provided in the policy, a notice of intention not to renew the policy beyond the agreed expiration date is made to the policyholder."); *Blackwell v. Farmers Ins. Exchange*, 2005 WL 1595246, at *5 (Ohio Ct. App.) ("Its policy contains both a cancellation provision and a non-renewal provision.) (Ex. G); *Ralston v. Am. Family Mut. Ins. Co.*, 2004 WL 2952677, at *3 (Iowa Ct. App.) ("This policy will automatically terminate at the end of the policy period if you or your representative do not accept our offer to renew it.  Your failure to pay the required renewal premium when due means that you have declined our offer.") (Ex. H); *Fogle v. Le Mars Mut. Ins. Co.*, 2001 WL 709905, at *2 (Iowa Ct. App.) ("Automatic Termination.  If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.") (Ex. I).

[25]*Dimenco v. Selective Ins. Co. of Am.*, 833 A.2d 984, 989 (Del. Super. 2002) ("[T]he actual notice of cancellation sent by Imperial to Plaintiff is unequivocal that the cancellation was effective October 29, 1998.  Plaintiffs have no rational claim that they were aware for less than ten days that their insurance was going to be cancelled on October 29, 1998.).

(citation omitted).  Admittedly, Harleysville cites 2 cases which disagree with the *Mundorf*, *Whistman*, and *O'Brien* courts.[26]  Again, however, judicial disagreement only lends further support for plaintiff's argument that the Policy is ambiguous.  *See National Union*, 243 F.3d at 754; *Little*, 836 F.2d at 796.

Besides, Harleysville's own correspondence and documents shows that Harleyville interpreted the Nonpayment Provision and it Policy as requiring advance notice of cancellation.  For example, Harleysville's March 26, 2004 invoice advised plaintiff:

> **LATE PAYMENTS:**
> Minimum due shown on the front of this invoice must be received by the company on or before the due date shown *to avoid issuance of a notice of cancellation for nonpayment of premium.*

OB, Ex. F at 2 (emphasis added).[27]  Even after the loss, when Harleysville's issued a "Confirmation of Termination" to plaintiff's former mortgagee on July 7, 2004, that document advised the bank: "[t]he interest of the Loss Payee/Mortgagee will cease at the above cancellation or termination date, or 15 days from the issue date of this notice,

---

[26]*See Sitto Enters., Inc. v. Badger Mut. Ins. Co.*, 414 F. Supp. 2d 700 (E.D. Mich 2006) (This case can be distinguished because the insurer sent notices to its insured informing him the policy would expire.  *See id.* at 701–02); *Luedke v. Audubon Ins. Co.*, 874 So.2d 1029 (Miss. Ct. App. 2004).

[27]This is a key area where Harleysville's motion for summary judgment is overly prejudicial to plaintiff.  Despite numerous requests, and a motion for sanctions, Harleysville continues in its refusal to turn over its policies and procedures.  Those policies may contain provisions or language which support plaintiff's interpretation of the Nonpayment Provision. *See*, *e.g.*, *Luedke*, 874 So.2d at 1032 (The insurer's policy manual required "[a] minimum of thirty (30) days advanced notice of expiration will be given to the insured and his representative.").  To allow Harleysville to proceed with a motion for summary judgment despite its refusal to turn over these materials, and the other discovery it refuses to allow (D.I. 31), would be highly prejudicial to plaintiff and deprive him of due process of law.

whichever is later."[28]   The language in these documents confirms that the Nonpayment Provision only gives Harleysville the ability to cancel the policy—*with advance notice*—if plaintiff fails to pay his premium in a timely fashion.  The Policy provides no basis to argue a policy can "expire" outside the operation of the Nonpayment Provision.  Thus, because Harleysville failed to provide notice of coverage termination 10 days before the June 22, 2004 fire, coverage remained intact on that date.

As a final note on this issue, the Court should reject Harleysville's attempts to alter the Nonpayment Provision by relying on correspondence sent to plaintiff, for 2 reasons.[29] First, Delaware law mandates that the Policy language controls the outcome,[30] rather than other documents which do not form part of the contract.  Second, the correspondence itself supports plaintiff's interpretation of the Nonpayment Provision.  *See*, *e.g.*, OB, Ex. F at 610 ("Minimum due shown on the front of this invoice must be received by the company on or before the due date shown *to avoid issuance of a notice of cancellation for nonpayment of premium*.") (emphasis added).

Here, the *Mundorf*, *Whistman*, and *O'Brien* decisions, as well as Harleysville's own documents, show that, as a matter of law, plaintiff's interpretation of the Nonpayment Provision is a reasonable interpretation.  Thus, regardless of whether Harleysville could put forward an alternate reasonable interpretation—*which it did not even attempt to do in its*

---

[28]As explained in plaintiff's opening brief (OB at 7), Harleysville has not provided any evidence to show it sent this document to plaintiff.

[29]AB at 10 ("The premium notice clearly states that the minimum payment must reach Harleysville by June 8, 2004.).

[30]See, *e.g.*, *National Union*, 174 F.2d at 343 ("Delaware courts will not destroy or twist policy language under the guise of construing it . . . .") (citation omitted).

*brief*—the Court must apply plaintiff's interpretation under the principle of *contra proferentem*.[31]

### iv.    Even if the Court Agrees that the Policy "Expired," Delaware Law Precludes the Court from Giving Effect to the Hidden Trap Created by the Nonpayment Provision

In the event the Court concludes the policy simply "expired" (which plaintiff respectfully submits it should not), then the Nonpayment Provision constitutes an unenforceable "hidden trap or pitfall." Delaware precedent demonstrates a long history of reading insurance policies to give effect to any reasonable interpretation that the average member of the public would give its provisions. *See*, *e.g.*, *Hallowell*, 443 A.2d at 926 ("In recent decades, a doctrine has emerged in insurance law which, in essence, states that an insurance policy should be construed 'to effectuate the reasonable expectations of the average member of the public who buys it . . . .'") (citation omitted); *id.* ("As a general rule, . . . an insurance contract is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted.").

This authority also requires courts to refuse to enforce a policy's provisions to the extent they create a "hidden trap or pitfall." *Id.* at 928 ("Therefore, we hold that the doctrine of reasonable expectations is applicable in Delaware to a policy of insurance only if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print purports to take away what is written in large print.). In this case,

---

[31]*See*, *e.g.*, *Hallowell*, 443 A.2d at 926 ("As a general rule, . . . an insurance contract *is construed strongly against the insurer, and in favor of the insured*, because the insurer drafted the language that is interpreted.") (emphasis added).

Harleysville's Policy expressly informed plaintiff that Harleysville is required to give him 10 days *advance* notice if Harleysville seeks to cancel the Policy for nonpayment of premium,[32] and its renewal invoice expressly informed plaintiff that late payments only gave Harleyville the right to cancel with advance notice.[33]    Moreover, the Policy fails to distinguish any "nonpayment of premium" to which that Nonpayment Provision does not apply.    As such, the natural interpretation of that provision is that, when Harleysville cancels or terminates coverage, Harleysville must give advance notice to its insured.    And even if the Court were to determine the Policy can "expire" outside of the Nonpayment Provision, that Nonpayment Provision constitutes a "hidden trap or pitfall" that Delaware law refuses to enforce.    *Id.* at 927–28.

---

[32]OB, Ex. B at 481 ("We may cancel this policy by mailing or delivering . . . written notice of cancellation *at least . . . 10 days before the effective date of cancellation* if we cancel *for nonpayment of premium . . . .*).

[33]OB, Ex. F at 2.

*Conclusion*

The plain, unambiguous language of Harleysville's insurance policy prevents Harleysville from retroactively cancelling coverage and from cancelling the coverage with less than 10 days advance notice. Because Harleysville failed to cancel the coverage at issue at least 10 days prior to the fire at issue, the policy continued to provide coverage on the day of the fire, and Layne Drexel is entitled to coverage.

Moreover, even if Harleysville comes forward with an alternate, but reasonable, interpretation of the language at issue, the Court should apply the principle of *contra proferentem* and construe the policy in Drexel's favor.

SMITH, KATZENSTEIN & FURLOW LLP

    */s/ Robert K. Beste*
Kathleen M. Miller (ID No. 2898)
Robert K. Beste, III (ID No. 3931)
Post Office Box 410
Wilmington, Delaware 19899
Telephone:    (302) 652-8400
Facsimile:    (302) 652-8405
Email:        rkb@skfdelaware.com

*Attorneys for plaintiff*

June 14, 2007