**EXHIBIT E**

Not Reported in N.W.2d                                          Page 1
Not Reported in N.W.2d, 2003 WL 22849756 (Mich.App.)
**(Cite as: Not Reported in N.W.2d)**

Iagar v. Transport Ins. Co.
Mich.App.,2003.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Court of Appeals of Michigan.
Cornel IAGAR and Mariana Iagar, Plaintiffs-Appellants,
v.
TRANSPORT INSURANCE COMPANY, Defendant-Appellee.
**No. 241196.**

Dec. 2, 2003.

Before: MURRAY, P.J., and GAGE and KELLY, JJ.

[UNPUBLISHED]
PER CURIAM.
**\*1** Plaintiffs appeal as of right the trial court's order
granting defendant's motion for summary disposition.
We affirm. This appeal is being decided without oral
argument pursuant to MCR 7.214(E).

Plaintiffs maintained an automobile insurance policy
issued by defendant. The policy, in effect from
December 16, 1999 through June 15, 2000, provided
that if defendant offered to renew coverage and the
insured did not accept the offer, the policy would ter-
minate at the end of the current policy period. The in-
sured's failure to pay the required renewal premium
"when due" indicated that the insured had not accep-
ted the offer to renew. Defendant offered to renew
plaintiffs' policy for the period June 16, 2000 through
December 15, 2000. The renewal notice stated that
the policy expired at 11:59 p.m. on June 15, 2000 and
that payment of the renewal premium was due on that
date. The renewal notice stated that the renewal pay-
ment must be postmarked "on or before" June 15,
2000, and suggested that the insured allow five days
for mailing and processing.

On June 18, 2000, plaintiffs were involved in an
automobile accident. On June 19, 2000, they person-
ally delivered the renewal premium to an agent for
defendant, and reported the accident. Defendant de-

clined to pay benefits on the ground that plaintiffs'
policy expired on June 15, 2000. Plaintiffs filed suit
alleging that their policy was renewed in a timely
manner and that they were entitled to benefits. De-
fendant moved for summary disposition pursuant to
MCR 2.116(C)(10), arguing that the terms of its con-
tract with plaintiff unambiguously provided that the
policy expired on June 15, 2000, and that the renewal
premium was due no later than June 15, 2000. In re-
sponse, plaintiffs argued that an issue of fact existed
as to when defendant required actual receipt of the re-
newal premium. They asserted that because the re-
newal notice required a postmark date of June 15,
2000, and suggested allowing five days for mailing, it
was reasonable to assume that defendant did not ex-
pect to receive payment before June 20, 2000.

The trial court granted defendant's motion for sum-
mary disposition, finding that no ambiguity existed
between the policy and the renewal notice. The
policy clearly stated that coverage expired at 11:59
p.m. on June 15, 2000. The renewal notice stated that
the renewal premium was due on June 15, 2000, and
that the payment should be postmarked on or before
June 15, 2000.

We review a trial court's decision on a motion for
summary disposition de novo. *Auto Club Group Ins
Co v. Burchell,* 249 Mich.App 468, 479; 642 NW2d
406 (2001).

An insurance contract should be read as a whole and
meaning given to all terms. *Auto-Owners Ins Co v.
Churchman,* 440 Mich. 560, 566; 489 NW2d 431
(1992). An insurance contract is clear and unambigu-
ous if it fairly admits of but one interpretation. *Farm
Bureau Mut Ins Co v. Nikkel,* 460 Mich. 558, 566;
596 NW2d 915 (1999). If the language of an insur-
ance contract is clear, its construction is a question of
law for the court. *Henderson v. State Farm Fire &
Cas Co,* 460 Mich. 348, 353; 596 NW2d 190 (1999).
An insurance contract is ambiguous if, after reading
the entire contract, its language can be reasonably un-
derstood in different ways. *Nikkel, supra* at 566-567.
Ambiguities are to be construed against the insurer.
*State Farm Mut Auto Ins Co v. Enterprise Leasing*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d, 2003 WL 22849756 (Mich.App.)
**(Cite as: Not Reported in N.W.2d)**

*Co,* 452 Mich. 25, 38; 549 NW2d 345 (1996).

**\*2** Plaintiffs argue that the trial court erred by grant-ing defendant's motion for summary disposition. We disagree. The policy and renewal notice stated that the policy expired at 11:59 p.m. on June 15, 2000. This language is clear and unambiguous, and thus fairly admits of but one interpretation. *Nikkel, supra* at 566. The renewal notice stated that the renewal premium was due June 15, 2000, and that a premium sent by mail must be postmarked on or before that date. A payment postmarked on June 15, 2000, but received after that date was retroactive to 12:00 a.m. on June 16, 2000. Plaintiffs correctly note that the re-newal notice did not state that the policy could be re-newed only by mail; however, nothing in the notice indicated that a payment made in person could be made later than June 15, 2000. All information avail-able to plaintiffs indicated that the renewal payment was due on June 15, 2000, and that if the payment was mailed it was required to be postmarked no later than that date to be considered timely. Plaintiffs did not pay the renewal premium until June 19, 2000, the day after they were involved in an accident. They failed to pay the renewal premium by the due date; therefore, they were not covered at the time of the ac-cident. *McCormic v. Auto Club Ins Ass'n,* 202 Mich.App 233, 238; 507 NW2d 741 (1993). The lan-guage of the policy and renewal notice was clear and unambiguous. The trial court was required to enforce the policy as written, and could not create an ambigu-ity where none existed in order to apply the reason-able expectations rule. *McKusick v. Travelers Indem-nity Co,* 246 Mich.App 329, 338; 632 NW2d 525 (2001). Summary disposition was proper.

Affirmed.

Mich.App.,2003.
Iagar v. Transport Ins. Co.
Not Reported in N.W.2d, 2003 WL 22849756 (Mich.App.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

Not Reported in A.2d                                                                                           Page 1
Not Reported in A.2d, 1999 WL 956693 (Conn.Super.)
(Cite as: Not Reported in A.2d)

Progressive Northwestern Ins. Co. v. Torres
Conn.Super.,1999.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Connecticut.
PROGRESSIVE NORTHWESTERN INSURANCE
COMPANY,
v.
Hector TORRES, et al.
**No. CV 990495085S.**

Oct. 5, 1999.

Memorandum of Decision
KREMSKI.

**\*1** Plaintiff, Progressive Northwestern Insurance
Company (hereinafter "Progressive"), brings this ac-
tion seeking a resolution of its liability to, and/or du-
ties owed to, the defendants resulting from an auto-
mobile insurance coverage policy number
1427642-0, issued by the plaintiff to defendants, Hec-
tor Torres and Madeline Murphy.

The relevant factual situation underlying this action is
as follows:
The plaintiff issued the above-mentioned automobile
insurance policy to the defendants, Hector Torres and
Madeline Murphy, for the period from January 11,
1996 to July 11, 1996. This policy provided coverage
for two automobiles: one a Nissan Maxima, vehicle
identification number IN1CA21D2ST054430, and a
1994 Plymouth Grand Voyager, vehicle identification
number 1P4GH44R2RX142681.

On September 27, 1996, the defendant, Madeline
Murphy, was in an automobile accident. The Police
Accident Report (Plaintiff's Exhibit 1) sets out the de-
fendant, Madeline Murphy, as the driver of a 1989
Plymouth automobile, registration 4X2984, vehicle
identification number 1P4FH5437KX62718, in-
volved in that accident.

Murphy claims the Police Accident Report incor-
rectly identified her automobile as a 1989 Plymouth
van, when in fact it was a 1994 Plymouth Grand

Voyager, vehicle identification number
1P4GH44R2RX142681. She presented Defendant's
Exhibit A to show that she had owned the 1989 Ply-
mouth mentioned in the Police Report, but had turned
it in when she purchased the 1994 Plymouth Grand
Voyager on June 28, 1995 from Town & Country
Auto Sales, Inc.

Further, the Police Report sets out the information as
to Madeline J. Murphy's automobile insurance cover-
age as "Charter Oak Fire, policy number
9208442391011."

The issues raised by the parties concern the effective
termination date of plaintiff's policy number
01427642-1 and what effect on that termination date
the application of General Statutes § 38a-323 has on
the factual situation set out herein.

The plaintiff claims that it mailed to Murphy on May
29, 1996 a "Notice of Payment Due" for renewal of
policy no. 01427642-2, indicating that the policy
would expire on July 11, 1996; that if the defendants
wanted the policy to continue in effect after the July
11, 1996 date, they were required to pay the premium
due by July 11, 1996; and that Murphy's failure to
pay the premium due by July 11, 1996 effectively ter-
minated the insurance coverage on that date.

Further, the plaintiff argues that it met its statutory
obligations regarding notice of the ending of insur-
ance coverage on July 11, 1996, as provided by the
plaintiff's policy.

The plaintiff further points out that even if it had
failed to send out the notice regarding the ending of
the insurance coverage and its offer to renew the
policy upon receipt of the premium due by July 11,
1996, it still had plied with the requirements of Gen-
eral Statutes § 38-323, specifically § 38-323(c), since
Murphy failed to exercise the options within thirty
(30) days set out therein for continuance of the insur-
ance coverage.

**\*2** The court concurs with the plaintiff's conclusion
that its auto insurance policy number 1427642 auto-
matically terminated by the policy's terms on July 11,

Not Reported in A.2d, 1999 WL 956693 (Conn.Super.)
**(Cite as: Not Reported in A.2d)**

1996; further, that plaintiff's offer to extend the policy after the July 11, 1996 date was not accepted by the defendants and that the condition set forth in the plaintiff's offer, i.e., payment of the premium, was not carried out by the defendants; and further that the plaintiff mailed the notice required by statute to the defendants within the thirty (30) day statutory period.

Additionally, Murphy made no attempt to continue the plaintiff's insurance coverage after the July 11, 1996 termination date by complying with the options set out in General Statutes § 38a-323(c).

Therefore, Judgment may enter for the plaintiff as follows:
That the plaintiff's automobile insurance policy coverage of defendants' vehicles set out in policy number 1427642 terminated on July 11, 1996; and

That the plaintiff owes no duty under that policy to protect Madeline J. Murphy's interests after that termination date, nor to protect any third-party interests that may have arisen after that date resulting from acts or omissions of Madeline J. Murphy.

Conn.Super.,1999.
Progressive Northwestern Ins. Co. v. Torres
Not Reported in A.2d, 1999 WL 956693 (Conn.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT G

Not Reported in N.E.2d                                                        Page 1

Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

Blackwell v. Farmers Ins. Exchange
Ohio App. 4 Dist.,2005.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.
 Court of Appeals of Ohio, Fourth District, Pickaway
County.
Linda BLACKWELL, Plaintiff-Appellant,
v.
FARMERS INSURANCE EXCHANGE et al., De-
fendants-Appellees.
**No. 05CA3.**

June 27, 2005.

**Background:** Homeowner brought declaratory judg-
ment action against insurance company, requesting
judgment that she had homeowner's insurance cover-
age on date fire destroyed home, and also asserted
breach of contract and good faith. The Court of Com-
mon Pleas, Pickaway County, granted insurance
company's motion for summary judgment, and
homeowner appealed.

**Holdings:** The Court of Appeals, Abele, P.J., held
that:

(1) insurance company did not cancel homeowners'
insurance policy but rather failed to renew policy due
to homeowner's failure to pay renewal premium, and
thus notice of cancellation provision did not apply;

(2) statute requiring notification of cancellation of in-
surance policy did not apply to insurer's failure to re-
new homeowners' insurance policy; and

(3) homeowner's theory that payment from insurance
company to mortgage company was an admission
that homeowners' insurance policy remained effective
on the date of homeowner's loss was mere specula-
tion and was insufficient to overcome insurance com-
pany's properly supported summary judgment mo-
tion.

Affirmed.

**[1] Insurance 217 ☞1900**

217 Insurance
    217XIII Contracts and Policies
        217XIII(L) Renewal
            217k1900 k. Notice. Most Cited Cases

**Insurance 217 ☞2039**

217 Insurance
    217XIV Premiums
        217XIV(F) Default or Failure to Pay
            217k2038 Lapse or Termination of Cover-
age
                217k2039 k. In General. Most Cited
Cases

**Insurance 217 ☞2044(1)**

217 Insurance
    217XIV Premiums
        217XIV(F) Default or Failure to Pay
            217k2041 Cancellation of Coverage
                217k2044 Notice
                    217k2044(1) k. In General. Most
Cited Cases
Insurance company did not "cancel" homeowners' in-
surance policy, but rather failed to renew policy due
to homeowner's failure to pay renewal premium, and
thus policy's cancellation provision, which required
notification of cancellation, did not apply; coverage
was not cancelled but rather lapsed.

**[2] Insurance 217 ☞1900**

217 Insurance
    217XIII Contracts and Policies
        217XIII(L) Renewal
            217k1900 k. Notice. Most Cited Cases
Statute requiring notification of cancellation of insur-
ance policy did not apply to insurer's failure to renew
homeowners' insurance policy, as statute by its terms
applied only to "a policy of commercial property in-
surance, commercial fire insurance, or commercial
casualty insurance other than fidelity or surety bonds,
medical malpractice insurance, and automobile insur-
ance." R.C. § 3937.25(B).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

**[3] Judgment 228 ⟋185.3(12)**

228 Judgment
    228V On Motion or Summary Proceeding
        228k182 Motion or Other Application
            228k185.3 Evidence and Affidavits in Particular Cases
                228k185.3(12) k. Insurance. Most Cited Cases
Homeowner's theory that payment from insurance company to mortgage company was an admission that homeowners' insurance policy remained effective on the date of homeowner's loss was mere speculation and was insufficient to overcome insurance company's properly supported summary judgment motion on homeowner's claim for coverage under policy, which had lapsed due to nonpayment of renewal premium; there were any number of reasons as to why insurance company paid mortgage company.

Civil Appeal from Common Pleas Court.

Robert P. Rutter, Independence, Ohio, for Appellant.
Jay C. Rice, Mark G. Greer, and Janice Aitken, Cleveland, Ohio, for Appellee.

      DECISION AND JUDGMENT ENTRY
ABELE, Presiding J.
**\*1** {¶ 1} This is an appeal from a Pickaway County Common Pleas Court summary judgment in favor of Farmers Insurance Exchange (Farmers), defendant below and appellee herein.

{¶ 2} Linda Blackwell, plaintiff below and appellant herein, raises the following assignment of error:
"THE TRIAL COURT ERRED IN GRANTING FARMERS' MOTION FOR SUMMARY JUDGMENT AND OVERRULING THE PLAINTIFF'S MOTION FOR DECLARATORY RELIEF."

{¶ 3} The parties do not dispute the underlying facts. In 1999, appellant obtained a homeowners insurance policy from Farmers. Farmers renewed her policy yearly from 1999 to 2003. On February 4, 2003, Farmers mailed appellant a renewal notice that contained a "renewal/due date" of March 29, 2003 and stated:
"Your policy will be renewed an additional twelve (12) month term only if payment of total premium or

the optional payment indicated is made on or before the renewal date of this notice. Failure to make this payment will cause the policy to expire as of the renewal/due date."

{¶ 4} Appellant did not pay the premium by March 29, 2003.

{¶ 5} On April 10, 2003, Farmers sent appellant an "Important Expiration Notice," which stated:
"Although the due date has passed you can still accept the Company's offer to renew your policy. If payment is received within 15 days after the due date, your policy will renew without interruption of coverage. If payment is not received within 15 days, the policy will not renew, and coverage will have been terminated as of the due date."

{¶ 6} Again, appellant did not make any payment to Farmers.

{¶ 7} On April 20, 2003, a fire destroyed appellant's home. On April 22, 2003, appellant express mailed a check to Farmers for the premium payment. On April 24, 2003, appellant stopped payment on the check and visited the insurance agency to hand-deliver a check.

{¶ 8} On April 25, 2003, Farmers mailed appellant a notice that stated: "Your policy was cancelled for non-payment of premium on the cancellation date shown above and as noted on the cancellation notice sent to you earlier."

{¶ 9} On April 29, 2003, Farmers sent appellant a reinstatement notice that reinstated the policy effective April 24, 2003, the date the insurance agent received the premium payment. Appellant later sought coverage for the loss she suffered from the April 20, 2003 fire. Farmers denied her claim and asserted that her failure to pay the renewal premium caused the policy to lapse at the end of the term, March 29, 2003.

{¶ 10} Subsequently, appellant filed a declaratory judgment action against Farmers and requested the court to declare that she had coverage on the date of the fire. Appellant asserted that Farmers canceled the policy without complying with Ohio statutory law or the policy terms and that the policy remained effect-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

ive as of April 20, 2003. She also alleged breach of contract and good faith.

{¶ 11} On July 1, 2004, appellant filed a "motion for declaratory relief." Appellant requested the court to declare that she was entitled to coverage under the Farmers policy because Farmers failed to properly cancel the policy, which resulted in the policy continuing to remain in effect on the date of her loss.

*2 {¶ 12} Farmers filed a summary judgment motion and asserted that: (1) appellant did not have a homeowners insurance policy with Farmers on the date of her loss because she failed to satisfy a condition precedent to the renewal of her policy by paying the renewal premium; (2) neither the cancellation provisions in the Farmers policy nor R.C. 3937.25 applies to a lapse in coverage for nonpayment of a renewal premium; and (3) even if the ten day notice provision in the cancellation provision applies to a lapse in coverage due to nonpayment of a renewal premium, the February 4, 2003 notice satisfied the provision's requirement.

{¶ 13} Appellant later filed a supplemental brief and requested the court to consider a document that it had recently received in discovery from Countrywide. The document was some type of log that stated:
"I CLD FARMERS INSURANCE AND SPOKE WITH LAMAR WHO ADVISED THE POLICY CANCELED ON 6/11/03-LAMAR ALSO PROVIDED CLAIM INFORMATION: ADJUSTER DALE KILDORE * * *-I CLD DALE-I ASKED I WAS TOLD BY FARMERS CLAIMS CENTRAL THAT THE POLICY CANCELLED 6/11/03 WHICH IS AFTER THE DOL OF 4/20/03 AND WHY CLAIM WAS DENIED-HE SAID PER COVERAGE SPECIALIST, CLINT WAISNER, THE POLICY CANCELED 3/29/03-I CLD CLINT WAISNER-HE SAID POLICY CANCELED 3/29/03-I ASKED WHY CLAIMS CENTRAL SAID POLICY CANCELED 6/11/03-HE HAD NO ANSWER-I FILED CLAIM WITH HIM UNDER MORTGAGEE CLAUSE-HE CALLED ME BACK AND ASKED IF LOAN IS CURRENT-ADVISED YES IT IS-HE SAID CAN NOT FILE UNDER MORTGAGEE CLAUSE UNLESS THE FCL SALE HAS TAKEN PLACE BECAUSE THE BWR STILL

HAS INTEREST-HE WILL FAX ME THE POLICY PROVISIONS * * *."

{¶ 14} Farmers filed a motion to strike and argued that the document constituted unauthenticated hearsay and is not proper evidence within Civ.R. 56. The trial court did not rule on the motion.

{¶ 15} On January 6, 2005, the trial court granted Farmers' summary judgment motion and denied appellant's summary judgment motion. The court determined that Farmers did not cancel the policy, but that appellant chose not to renew the policy by failing to pay the renewal premium. The court noted that the cancellation provisions apply only when Farmers decides not to renew a policy or decides to cancel an existing policy. The court further noted that Farmers offered to renew the policy if appellant paid the premium, and that when appellant did not pay the premium, she rejected the renewal offer. Thus, although Farmers' April 25, 2003 notice used the word "cancel" or "cancellation," the notice, in substance, advised appellant that her policy had expired and that she could reinstate the policy by paying the premium. Appellant timely appealed the trial court's judgment.

{¶ 16} In her sole assignment of error, appellant asserts that the trial court erroneously granted Farmers' summary judgment motion and denied her summary judgment motion. She asserts that the trial court wrongly concluded that her homeowners policy was not effective on the date of her loss because Farmers did not properly cancel the policy as it failed to comply with the policy terms and with R.C. 3937.25. Appellant argues that Farmers failed to properly cancel the policy in the following respects: (1) both the insurance policy and R.C. 3937.25 required Farmers to send appellant a cancellation notice, not just a premium notice, ten days before the cancellation; and (2) Farmers did not send appellant a written cancellation notice that contained, at a minimum, the date of cancellation and an explanation for the cancellation at least ten days before canceling her policy. Appellant argues that none of the notices, except the April 25, 2003 notice, complied with the policy terms or with R.C. 3937.25. Thus, appellant argues that Farmers' cancellation was ineffective, the policy remained effective as of the date of her loss.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
(Cite as: Not Reported in N.E.2d)

*3 {¶ 17} Appellant disagrees with the trial court's determination that her policy lapsed for nonpayment of premium. She asserts: "Farmers treated this situation like a cancellation by sending [appellant] a cancellation notice, not merely a lapse notice. [The April 25, 2003 notice] contains a 'cancellation date,' not a lapse date, and uses the terms 'canceled' or 'cancellation' several times. It does not use the term 'lapse' anywhere. * * * *" Appellant further argues that Ohio law does not distinguish between "cancellation" and "lapse." She additionally contends that because Farmers paid the claim that Countrywide Home Loans, the mortgagee, submitted, it implicitly admitted that the policy remained in effect on the date of her loss. Appellant notes that the Mortgage Clause states:
"If we deny your claim, such denial will not apply to a mortgagee's valid claim if the mortgagee:
a. knows and notifies us of any change in ownership, occupancy or substantial change in risk.
b. pays on demand any premium due if you have failed to do so.
c. submits a signed, sworn statement of loss within 60 days after we notify the mortgagee of your failure to do so. * * *
We will give the mortgagee 10 days notice before cancelling this policy."

{¶ 18} Appellant speculates that Farmers paid Countrywide because it failed to give Countrywide ten days notice before it cancelled the policy.

{¶ 19} Appellant further asserts that Farmers' policy is ambiguous concerning whether the cancellation provision applies to non-renewals for nonpayment of the premium. She argues that the cancellation provision does not distinguish between types of premiums. She thus contends that we must liberally construe the cancellation provision of Farmers' policy to mean that it applies to lapses in coverage for nonpayment of a renewal premium, as well as traditional cancellations for nonpayment during the policy period.

{¶ 20} Farmers essentially asserts that appellant bases her argument upon the flawed premises that it canceled her policy and that R.C. 3937.25 applies. Farmers contends that appellant, by failing to pay the renewal premium when due, failed to satisfy a condi-

tion precedent to renewing her policy before the end of the policy period. Farmers argues that when appellant failed to pay the renewal premium, her policy terminated. Farmers notes that the declarations page states that the policy period is from March 29, 2002 to March 29, 2003. The policy states that it "will continue for successive policy periods, if: (1) We elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our premiums, rules and forms then in effect." Additionally, Farmers argues that R.C. 3937.25 does not apply to homeowners insurance policies.

{¶ 21} Farmers recognizes that it paid Countrywide for the loss, but asserts that its payment to Countrywide is not an admission that Farmers improperly canceled the policy.

*4 {¶ 22} Initially, we note that when reviewing a trial court's decision regarding a summary judgment motion, an appellate court conducts a de novo review. See, e.g., *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment was appropriate and need not defer to the trial court's decision. See *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. Thus, in determining whether a trial court properly granted a motion for summary judgment, an appellate court must review the standard for granting a motion for summary judgment as set forth in Civ.R. 56, as well as the applicable law.

{¶ 23} Civ.R. 56(C) provides, in relevant part, as follows:
* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 24} Thus, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.

{¶ 25} An insurance policy is a contract. *Westfield Ins. Co. v. Galatis* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 9. Our role in interpreting a contract is to give effect to the contracting parties' intent. Id. at ¶ 11, 797 N.E.2d 1256. In doing so, we must examine the insurance contract as a whole and presume that the language used in the policy reflects the parties' intent. Id., citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. "We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id., citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus. When the words used are clear, we "may look no further than the writing itself to find the intent of the parties." Id. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning. Id.

**\*5** {¶ 26} When a contract is ambiguous we may consider extrinsic evidence to ascertain the parties' intent. Id. at ¶ 12, 374 N.E.2d 146, citing *Shifrin v. Forest City Enterprises, Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499. We may not, however, "alter a lawful contract by imputing an intent contrary to that" the parties expressed. Id. Generally, the fact finder must resolve ambiguity in a written contract.

Id. at ¶ 13, 597 N.E.2d 499. When the contract is "standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." Id. Because in the insurance context the insurer customarily drafts the contract, courts ordinarily construe ambiguity in an insurance contract against the insurer and in favor of the insured. Id., citing *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus.

[1] {¶ 27} In the case sub judice, we first look to the policy language to determine whether the contract is ambiguous. The declarations page lists the policy period as March 29, 2002 to March 29, 2003 and states: "This policy will continue for successive policy periods if: (1) we elect to continue this insurance, and (2) if you pay the renewal premium for each successive policy period as required by our premiums, rules and forms then in effect." This language is not ambiguous. The language clearly informs the insured that the policy will renew for an additional period if the insured pays the renewal premium. The implied premise is that the policy will not renew if the insured fails to pay the renewal premium.

{¶ 28} We note that the Farmers' policy does not explicitly impose upon it any obligations when a policy does not renew because the insured failed to pay the renewal premium. Its policy contains both a cancellation provision and a non-renewal provision. The cancellation provision states:

"We may cancel this policy by mailing or delivering written notice to you, or your representative. Such notice will be mailed or delivered to the last address known to us. The mailing of it will be sufficient proof of notice."

{¶ 29} The policy states that Farmers may cancel the policy "only for the following reasons: (1) Nonpayment of premium, whether payable to us or our agent. We may cancel at any time by notifying you at least 10 days before the date cancellation takes effect."

{¶ 30} The non-renewal provision states:
"We may elect:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

a. not to renew this policy; or
b. to condition its renewal on a reduction of limits or a reduction or elimination of coverages.
We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. The mailing of it will be sufficient proof of notice."

{¶ 31} To decide whether the cancellation provision applies when the insured fails to pay the renewal premium due by the end of the policy expiration date, we must consider whether the plain, ordinary meaning of the words "cancel" and "cancellation" includes a non-renewal. Black's Law Dictionary (6Ed.1990) defines "cancel" as follows: "To obliterate; to strike or cross out. To destroy the effect of an instrument by defacing, obliterating, expunging, or erasing it. To revoke or recall; to annul or destroy, make void or invalid, or set aside. To rescind; abandon; repeal; surrender; waive; terminate. The term is sometimes equivalent to 'discharge' or 'pay.' " Id. at 206, 519 N.E.2d 1380. It defines "cancellation" as follows: "To destroy the force, effectiveness, or validity of. To annul, abrogate, or terminate. * * * As used in insurance law, term refers to the termination of an insurance policy by an act of either or both of the parties to it, prior to the ending of the policy period." Id.

**\*6** {¶ 32} Employing the plain meaning of "cancellation," we do not believe that it carries the same meaning as non-renewal in this situation. Thus, Farmers' cancellation provision does not apply when the policy expires due to the insured's failure to pay the renewal premium. Neither appellant nor Farmers acted before the policy period ended so as to terminate the policy. Instead, appellant failed to act, which caused the policy to end. Neither she nor Farmers affirmatively sought to terminate the policy before the policy period ended. Thus, what resulted was not a cancellation subject to the cancellation provisions.

{¶ 33} Contrary to appellant's argument, simply because Farmers labeled her policy as "canceled" in the April 25, 2003 notice does not mean that it "canceled" the policy so as to require it to comply with its policy's cancellation provisions. It is well-settled that courts do not decide the legal effect of a

written instrument based upon the label the parties attach to it, but instead must examine the language used to determine the legal effect. See *Worth v. Aetna Cas. & Sur. Co.* (1987), 32 Ohio St.3d 238, 241, 513 N.E.2d 253 (stating that "the nature of a given provision is determined not by the label the parties give it, but rather by the legal effect of the provision as expressed by the parties in their agreement").

{¶ 34} Appellant has not argued that Farmers failed to comply with the non-renewal provision. We have included it in our discussion simply to note that the policy distinguishes between a cancellation and a non-renewal.

[2] {¶ 35} Furthermore, contrary to appellant's argument, R.C. 3937.25 does not govern the case at bar. By its terms, the statute applies to "a policy of commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds, medical malpractice insurance, and automobile insurance." See R.C. 3937.25(B). The statute reads:

"(B) After a policy of commercial property insurance, commercial fire insurance, or commercial casualty insurance other than fidelity or surety bonds, medical malpractice insurance, and automobile insurance as defined in section 3937.30 of the Revised Code, has been in effect for more than ninety days, a notice of cancellation for such policy shall not be issued by any licensed insurer unless it is based on one of the following grounds: (1) Nonpayment of premium;

* * *

(C) The notice of cancellation required by this section must be in writing, be mailed to the insured at the insured's last known address, and contain all of the following:
(1) The policy number;
(2) The date of the notice;
(3) The effective date of the cancellation;
(4) An explanation of the reason for cancellation.
Such notice of cancellation also shall be mailed to the insured's agent.
(D) Except for nonpayment of premium, the effective date of cancellation must be no less than thirty days from the date of mailing the notice. When cancellation is for nonpayment of premium, the effective date

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

of cancellation must be no less than ten days from the date of mailing the notice.

*7 {¶ 36} Thus, by its terms the statute does not apply to homeowners insurance policies. Neither party has cited a statute that applies to a non-renewal of a homeowners policy due to nonpayment of premium and our research has not revealed one. Thus, in the absence of statutory guidance, we apply Ohio common law.

{¶ 37} Under Ohio common law, an insurer has no duty to notify the insured when the insurance policy has lapsed due to nonpayment of the renewal premium. See *Morey v. Educator & Executive Insurers, Inc.* (1976), 45 Ohio St.2d 196, 342 N.E.2d 691, overruled in *DeBose v. Travelers Ins. Co.* (1983), 6 Ohio St.3d 65, 451 N.E.2d 753. " 'In the absence of contract, statute, or course of dealing so requiring, no notice of lapse of the policy for non-payment of premium is necessary." ' *Mink v. Economy Fire and Cas. Co.* (Aug. 10, 1982), Franklin App. No. 82AP-317, quoting 6 Couch on Insurance 2d, Sec. 32.92.

{¶ 38} In *Morey,* the court held: "Where an automobile liability insurance policy has lapsed and terminated for nonpayment of the renewal premium, R.C. 3937.30 through 3937.39 do not require the insurance company which issued that insurance policy to send a notice of cancellation to the policyholder." Id. at paragraph two of the syllabus. In *Morey,* the insurer sent two separate renewal notices to its insured that the premium was due March 1, 1973. Each notice stated that the policy would expire if the premium was not paid by the due date and that the policy would extend for six months if the insured paid the premium. The insured did not pay the premium by the due date. On March 17, 1973, the insured was in an automobile accident. On March 18, 1973, the insured called his insurer to report the accident. He asked whether his policy was still in force because of the overdue premium. The insurer told him that the policy had been canceled. He nonetheless mailed a check for the past due premium, which the insurer received March 20, 1973. The company accepted the payment and reinstated the policy from March 20, 1973 to September 20, 1973. The insured claimed

that the insurer's failure to mail a cancellation notice pursuant to R.C. 3937.32 and its acceptance of the March 20, 1973 premium payment renewed the policy as of March 1, 1973. The insurer denied coverage.

{¶ 39} On appeal, the Ohio Supreme Court held that "[t]he statutory requirement of notice of cancellation, contained in R.C. 3937.32, does not require notice to terminate coverage where a policy has 'lapsed.' 'Cancellation' is a term of precise definition, and refers to the termination of a policy by act of either or both of the parties to it, prior to the ending of the policy period. The term 'lapse,' on the other hand, refers to the termination of a policy because its policy period has expired." Id. at 199-99, 342 N.E.2d 691. The court reasoned that R.C. 3937.32 requires a notice of cancellation "only when the company terminates coverage under an insurance policy prior to the expiration of the term for which it was written, and then for one of the reasons enumerated in R.C. 3937.31." Id. at 199, 342 N.E.2d 691.

*8 {¶ 40} In *Debose,* the court overruled *Morey'* s holding that the insurer need not send a cancellation notice before terminating an automobile insurance policy for nonpayment of the premium. The court held: "In order to terminate an automobile insurance policy for nonpayment of premiums and within the mandatory renewal period set forth in R.C. 3937.31, the issuer of the policy must send, pursuant to R.C. 3937.30 et seq., a notice of cancellation to the policyholder." Id. at syllabus.

{¶ 41} In reaching its decision, the court relied upon former R.C. 3937.31, which required every automobile policy to be issued for not less than a two-year policy period or guaranteed renewable for successive policy periods totaling not less than two years. The statute read:
"Where renewal is mandatory, 'cancellation,' as used in sections 3937.30 to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period. No insurer may cancel any such policy except pursuant to the terms of the policy, and in accordance with sections 3937.30 to 3937 .39 of the Revised

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                           Page 8
Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

Code, and for one or more of the following reasons:
* *

(3) Nonpayment of premium, which means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premiums, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit."

{¶ 42} The court further observed that "R.C. 3937.31(A) designates as a 'cancellation' any refusal to renew a policy with all of its initial coverages and limits, and that "the statute expressly provides that the termination of a policy * * * within the mandatory renewal period and for nonpayment of premiums is a cancellation which may only be properly effected through compliance with, inter alia, the notice requirement of R.C. 3937.30 et seq."

{¶ 43} The court stated that *Morey*'s "distinction[ ] between lapses and cancellations may be germane to common-law analyses of insurance policy terminations," but the General Assembly "has statutorily defined 'cancellation' to include such lapses as occur when an insurer refuses to renew a policy. We are thus constrained to attribute that meaning to cancellation, at least in the context of R.C. 39037.30 et seq., which the General Assembly has so ascribed." Id. The court noted that when " 'a statute defines terms used therein which are applicable to the subject matter by the legislation, such definition controls in the application of the statute * * *.' " Id., quoting *Woman's Bowling Congress v. Porterfield* (1971), 25 Ohio St.2d 271, 267 N.E.2d 781, paragraph two of the syllabus.

{¶ 44} In the case sub judice, we do not believe that *DeBose* applies. Instead, we apply *Morey*'s common law distinction between "cancellation" and "lapse." The *DeBose* court explicitly recognized that its holding is based upon the language used in the automobile liability insurance policy cancellation statute provisions, which helped define "cancellation." By contrast, in the case at bar we have not discovered a statute that sets forth any specific requirements before a homeowners policy can expire for nonpayment of the renewal premium. The parties have not cited a

statute that specifically defines "cancellation" as used in a homeowners policy. Thus, *DeBose*'s holding and interpretation of the automobile liability insurance policy statutes does not apply to our interpretation of Farmers' homeowners insurance policy. Instead, we apply common law.

**\*9** {¶ 45} Our decision is consistent with *Anca v. White* (Sept. 26, 1988), Warren App. Nos. 88-01-5 and 88-03-25. In *Anca*, the trial court granted summary judgment in the insurance company's favor and concluded that it was not liable for loss sustained after a policy lapsed. The purported insured carried property insurance with Indiana Insurance Company that had a policy term of January 6, 1986 to January 6, 1987. In November of 1986, the insurer sent two notices that the premium was due. In December of 1986, the insurer sent two notices stating that the policy would not renew unless the insured paid the premium. The insured did not pay the premium. On February 9, 1987, a fire destroyed one of the insured's buildings.

{¶ 46} On appeal, the court determined that the insurance coverage had lapsed due to nonpayment of the renewal premium. The court disagreed with the insured's argument that non-renewal was akin to cancellation. The court stated: "We find no distinction between the non-renewal and the lapse of appellants' policy. When appellants' policy was not renewed, the policy lapsed. Therefore, [the insurer] had no common law duty to notify appellants of the non-renewal."

{¶ 47} In the case at bar, appellants' policy lapsed due to her nonpayment of the renewal premium. Because the policy lapsed, Farmers had no duty to comply with policy provisions regarding cancellation. Farmers had no duty to comply with R.C. 3937.25 because that statute does not apply to homeowners insurance policies.

[3] {¶ 48} Additionally, we disagree with appellant that Farmers' payment to Countrywide represents an admission that the policy remained effective on the date of her loss. Any number of reasons exist why Farmers paid Countrywide, and appellant's theory is speculation. Speculation is not sufficient to overcome

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499
**(Cite as: Not Reported in N.E.2d)**

a properly supported summary judgment motion. See, e.g., *Vermett v. Fred Christen and Sons Co.* (2000), 138 Ohio App.3d 586, 613, 741 N.E.2d 954.

{¶ 49} Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.
JUDGMENT AFFIRMED.

### JUDGMENT ENTRY

It is ordered that the appeal be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pickaway County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KLINE, J. & MCFARLAND, J.: concur in Judgment & Opinion.

### NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

Ohio App. 4 Dist.,2005.
Blackwell v. Farmers Ins. Exchange
Not Reported in N.E.2d, 2005 WL 1595246 (Ohio App. 4 Dist.), 2005 -Ohio- 3499

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

Westlaw.

695 N.W.2d 335                                                                              Page 1
695 N.W.2d 335, 2004 WL 2952677 (Iowa App.)
**(Cite as: 695 N.W.2d 335)**

C
Ralston v. American Family Mut. Ins. Co.
Iowa App.,2004.
(The Court's decision is referenced in a "Decisions
Without Published Opinions" table in the North
Western Reporter. See FI IA R 6.14(5) for rules re-
garding the use and citation of unpublished opinions.)
Court of Appeals of Iowa.
Cindy S. RALSTON, Plaintiff-Appel-
lant/Cross-Appellee,
v.
AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, Defendant-Appellee/Cross-Appellant.
**No. 04-0662.**

Dec. 22, 2004.

Appeal from the Iowa District Court for Jones
County, Douglas S. Russell, Judge.
A plaintiff insured appeals and a defendant insurer
cross-appeals from a district court ruling granting the
defendant's motion for summary judgment. AF-
FIRMED.

Peter Riley of Tom Riley Law Firm, P.L.C., Cedar
Rapids, for appellant.
Matthew Nagle of Lynch Dallas, P.C., Cedar Rapids,
for appellee.

Heard by HUITINK, P.J., and MAHAN, MILLER,
VAITHESWARAN, and EISENHAUER, JJ.
MILLER, J.
**\*1** Plaintiff Cindy Ralston appeals and defendant
American Family Mutual Insurance Company
(American Family) cross-appeals, following a district
court summary judgment ruling in favor of American
Family. We conclude the district court appropriately
granted summary judgment on the second of two
grounds urged by American Family. Accordingly, we
affirm the summary judgment ruling on appeal, and
need not address American Family's argument on
cross-appeal-that the court erred when it declined to
grant summary judgment on the first ground as well.

**I. Background Facts and Proceedings.** The undis-
puted facts reveal the following. In 1995 Cindy Ral-

ston purchased an automobile insurance policy from
American Family. The parties renewed the policy in
October 2001, with a policy coverage period of Octo-
ber 17, 2001, to April 17, 2002. The dates of cover-
age were clearly conveyed to Ralston in writing.

On January 14, 2002, following a December 2001 re-
minder notice, Ralston made a partial premium pay-
ment on the automobile policy. American Family is-
sued another past due notice on January 24, 2002, re-
quiring Ralston to make a minimum payment by
January 31, 2002. When no payment was received,
American Family sent Ralston a notice that her
policy was cancelled effective February 16, 2002.
The notice was sent to Ralston via certified mail.
However, postal records show that Ralston never
signed for the letter. Instead, the letter was apparently
returned and was receipted for by Elliot Franklin, an
American Family employee, on February 25, 2002.
This notice, like all other relevant correspondence
American Family sent to Ralston, was mailed to the
address listed on the policy. This was the same ad-
dress that appeared on Ralston's checks.

On March 21, 2002, American Family sent Ralston a
demand for the "balance owed for coverage provided
to the cancellation date" of February 16, 2002. Ral-
ston remitted the exact amount of the balance owed,
$221.10, on March 26, 2002. The payment, which
was received by American Family on March 29, was
the last payment made by Ralston on the automobile
insurance policy.

On May 20, 2002, one of the vehicles Ralston had in-
sured under the American Family policy was in-
volved in a collision. The operator of the vehicle,
Ralston's daughter, died as a result of her injuries.
When Ralston notified American Family of the loss,
she was informed the policy was out of force prior to
the accident, due to a non-payment of premium.
American Family also made an express reservation of
its right to deny coverage for any other valid reason .
FN1

> FN1. The written reservation letter provided,
> in pertinent part:

> American Family Insurance Company is as-
> serting this reservation of its rights because
> the policy may be out of force.
>
> ... [N]o act of any company representative ...
> shall be construed as waiving any of Amer-
> ican Family Insurance Company's rights....
> We do not waive our rights to deny coverage
> for any other valid reasons which may arise.

In October 2002 Ralston filed a two-count petition
against American Family. Count I sought a declarat-
ory judgment that the insurance policy was not can-
celled and remained in force. Count II sought dam-
ages for an alleged bad faith denial of coverage. In its
answer American Family admitted that it had denied
coverage under the policy, asserting "the policy was
no longer in force because of nonpayment of premi-
um."

**\*2** In August 2003 American Family sought sum-
mary judgment and dismissal of Ralston's petition. It
alternately asserted that the policy had been cancelled
in February 2002, and that it had terminated at the
end of the coverage period, in April 2002, when Ral-
ston failed to pay the renewal premium. Following
Ralston's successful motion to continue, the summary
judgment motion came on for hearing in December
2003.

The district court rejected American Family's claim
that, under the undisputed facts, Ralston's policy had
been cancelled in February 2002. In reaching this de-
cision the court noted there was evidence that Ralston
had not, in fact, received the cancellation notice. The
court nevertheless determined summary judgment
was appropriate, concluding the automobile policy
had not been renewed and had therefore terminated
prior to the May 2002 accident. The court rejected
Ralston's assertion that American Family had waived
its right to rely on non-renewal as a basis for denying
coverage.

After the court denied a motion made by Ralston pur-
suant to Iowa Rule of Civil Procedure 1.904(2), Ral-
ston appealed. American Family cross-appealed. On
appeal Ralston asserts the district court erred in con-
cluding American Family had not waived its termina-
tion argument, and further in concluding that the

policy terminated prior to the accident. On cross-ap-
peal American Family contends the district court
should have granted summary judgment on the al-
ternate ground that Ralston's policy had been can-
celled in February 2002.

**II. Scope and Standards of Review.** Summary judg-
ment rulings are reviewed for correction of errors at
law. Iowa R.App. P. 6.4; *General Car & Truck Leas-
ing Sys., Inc. v. Lane & Waterman,* 557 N .W.2d 274,
276 (Iowa 1996). Where no genuine issue of material
fact exists and the moving party is entitled to judg-
ment as a matter of law, summary judgment is appro-
priate. Iowa R. Civ. P. 1.981(3); *City of West Branch
v. Miller,* 546 N.W.2d 598, 600 (Iowa 1996).
However, when a motion for summary judgment is
made and supported as provided in rule 1.981 a party
resisting summary judgment may not simply rely
upon the pleadings; he or she must "set forth specific
facts showing that there is a genuine issue for trial. If
the adverse party does not so respond, summary judg-
ment, if appropriate, shall be entered." Iowa R. Civ.
P. 1.981(5). Although summary judgment is improper
where reasonable minds could differ on resolution of
the matter before the court, *Dickerson v. Mertz,* 547
N.W.2d 208, 212 (Iowa 1996), no fact issue exists if
the dispute is over legal consequences flowing from
undisputed facts. *City of West Branch,* 546 N.W.2d at
600.

**III. Right or Ability to Assert Termination by
Nonrenewal.** The district court concluded American
Family was entitled to assert non-renewal as a basis
for its denial of coverage under the automobile insur-
ance policy. Ralston contends this was error in two
regards: that termination for nonpayment of the re-
newal premium was not adequately pled as an affirm-
ative defense, and that American Family affirmat-
ively waived its right to deny coverage on this basis
.FN2 We find no merit in either contention.

> FN2. In her reply brief Ralston raises, for
> the first time, an assertion that the claim is
> barred under the specific theory of estoppel
> by acquiescence. Issues neither presented to
> nor passed on by the district court will not
> be addressed for the first time on appeal. *See
> Benavides v. J.C. Penney Life Ins. Co.,* 539

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

N.W.2d 352, 356 (Iowa 1995); *see also Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 642 (Iowa 1996) (noting that we typically do not address an argument raised for the first time in a reply brief).

**\*3** Assuming without deciding that termination for nonpayment is in fact an affirmative defense,[FN3] we conclude it was adequately raised by American Family. Our rules require liberal construction of pleadings. *See Werner's Inc. v. Grinnell Mut. Reins. Co.,* 477 N.W.2d 868, 870 (Iowa Ct.App.1991). A pleading need only provide "fair notice of the claim asserted to allow that party to make an adequate response." *Gosha v. Woller,* 288 N.W.2d 329, 331 (Iowa 1980). Within the context of an answer, we look to see whether a party has pled "facts giving rise to a defense[;] it is not essential that a specific label be attached to it." *In re Guardianship of Collins,* 327 N.W.2d 230, 233 (Iowa 1982).

> FN3. An affirmative defense is "one which rests on facts not necessary to support the plaintiff's case." *Erickson v. Wright Welding Supply, Inc.,* 485 N.W.2d 82, 86 (Iowa 1992). We question whether American Family's termination argument is in fact an affirmative defense, or merely the assertion of a fact that could refute an element of Ralston's claim. *See Bond v. Cedar Rapids Television Co.,* 518 N.W.2d 352, 355 (Iowa 1994) (noting that where issue raised by defendant was not an affirmative defense but an element of the plaintiffs recovery, the burden on the issue lies with the plaintiff).

American Family's termination argument is premised on the assertion that, under the terms of the automobile insurance policy, Ralston's failure to pay the required renewal premium resulted in nonrenewal of the policy. The policy provided, in pertinent part:
This policy will automatically terminate at the end of the policy period if you or your representative do not accept our offer to renew it. Your failure to pay the required renewal premium when due means that you have declined our offer.

In its answer American Family admitted certain facts

and also asserted certain facts, in pertinent part as follows:American Family admits it informed Plaintiff that [the] policy ... was out of force due to nonpayment of premium. A certified cancellation letter was sent to Ms. Ralston on February 1, 2002....

....

American Family admits that it has denied coverage under the policy because the policy was no longer ... in force because of nonpayment of premium....

....

Plaintiff has failed to comply with the terms of the insurance contract. Specifically, Plaintiff failed to make timely payment of the premium.

Under Iowa's liberal rules of pleading, the foregoing language is adequate to encompass not only an assertion that coverage was properly denied because the policy had been cancelled for nonpayment, but also an assertion that coverage had been denied because nonpayment of the renewal premium resulted in the termination of the policy.

Moreover, even if it could be argued that the answer was not sufficiently specific to encompass an affirmative defense on the ground of termination, "a defendant may first raise an affirmative defense in a motion for summary judgment as long as the plaintiff is not prejudiced." *McElroy v. State,* 637 N.W.2d 488, 497 (Iowa 2001). Here, four months passed between the filing of American Family's summary judgment motion and hearing on the motion. This provided Ralston adequate time to conduct discovery and prepare a resistance to the summary judgment request. Even if the termination defense was not raised until the summary judgment motion was filed, we see no evidence that the late assertion prejudiced Ralston.

We also reject Ralston's contention that American Family waived its right to deny coverage based on nonrenewal. Waiver requires the existence of a right, actual or constructive knowledge of that right, and an intention to relinquish such right. *See Scheetz v. IMT Ins. Co.,* 324 N.W.2d 302, 304 (Iowa 1982). Waiver of rights under an insurance contract is typically an issue of fact for the jury, particularly where the alleged waiver is based on the acts or conduct of the insurer. *Id.* However, when the evidence is undisputed, the issue is one of law, and properly decided by the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

695 N.W.2d 335, 2004 WL 2952677 (Iowa App.)

**(Cite as: 695 N.W.2d 335)**

court. *Id.*

**\*4** In this case, it is undisputed that American Family had adequate knowledge of its right or ability to raise a termination claim. Thus, the only question is whether there was a genuine issue of material fact regarding American Family's intent to relinquish any such right or ability. The only fact Ralston points to in support of her position is that American Family did not, prior to commencement of this case, in express terms assert nonrenewal as a ground for denying coverage. However, American Family did expressly reserve its right to deny coverage for any valid reason which might arise. Although Ralston complains this was a "generic" reservation, she provides no persuasive authority or argument as to why it was insufficient to reserve to American Family the right to assert a ground for denial other than the one already communicated to Ralston.

The district court properly concluded, as a matter of law, that American Family did not waive its right to deny coverage based on termination. We therefore turn to Ralston's contention that, even if American Family properly raised the issue of termination, the district court erred in concluding that the policy did in fact terminate at the end of the coverage period.

**IV. Termination by Nonrenewal.** Ralston does not dispute that she should have been aware the automobile insurance policy coverage period expired on April 17, 2002. *See First Nat'l Bank v. Watts,* 462 N.W.2d 922, 927 (Iowa 1990) (charging insured with knowledge of a "clearly stated expiration date"). She does not claim that she paid a renewal premium, and under the undisputed facts no such payment was made. Nor does Ralston dispute that, under the terms of the policy, failure to pay the renewal premium when due resulted in automatic termination of the policy at the end of the coverage period. Rather, she claims the policy did not terminate, despite all the foregoing, as American Family never sent her notice of its intent to terminate the policy.

Ralston concedes that American Family had no inherent obligation to provide such notice, *see id.,* and it is clear that, in light of Ralston's failure to pay the renewal premium, no such notice was required by the

policy terms. Ralston's contention relies solely on Iowa Code section 515D.7 (2001), which generally requires an insurer to provide notice of its intent not to renew the policy. That requirement, however, does not apply "[i]f the insured *fails to pay any premium due* or any advance premium required by the insurer for renewal." Iowa Code § 515D.7(2) (emphasis added). Here, It is undisputed that the last premium payment made by Ralston was the $221.10 payment made in March 2002, and that she never paid the remaining past-due premium for the October 2001 to April 2002 policy period.

While Ralston complains American Family did not provide her statutory notice that it was canceling her policy, *see* Iowa Code § 515D.4, any such failure is irrelevant to our analysis of this issue. Under the plain language of section 515D.7, it is sufficient that Ralston was aware her premium payment was past due, and that she failed to make payment. Cancellation and nonrenewal are distinct concepts, *see Travelers Indem. Co. v. Fields,* 317 N.W.2d 176, 185 (Iowa 1982), and often rest on distinctly different grounds. *Compare* Iowa Code § 515D.4 (limiting reasons for cancellation) with Iowa Code § 515D.6 (listing prohibited bases for nonrenewal). We see no basis, under either the statutory scheme of chapter 515D or case law, for conditioning one notice requirement upon the other.

**\*5** Because Ralston failed to pay a premium due, section 515D.7's notice requirements do not apply. Because Ralston failed to pay the renewal premium, the policy terminated, by its own terms, on April 17, 2002. Upon such termination, American Family had no further obligation to contract with Ralston. *See First National Bank,* 462 N.W.2d at 927.

**V. Conclusion.** American Family adequately pled, and did not waive, its assertion that the policy terminated at the end of the coverage period. As the undisputed facts reveal the policy did terminate at the end of the coverage period, and because that termination occurred prior to Ralston's claimed loss, the district court did not err in granting American Family summary judgment on this ground. Ralston's petition was properly dismissed. Because this affords American Family full relief, we find it unnecessary to address

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

695 N.W.2d 335                                                                                     Page 5
695 N.W.2d 335, 2004 WL 2952677 (Iowa App.)
**(Cite as: 695 N.W.2d 335)**


its claim on cross-appeal.

**AFFIRMED.**

Iowa App.,2004.
Ralston v. American Family Mut. Ins. Co.
695 N.W.2d 335, 2004 WL 2952677 (Iowa App.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT I

Not Reported in N.W.2d                                                          Page 1
Not Reported in N.W.2d, 2001 WL 709905 (Iowa App.)
**(Cite as: Not Reported in N.W.2d)**

Fogle v. Le Mars Mut. Ins. Co. Of Iowa
Iowa App.,2001.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK RULES BE-
FORE CITING.
            Court of Appeals of Iowa.
Ray FOGLE and Donna Fogle, as Co-Administrators
of the Estate of Michelle L. Fogle, Deceased, John R.
   Hudson, Thomas A. Hudson, and Stacey Jolene
            Hartwig, Plaintiffs-Appellants,
 Betty L. ADAMS, as Administrator of the Estate of
        Phillip R. Adams, Deceased, Plaintiff,
                       v.
LE MARS MUTUAL INSURANCE COMPANY OF
            IOWA, Defendant-Appellee.
                  **No. 00-983.**

                  June 13, 2001.

Appeal from the Iowa District Court for Keokuk
County, Dan F. Morrison, Judge.
The plaintiffs appeal a district court ruling granting
the defendant's motion for summary judgment in
plaintiffs' action to collect insurance benefits.

AFFIRMED.

Davis D. Dixon of Heslinga, Heslinga, Dixon &
Moore, Oskaloosa, for appellants Ray and Donna
Fogle.
David S. Gorham of Morrison, Lloyd, McConnell,
Mullins & Davis, Washington, for appellants John
and Thomas Hudson.
Stephen D. Lombardi of the Lombardi Law Firm,
Des Moines, for appellant Stacey Hartwig.
Rene Charles Lapierre of Klass, Stoik, Mugan, Vil-
lone, Phillips, Orzechowski, Clausen & Lapierre,
L.L.P., Sioux City, for appellee.

Considered by STREIT, P.J., and HECHT and
VAITHESWARAN, JJ.
PER CURIAM.
**\*1** Plaintiffs appeal a decision of the district court
granting summary judgment to defendant in this ac-
tion to collect insurance benefits. Plaintiffs claim
there was a genuine issue of material fact concerning

whether Phillip Adams failed to properly renew his
insurance policy, or the policy was wrongly canceled.
We affirm on appeal.

Adams had an automobile insurance policy with Le
Mars Mutual Insurance Company for the time period
September 10, 1998, to March 10, 1999. On January
26, 1999, Le Mars sent Adams an offer to renew the
policy and a billing notice. Adams did not submit
payment, and ten days prior to March 10, 1999, the
company sent him a reminder notice. The premium
was not received by March 10, 1999, and by its terms
the policy lapsed on that date. On March 15, 1999, Le
Mars sent Adams notice his policy had expired and
coverage was no longer in effect.

On March 28, 1999, Adams was driving his pickup
and he collided with a parked vehicle owned by John
Hudson. John's vehicle was occupied by himself,
Thomas Hudson, Stacy Hartwig, and Michelle Fogle.
Adams and Michelle died as a result of the collision,
and John, Thomas, and Stacy were injured. The co-
administrators of Michelle's estate, Ray and Donna
Fogle, along with John, Thomas, and Stacy, made
claims against Adams' estate.

Le Mars denied coverage of Adams at the time of the
accident. On July 9, 1999, Le Mars sent the Fogles'
counsel a letter which stated, "Mr. Adams' auto-
mobile policy with Le Mars Mutual was canceled
March 10, 1999, due to non payment of premium."
On August 2, 1999, Le Mars sent the Fogles' counsel
a letter which included the statement, "Enclosed,
please find a copy of the cancellation notice sent to
our insured."

Michelle's estate, Adams' estate, John, Thomas, and
Stacy filed a petition for declaratory judgment against
Le Mars, alleging the insurance company had failed
to properly cancel Adams' policy under Iowa Code
section 515D.5 (1997), and therefore the policy re-
mained in effect at the time of the accident.[FN1] Le
Mars filed a motion for summary judgment. Le Mars
claimed the policy was not canceled, but lapsed when
it was not renewed.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d                                                                Page 2
Not Reported in N.W.2d, 2001 WL 709905 (Iowa App.)
**(Cite as: Not Reported in N.W.2d)**

FN1. The parties actually cite the 1999 Iowa Code, but that code did not take effect until July 1, 1999, and the 1997 Iowa Code would govern the insurance company's responsibilities in March 1999.

The district court granted Le Mars' motion for summary judgment. The court found the policy automatically terminated when the renewal premium was not received, and this was a lapse or expiration, not the cancellation of a policy. The court concluded section 515D.5 was not applicable in this case. Plaintiffs appeal.

We review a summary judgment ruling for error. *Hasbrouck v. St. Paul Fire & Marine Ins. Co.,* 511 N.W.2d 364, 366 (Iowa 1993). Summary judgment is properly entered where the record shows no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). In considering the record, we view the facts in the light most favorable to the party who opposes the motion for summary judgment. *General Car & Truck Leasing Sys., Inc. v. Waterman,* 557 N.W.2d 274, 276 (Iowa 1996).

**\*2** Plaintiffs assert Adams' insurance policy with Le Mars was canceled for nonpayment of premium, and therefore, the notice provisions of section 515D.5 should apply. They point out Le Mars sent a letter to the Fogles' counsel, stating Adams' insurance policy was canceled on March 10, 1999, for nonpayment of premium. Plaintiffs claim that because Le Mars failed to notify Adams' at least ten days before his policy was canceled, the cancellation notice was not effective. *See Freeman v. Bonnes Trucking, Inc.,* 337 N.W.2d 871, 877 (Iowa 1983) (an insurer's attempted cancellation of a policy without notice to the insured was of no effect).

Chapter 515D is known as the Iowa Automobile Insurance Cancellation Control Act. Iowa Code § 515D.1. The relevant portion of section 515D.5 provides:
Notwithstanding the provisions of section 515.80 through 515.81A, a notice of cancellation of a policy shall not be effective unless mailed or delivered by the insurer to the named insured at least twenty days

prior to the effective date of cancellation, or, where the cancellation is for nonpayment of premium notwithstanding the provisions of sections 515.80 and 515.81A at least ten days prior to the date of cancellation.

Iowa Code § 515D.5. Section 515D.5 applies only where a policy has been canceled. *See Travelers Indem. Co. v. Fields,* 317 N.W.2d 176, 185 (Iowa 1982).

Section 515D.4 gives a list of reasons which allow an insurance company to validly cancel a policy. Iowa Code § 515D.4. One of the valid reasons for cancellation of a policy is nonpayment of premium. Iowa Code § 515D.4(1)(a). <sup>FN2</sup> Section 515D.4 does not apply to the nonrenewal of a policy. Iowa Code § 515D.4(3).

FN2. "Nonpayment of premium" is defined as "failure of the named insured to discharge when due any of the named insured's obligations in connection with the payment of premiums on the policy, or any installment of a premium, ..." Iowa Code § 515D.2(3).

Our supreme court has stated cancellation and nonrenewal are not synonymous. *Travelers Indem. Co.,* 317 N.W.2d at 185. Le Mars claims Adams' policy was not actually canceled, but it automatically terminated under the terms of the policy because Adams did not pay the renewal premium. Adams' automobile insurance policy provided:
Automatic Termination. If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

The Iowa Supreme Court considered a similar factual situation, and an identical automatic termination provision, in *First National Bank v. Watts,* 462 N.W.2d 922, 923-24 (Iowa 1990). There, also, the insured failed to pay the renewal premium and an accident occurred after the policy period expired. The court stated:"Cancellation," as used in insurance law, means termination of a policy prior to the expiration

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.W.2d
Not Reported in N.W.2d, 2001 WL 709905 (Iowa App.)
**(Cite as: Not Reported in N.W.2d)**

of the policy period by act of one or all of the parties; "termination" refers to the expiration of the policy by lapse of the policy period.

*First Nat'l Bank,* 462 N.W.2d at 926-27 (quoting *Waynesville Sec. Bank v. Stuyvesant Ins. Co.,* 499 S.W.2d 218, 220 (Mo.Ct.App.1973)). The court found the policy, by its terms, automatically terminated upon the insured's failure to pay the renewal premium. *Id.* at 927. The court concluded the notice provisions for cancellation in chapter 515D did not apply. *Id.*

**\*3** We find Adams' insurance policy with Le Mars terminated when the policy period expired on March 10, 1999, because Adams did not pay a renewal premium to extend the period of insurance. We find Adams' policy was not canceled, because the policy was not terminated prior to the expiration of the policy period on March 10, 1999. Under these circumstances, where there was no cancellation of the policy, section 515D.5 does not apply. *See Id.; Travelers Indem. Co.,* 317 N.W.2d at 185.

The letters sent by Le Mars to the Fogles' counsel do not create a genuine issue of material fact. The letters were written several months after the policy expired. Also, the letters were written after Adams' death, and therefore, could not lead him to misunderstand the extent of his coverage. *See Monroe County v. International Ins. Co.,* 609 N.W.2d 522, 526 (Iowa 2000) (Doctrine of reasonable expectations applies where ordinary layman would misunderstand the extent of coverage provided).

The district court properly granted summary judgment to Le Mars. We affirm the decision of the district court.

AFFIRMED.

Iowa App.,2001.
Fogle v. Le Mars Mut. Ins. Co. Of Iowa
Not Reported in N.W.2d, 2001 WL 709905 (Iowa App.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.