IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LAYNE DREXEL, | : | |
| | : | C.A. No.: 05-428 JJF |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| HARLEYSVILLE INSURANCE CO. | : | |
| | : | |
| Defendant. | : | |

DEFENDANT'S BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT

CASARINO, CHRISTMAN & SHALK

  /S/ Stephen P. Casarino
Stephen P. Casarino, Esquire
Bar I.D. No. 174
800 N. King Street, Suite 200
Wilmington, DE 19801
Attorney for Defendant

Dated: October 31, 2007

**TABLE OF CONTENTS**

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii, iii

Nature of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument:

      I.    Plaintiff's policy lapsed because the plaintiff failed to renew his policy in a timely manner and his insurance coverage terminated prior to the loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      II.    Harleysville is not estopped from denying coverage nor has it waived any of its rights by adjusting the claim . . . . . . . . . . . . . . . . . . 12

**TABLE OF CITATIONS**

*Adams v. Lemars Mutual Insurance Company of Iowa*,
2001 WL 709905(Iowa Apps. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Blackwell v. Farmers Insurance Exchange*,
2005 WL 1595246 (Ohio Apps. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brandywine Shoppe, Inc. v. State Farm Fire & Casualty Company*,
307 A.2d 806 (Del. Super 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dimenico v. Selective Insurance Company of America*,
833 A.2d 984 (Del. Super 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Iagar v. Transport Insurance Company*,
2003 WL 22849756 (Mich Apps.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ludke v. Audubon Insurance Company*,
874 S.2d 1029 (Miss Apps. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mauck v. Merchants' & Manufactures' Fire Ins. Co.*,
54 A. 952 (Del. Super. 1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Moore v. Travelers Indemnity Insurance Company*,
408 A.2d 298 (Del. Super 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8,12

*National Fire Insurance Company of Hartford v. Eastern Shore Laboratories, Inc.*
301 A.2d 526 (Del. Super 301) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Progressive Northwestern Insurance Company v. Torres*
1999 WL 956693 (Conn. Super 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ralston v. American Family Mutual Insurance Company*,
2004 WL 2952677 (Iowa Apps. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Saint Jones River Gravel Company v. Hartford Fire Insurance Company,
1980 WL 308627 (Del. Super 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sitto Enterprises, Inc. v. Badger Mutual Insurance Company*,
414 F Sup.2d 700 (ED Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*State Farm Mutual Automobile Insurance Co. v. Mundof*,

659 A.2d 215 (Del. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*State Farm Mutual Automobile Insurance Company v. O'Brien*,
535 P. 2d 46 (Arz. Apps. 1975)

*Toress v. The Home Insurance Company*,
1986 WL 4875 (Del. Super 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Troutman v. Nationwide Mutual Insurance Company,
400 SW2d 215 (Ken Apps 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wahl v. Country Mutual Insurance Company*,
640 NW.2d 689 (ND 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## NATURE OF THE PROCEEDINGS

Plaintiff has brought this action against Harleysville Insurance Company alleging that it breached its contract with plaintiff by not providing insurance coverage for a fire loss that occurred on June 22, 2004. The defendant has denied that there was a contract of insurance in effect at the time of the loss.

This is the defendant's Brief in support of its motion for summary judgment.

## SUMMARY OF ARGUMENTS

I.      Plaintiff's policy lapsed prior to the loss because plaintiff failed to renew his policy in a timely manner.

II.     Harleysville is not estopped from denying coverage nor has it waived its rights by adjusting the claim.

**STATEMENT OF FACTS**

The plaintiff had a policy of property insurance with Harleysville Insurance Company [Harleysville] effective June 8, 2003 through June 8, 2004. On or about March 26, 2004, prior to the termination of the policy plaintiff was sent a PREMIUM INVOICE giving him the opportunity to renew the policy at a premium of $1394.00. (Exhibit A) The premium invoice required a minium payment in the amount of $283.80 by June 8, 2004. The notice stated "minimum due must reach us by the due date." Plaintiff recalled getting his policy and premium notice around June 4, 2004 (Drexel-14)

The plaintiff did not exercise his option to renew the policy and on June 15, 2004 a NOTICE OF POLICY EXPIRATION was sent to the plaintiff advising that Harleysville had not received his premium payment and coverage had expired on June 8, 2004. (Exhibit B ) The notice also indicated that if plaintiff wanted continuous protection the past due amount had to be received by Harleysville by June 30, 2004, 12:01 a.m. The plaintiff did not exercise his right to extend insurance coverage and on July 7, 2004 a CONFORMATION OF TERMINATION was sent to plaintiff advising that his policy had expired because the renewal offer had not been accepted. (Exhibit C )

Mildred Alderfer is the manager of policy support located in Harleysville, Pennsylvania. (Alderfer-2)[1] When the renewal policy was sent to plaintiff it asked for premium by a certain date. When that premium was not received, Harleysville sent out the NOTICE OF POLICY EXPIRATION. Letters are sent automatically from Harleysville. The letter of POLICY EXPIRATION was prepared on June 14, 2004 and mailed to plaintiff on June 15, 2004. Harleysville keeps a log on automatic equipment that indicates the dates the documents were mailed.

---

[1] References are to deposition testimony. Exhibit F

(Alderfer-18-24)

Although the policy terminated effective June 8, 2004, the NOTICE OF POLICY EXPIRATION is a courtesy notice reminding the insured that his payment was not timely made. Harleysville, offers a grace period. Harleysville procedures provide that when a renewal policy is not paid by the renewal effective dates plus a five day grace period, a NOTICE OF POLICY EXPIRATION is issued giving the insured an extended due date. Thus, when plaintiff did not pay his premium by June 13 (the 5 five day grace period after the termination date), he was sent the letter. The letter was mailed to him on June 15. That letter gave him until June 30, 2004, plus a five day grace period to pay the claim.(Alderfer-28-30) These letters were generated automatically by Harleysville's system.

When plaintiff did not pay his premium by July 5, 2004, a CONFIRMATION OF TERMINATION was generated automatically on July 6 and sent to the plaintiff on July 7. (Alderfer-28) The letter was never returned by the post office.

The NOTICE OF POLICY EXPIRATION was in fact received by the plaintiff because the plaintiff sent the bottom portion of the stub with his payment. As part of the processing system when premium payments come into Harleysville, they are opened by an automatic opening equipment and run through a remittence processing equipment which captures an image of the stub and the check.(Alderfer-34) (Exhibit D) Harleysville equipment indicates that the stub sent to the plaintiff on June 15, 2004 was in fact received because it was returned with his check. The check and stub were received by Harleysville on July 13, 2004. The check is dated June 6, 2004. Plaintiff recalled sending the premium notice with his check (Drexel-24)

Harleysville has no discretion relating to late payments. (Alderfer-22) Under Harleysville's

automatic processing system, all checks are deposited in the bank on the date received. Payment activity is then put into the billing system overnight and the next morning if there is a problem it is brought to someone's attention. Harleysville's records show that the plaintiff's premium payment was scanned and the check deposited. The following morning, July 14, 2004 the account showed that the policy had been terminated. A check was then issued to Mr. Drexel for the amount of the premium and sent to him on July 14, 2004.(Alderfer-13-16)  The letter noted that the policy was cancelled and would not be reinstated. (Exhibit E)

Plaintiff's policy was terminated by Harleysville for non-acceptance of the renewal premium. Harleysville procedures provide that it is not required to give any notice of expiration of policy. The policy was not cancelled for non-payment of premium. A cancellation is non-payment during mid-term. (Alderfer-39-42)

Plaintiff acknowledged that he did not pay his premium prior to June 30, 2004 and that he dated his check June 6, 2004 because the notice he received referred to June 8, 2004. (Drexel-29-30)

Plaintiff reported the loss to his agent S.T. Good on or about June 22, 2004, (Drexel-21) during the period of time of the grace period and before he sent the premium check. When the fire occurred, the plaintiff was on vacation in the Poconos and decided not to return home. (Drexel-17) His agent in turn notified Harleysville of the loss. Notification went to the claims department in Nashville and the case was assigned to Sherry Clodfleter. Clodfelter received the assignment on June 22, 2004. She checked her computer to determine what coverages were in effect. (Clodfelter-11) The computer listed the policy as active. The computer will show active if the loss occurred during the grace period. Once coverage was verified, she had no reason to go back to re-verify it. (Clodfelter-16)  Therefore, before a policy is listed as "inactive" Harleysville will wait until June

30 plus five days for the remittence of the premium. Since plaintiff did not pay his premium by July 5, the policy then was considered inactive as of the termination date of June 8, 2004. At that point the computers were changed to indicate that the policy was inactive. (Alderfer-55)

When Clodfelter originally got the case on June 23, because the policy was considered active she started to adjust the loss. She retained the services of an adjusting company which contacted plaintiff and examined the property. (Clodfelter-25-35) Subsequently, a contractor was contacted and Clodfelter was prepared to pay the claim. (Clodfelter-40) However, in August, a second suffix was opened on the policy and at this time the person opening the suffix noted that the policy had been terminated and notified Clodfelter by email. (Staton-5; 7-8) Therefore, all attempts to pay plaintiff were stopped and he was told that the policy had been terminated.

Plaintiff had hired Booth Construction to repair his property. Booth's contract with him stated that if Harleysville didn't pay Booth, it was plaintiff's responsibility to pay. (Drexel 52-53)

**ARGUMENT**

I. PLAINTIFF'S POLICY LAPSED BECAUSE THE PLAINTIFF FAILED TO RENEW HIS POLICY IN A TIMELY MANNER AND HIS INSURANCE COVERAGE TERMINATED PRIOR TO THE LOSS

The plaintiff's insurance policy lapsed for non-payment of premium and plaintiff did not take the opportunity to renew his policy during the grace period. The plaintiff had a commercial policy. Delaware code does not require notice relating to non-renewal of an insurance policy. This was clearly stated by the Delaware Supreme Court in *State Farm Mutual Automobile Insurance Co. v. Mundorf*, 659 A2d 215 (Del 1995) where the court noted:

"In general, a policy holder is charged with knowledge of the expiration date recited in his or her insurance policy when that date is clearly stated. [citing cases] there is a policy or statutory direction to the contrary, an insurer is under no legal duty to give to the insured notice of the expiration of an insurance policy, and the insurer is not obligated to renew the policy automatically. [citing case] Absent a statutory grace period, the insured's failure to pay a renewed premium by the due date ordinarily results in a lapse of coverage as of the last day of the policy. [citing cases]" (Pages 217-218)

Although the Harleysville policy has requirements concerning cancellation of a policy, there is no notice requirement for termination of a policy when the insured fails to pay the premium. The facts of this case are similar to *Moore v. Travelers Indemnity Insurance Company*, 408 A2d 298 (Del Super 1997). Although *Moore* involved an automobile policy, the legal principles apply. The insured's policy lapsed and payment was not made until after the date set forth in the renewal notice. Plaintiff's policy ended August 16, 1973. The next policy ran from August 16, 1973 through

7

February 16, 1974.  On or about July 17, 1973, Travelers sent a letter to plaintiff advising that no premium payment had been made.  As in the present case, they made an offer to reinstate the policy of payment was received by September 15.  Payment was not received until December 11.

The court noted that this was not a cancellation for non-payment.  Cancellation is an affirmative act taken by an insurance company to terminate an existing policy.  The insurance company did not renew the policy for non-payment of premium.  In short, notice requirements do not apply when an insurer fails to renew a policy solely for non-payment of premium.  Therefore the policy was terminated.  This holding in Moore was ratified by the Delaware Supreme Court in *State Farm v. Mundorf* (Supra).

In *Sitto Enterprises, Inc. v. Badger Mutual Insurance Company*, 414 F Supp.2d 700 (ED Mich. 2006) the court concluded that the policy language requiring notice of cancellation did not apply when the insured failed to pay the renewal premium.  As the present case, the carrier sent a notice of the premium payment stating that the failure to renew the policy prior to its expiration date would terminate the coverage.  The body of the policy, however indicated that the insurance company could cancel the policy for non payment of premium upon 10 days notice.  The court held that a cancellation notice was not required to terminate insurance coverage at the natural end of the term of the insurance policy.  The cancellation notice applied to late installment payments, not the payment of a subsequent policy renewal.  The cancellation provisions did not apply because the policy was never actually renewed.

> "An interim installment payment is a payment that continues a policy the insurer knows is in effect. Policy cancellation is possible for a late or unpaid interim installment payment; the policy is in effect until such cancellation occurs. An initial installment payment on the renewal is different. Until the installment payment on renewal is made, an insurer does not know whether the insured needs or wants to continue coverage. The insured may have decided to get a policy through another

carrier, or may have sold the insured property."

In *Blackwell v. Farmers Insurance Exchange*, 2005 WL 1595246 (Ohio Apps. 2005) the same fact pattern occurred. The insured was sent a renewal notice indicating that the policy would expire on March 29, 2003 unless payment was received by a certain date. When the payment was not received, the insurance company sent another letter titled "Important Expiration Notice" which stated that although the due date has passed, the policy holder could still accept the company's offer to renew the policy if payment was received within 15 days. The policy holder did not pay in a timely manner and the policy was terminated. The court held that the policy lapsed for non payment of renewal premium and because the policy lapsed, the carrier had no duty to comply with the policy provisions regarding cancellations.

Accord, *Ralston v. American Family Mutual Insurance Company*, 2004 WL 2952677 (Iowa Apps. 2004), where the policy holder failed to pay the renewal premium, the policy terminated by its own terms. Upon such termination, the insurance company had no further obligation to contact its insured.; *Adams v. Lemars Mutual Insurance Company of Iowa*, 2001 WL 709905 (Iowa Apps. 2001) where the court made it clear that cancellation and non renewal are not synonymous. The policy was terminated because the policy holder did not pay the renewal premium. Failure to pay the required renewal means that the insured did not accept the insurance policy because the insured did not pay the renewal premium, the policy was not cancelled because it had been terminated prior to the policy being in effect; *Progressive Northwestern Insurance Company v. Torres* 1999 WL 956693 (Conn. Super 1999) where a notice of payment due for a renewal was sent to the insured indicating the policy would expire on July 11, 1996 and that if the defendant wanted to continue the insurance it had to be paid by that date. The court noted that the letter to the insured went out thirty

days as set forth by the insurance code. Since the defendants did not pay the premium in a timely manner there was no insurance coverage.; *Wahl v. Country Mutual Insurance Company*, 640 NW.2d 689 (ND 2002) where the court held "as a matter of law, the cancellation and non renewal provisions of the policy did not impose a duty upon Country Mutual to give notice to Wahl to terminate coverage for the failure to pay a renewal premium upon expiration of the policy term"; *Ludke v. Audubon Insurance Company*, 874 S.2d 1029 (Miss Apps. 2004) where the court concluded the policy was not cancelled but lapsed for non-payment; *Iagar v. Transport Insurance Company*, 2003 WL 22849756 (Mich Apps.), where the court noted that the renewal notice was clear and unambiguous.

The premium notice and insurance contract make the policy contingent upon payment of the premium. The payment of a premium is necessary to give validity to the policy. *Toress v. The Home Insurance Company*, 1986 WL 4875 (Del. Super 1986); *Mauck v. Merchants' & Manufactures' Fire Ins. Co.*, 54 A. 952 (Del. Super. 1903)

Harleysville made it clear that coverage was contingent upon payment.

    a.    Under Renewal Certificate

"In return for the payment of the premium and subject to all of the terms of this policy, we agree to provide the insurance as stated in this policy."

    b.    Under RENEWAL INSURANCE AGREEMENT

"We renew this policy for the period stated on the renewal declarations in return for your payment of the premium."

    c.    On the signature page of the insurance policy

"We will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions."

    d.    On the premium notice it states:

    Minium Due:  $283.80
    Due Date:   06/08/2004
    Minium due date must be reach us by due date.

  In *Dimenico v. Selective Insurance Company of America*, 833 A.2d 984 (Del. Super 2002) one of the arguments made by the plaintiff was that the notice of cancellation was inadequate. The court noted that the carrier Imperial captioned its 10 day notice of cancellation as "notice of intent to cancel." The document unmistakably put plaintiffs on notice that their insurance coverage would be cancelled unless they were current with their payment. Further, the actual notice of cancellation sent by the carrier to the plaintiffs is unequivocal that the cancellation was effective.

  It is hard to imagine that plaintiff did not understand the premium notice that required minimum payment by June 8, 2004. It is further hard to imagine that plaintiff did not understand the NOTICE OF POLICY EXPIRATION which stated that the premium had not been paid and that coverage had expired, and that continuous protection would be possible only if the insured paid the minium by June 30, 2004. It is hard to imagine that even with such clear notification, the plaintiff did not pay the premium in a timely manner. The insured knew that he had to pay in a timely manner, however because he backdated the check to make it appear as if he did issue the payment on June 7, 2004.

II. HARLEYSVILLE IS NOT ESTOPPED FROM DENYING COVERAGE NOR HAS IT WAIVED ANY OF ITS RIGHTS BY ADJUSTING THE CLAIM.

Generally, waiver and estoppel may not be invoked to make a new contract. To establish estoppel, it must appear that the party claiming the estoppel lacked knowledge of and the means of learning the true facts, that he relied upon the conduct of the party against whom the estoppel is claimed, and that he suffered a prejudicial change in his position as a consequence of such reliance. The party asserting an estoppel has the burden of proving it by clear and convincing proof. An estoppel may not rest upon mear inference. *Brandywine Shoppe, Inc. v. State Farm Fire & Casualty Company,* 307 A2d 806 (Del Super 1973); *National Fire Insurance Company of Hartford v. Eastern Shore Laboratories, Inc.*, 301 A2d 526 (Del Super 301).

Estoppel and waiver are not identical. A waiver is the intentional relinquishment of a known right, either expressly or by conduct which clearly indicates the intention to renounce a known privilege. It invokes both knowledge and intent. *Saint Jones River Gravel Company v. Hartford Fire Insurance Company*, 1980 WL 308627 (Del Super 1980); *Moore v. Travelers Indemnity Insurance Company*, Supra. Adjusting a claim based upon a mistake is not a voluntary waiver. *Toress v. The Home Insurance Company,* Supra

In *Troutman v. Nationwide Mutual Insurance Company*, 400 SW2d 215 (Ken Apps 1966) the policy by its terms expired on December 21. However, the company did have a policy of re-instating the policy and continuing coverage if payment was received by January 11. The plaintiff was not informed of this grace period nor was she misled by it because she knew nothing about it. The plaintiff was involved in an accident on January 11 and mailed the premium on January 15. The

12

company did cash the check and then a few days later realized that there was no coverage and mailed its refund check to her for the same amount.

The court noted that the cashing of the check by the company and its delay in notifying plaintiff of the termination of the policy did not cause the plaintiff to change her position to her detriment in any way. The court distinguished this case from others which held that acceptance of premium stops a company from asserting forfeiture. The court noted the distinction that in *Troutman* there was no contract when the premium check was cashed because the policy had laspsed.

That is the same here. When the check was sent to Harleysville the policy had already terminated and was not in effect. Plaintiff was sent a reimbursement check the next day.

Under the facts of this case there is no waiver. The defendant sent out the proper notices to the plaintiff advising that his policy was to expire and gave him the grace period in order to pay for the premium. Upon the plaintiff's failure to pay the premium, he was notified that his policy had indeed terminated as of the end of the prior policy period. When the plaintiff submitted his loss, it was during the grace period that was provided to him by the company. The adjuster checked the file and noted that the policy was still active because the plaintiff had until the grace period to pay the premium. Therefore, the adjuster commenced adjusting the claim. However, when it was determined that the plaintiff had not paid the policy, he was notified that his policy had been terminated for non-payment and the claim was not paid. Thus, there is no waiver because the payment was not made with knowledge that the policy had terminated, but to the contrary was made with the understanding that the plaintiff's policy was still active.

Further, there is no estoppel. The plaintiff was fully aware that he had not paid his premium

in a timely manner. As a matter of fact, he sent his payment by back dating the check, presumably hoping that this would provide coverage. However, NOTICE OF POLICY EXPIRATION clearly stated that the check had to be <u>received</u> by June 30. Plaintiff acknowledges that his check was not drawn until after the cancellation date. Even though Harleysville gave him a grace period of five days beyond that the check was still not received. Furthermore, plaintiff was aware that it was his obligation to pay Booth whether or not Harleysville provided coverage.

                              CASARINO, CHRISTMAN & SHALK

                                /s/ Stephen P. Casarino,
                            STEPHEN P. CASARINO, ESQUIRE
                            Bar I.D. No. 174
                            800 North King Street, Suite 200
                            P.O. Box 1276
                            Wilmington, DE 19899-1276
                            302 594-4500
                            Attorney for Defendant Harleysville

**CERTIFICATE OF SERVICE**

I, STEPHEN P. CASARINO, Esq., hereby certify that I have caused to be deposited in the mailbox at 800 North King Street, Suite 200, Wilmington, DE 19801, on this 31st day of October, 2007, a true and correct copy of the attached Defendant's Brief in Support of its Motion for Summary Judgment to:

>Robert K. Beste, III, Esq.
>Smith Katzenstein & Furlow LLP
>800 Delaware Avenue, 7th Floor
>P.O. Box 410
>Wilmington, DE 19899

CASARINO, CHRISTMAN & SHALK

/s/ Stephen P. Casarino
STEPHEN P. CASARINO, ESQUIRE
Bar I.D. No. 174
800 N. King Street, Suite 200
P.O. Box 1276
Wilmington, DE 19899
Attorney for Defendant