# EXHIBIT N

**TOWER**

INSURANCE
SERVICES

Property and
Casualty Adjusters

P.O. Box 4088
Greenville, DE 19807-0088

(302) 656-4657
fax (302) 656-5915

## INTERIM REPORT

July 30, 2004

Ms. Sherry Clodfelter
Harleysville Insurance Companies
Southeast Claims Service Center
P.O. Box 140996
2885 Elm Hill Pike
Nashville, TN. 37214

**RE:**    **Insured: Layne Drexel**
       **Claim#: SO - 530739**
       **Tower File #: 04-2095**
       **Date of Loss: 06-22-04**
       **Peril: Fire Damage**
       **Loss Location: 1740 W. 4th St. Wilmington, DE.**

## ENCLOSURES:
1. Photographs
2. Tower Insurance Service *preliminary* estimate: $43,609.95
3. G. S. Booth & Assoc. estimate: $51,028.24
4. G. S. Booth & Assoc.: Work Authorization
5. Agreement of Sale – Liquor Store Business
6. Lease Agreement between insured & tenant
7. Addendum to lease
8. Letter from Property Loss Consulting (tenant's company adjuster)
9. Letter to Property Loss Consultants: 07/30/04
10. Letter to Booth Insurance Restorations

**ASSIGNMENT**: This loss was assigned by your claims department, by fax, received 06-23-04. This writer contacted your insured, who was on vacation out of the area at the time, on 06-23-04 to discuss the loss and damages. An on site inspection was conducted on 06-24-04. The insured was unable to be present during the inspection. We met with the insured's tenant, Mr. Patel.

DR 0368

**RISK**: The risk is located at 1740 W. 4th Street Wilmington, DE.  The risk is a three-story, masonry constructed end row building. The building is typical inner city, corner street construction, of the period. The structure houses a store on the first floor, currently a liquor store, and a small efficiency apartment to the rear, on the first floor. The second and third floors house each a three bedroom apartment. There is a partial basement under approximately ½ of the footprint of the structure, used as storage for the liquor store business.

The dwelling is estimated to be approximately 70 years old and has owned by the insured since 1987. The building is 2,425 square feet with an estimated replacement cost of $206,125.00. The building is an investment rental property for the insured and appears to have been maintained in average condition.

**COVERAGE**: Coverage information was provided at the time of the assignment indicating coverage under policy #MPA-812988, form not advised, with policy dates of 06-08-04 to 06-08-05. Dwelling coverage was advised in the amount of $225,000 and the policy carries a $1,000.00 deductible.

**CAUSE & ORIGIN**: The loss notice advised that the insured had experienced a fire at his property after business hours. At the time of the fire, the insured was vacationing in northern Pennsylvania, with his family. The first level store was closed at the time. Preliminary information indicates that the fire was as a result of an electrical malfunction in an outlet, on the first floor in the liquor store.

Direct fire damage was minimal, suggesting that the fire was detected early. Information indicates that a neighbor was the first to see a "glow" in the storefront window of the liquor store and called the Wilmington City Fire Department. There is some direct fire damage to the interior of the store front and some to the exterior, presumably when the windows broke, but it is relatively minor. The majority of damage is heat and heavy smoke damage, suggesting that the fire smoldered for some time. The heaviest smoke is on the first floor with smoke dissipating the higher up the interior you go. Some exterior damage eis present caused by the firefighting efforts as well as flame when the front storefront windows broke.

**SUBROGATION:** None. It apparently is the case that the fire originated in an electrical outlet box in the first floor liquor store, in the entry area. Discussion with the tenant, Mr. Dhiru Patel, indicates that there had been no electrical work done to the interior of the first floor, to his knowledge, during his entire occupancy which has been for approximately 8 years.

Your insured has also indicated to this writer that he has no recollection of any

electrical repair to the building since his ownership.

Your C & O investigation has been given, by your office, to Mr. Gary Hahn of Fire Analysis Consulting Group, who we met on site and have been incontact since.

**DRAFT REQUESTS:** None at this time

**INVESTIGATION / ADJUSTMENT:** The insured has contracted with Booth Insurance Restorations to effect repairs. It should be noted that Booth has recently taken on many of the employees from Mid-Atlantic Restoration, which you may already be familiar with.

We prepared our estimate for required repairs, which is attached. Initially, we were going to provide it to the insured to begin the process of reaching an agreed repair price. Admittedly, this is a preliminary estimate as we suspect some additional damages particularly in the area of electrical damages. Before we provided our estimate to the insured, he advised that he had made a selection in contractors; Booth Insurance Restorations. Booth Construction initially sent a scope only estimate to our attention, in early July after much delay. It was not until July 27th that we received the enclosed estimate from them, which contained any pricing. As the insured was most anxious by this time to proceed with repairs, we conducted a quick review and comparison of the estimates and have sent our estimate to the insured's contractor informing him that we do not have an agreed price.

We have asked the insured's contractor to review our estimate and to contact our office so that we can weed through the differences and to reach an agreed price. We sent our estimate to the insured's contractor on July 29th and as of this date, have had no response.

The insured's tenant is being represented by a public adjusting firm, Young Adjustment Company. We have discussed some particular aspects of the loss with their representative, Bruce Horowitz, specifically the responsibility of the liquor store equipment and displays. These include safety glass partition walls, counters, shelving and built in cooler. It is the opinion of the tenant's representative that all of these items are the tenants and covered under his improvements & betterments coverage.

We have also secured a copy of the tenants Agreement of Sale, when he purchased the liquor store from your insured's previous tenant. This agreement specifically states that the shelving and coolers are part of the sale. It is our position, in agreement with the tenant's PA that as the tenant had not abandoned

DR 0370



the store and intends to return, these items pertinent to the operation of the liquor store are indeed part of the tenant's responsibility.

The tenant is insured with Montgomery Insurance Group represented by Property Loss Consultants of Baltimore, Maryland. We have provided them with a copy of the Agreement of Sale as well as our opinion on their responsibility for coverage of the liquor store items. Their previous position was that they only insured the tenant's stock and nothing was covered under improvements and betterments.

**RESERVES:** It is suggested that reserves be set, as follows:
DWELLING: $50,000.00
LOSS of RENTS: $2,000.00

**SUGGESTED ACTIVITY / REMARKS**: At this point, we await the insured's contractor to contact us concerning the reaching of an agreed repair figure. We have been discussing reaching this point with them for over 30 days. This company seems unorganized and confused and we have contacted the owner of Booth Insurance Restoration of our displeasure with the people who are in charge of this project and their lack of effort in promptly acting on our requests to reach an agreed price.

Please diary your file 15 days anticipating that someone from Booth will contact us.

Sincerely,



George Powell
GEP:moc

DR 0371