# EXHIBIT X

Not Reported in A.2d                                                                                                                            Page 1
Not Reported in A.2d, 2001 WL 392237 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Lord v. Peninsula United Methodist Homes, Inc.
Del.Super.,2001.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware.
Deborah L. LORD, Plaintiff,
v.
PENINSULA UNITED METHODIST HOMES, INC., Defendant.
**No. Civ.A. 97C-10-012.**

Submitted Jan. 15, 2001.
Decision April 12, 2001.

Jeremy W. Homer, Parkowski Noble & Guerke, P.A., Dover, Delaware, for Plaintiff.
Barry M. Willoughby, Young Conaway Stargatt & Taylor, LLP, Georgetown, Delaware, for Defendant.

*MEMORANDUM OPINION*
GRAVES, J.
**\*1** This is an action arising from the termination of Deborah L. Lord ("Lord") from employment with the Defendant, Peninsula United Methodist Homes, Inc. ("PUMH"). Pending before the court is PUMH's motion for summary judgment.

NATURE AND STAGE OF THE PROCEEDINGS

On October 17, 1997, Lord filed a Complaint against PUMH and her supervisor at the time, Linda Souder ("Souder"), containing six counts related to her discharge from Methodist Manor House ("Manor House"), a retirement facility in Seaford, Delaware, which PUMH operates. On December 8, 1997, PUMH and Souder filed a motion to dismiss the Complaint pursuant to Super. Ct. Civ.R. 12(b)(6). This Court dismissed the Complaint on all counts. Lord appealed the dismissal to the Delaware Supreme Court. That Court upheld this Court's dismissal of all Lord's claims except for her claims of promissory estoppel and fraud, and remanded the case for further proceedings. *Lord v. Souder,* Del.Supr., 748 A.2d 393 (2000). All claims against Souder were dismissed and as a result, Souder is no longer a party to this litigation.

PUMH has filed a Motion for Summary Judgment on Lord's claims of promissory estoppel and fraud under Super. Ct. Civ. R. 56(b). In addition, PUMH seeks summary judgment on each of Lord's claims under the after-acquired evidence doctrine. This Court is now called upon to decide PUMH's motion.

STATEMENT OF FACTS

Lord was an administrative secretary at Manor House. For approximately ten years prior to her discharge, Lord worked part-time at Manor House performing a variety of administrative tasks, including personnel functions such as preparation of the payroll. At all times relevant to this litigation, Souder was the Executive Director of the facility, and Phillip D. Hagermann ("Hagermann") was PUMH's Vice-President of Human Resources.

Lord alleged that during the course of her employment at Manor House she learned that Souder was using her position as Executive Director for improper personal purposes. Specifically, Lord learned that Souder:
a. Misappropriated certain belongings of deceased residents of the Manor House; for example by directing staff to move such belongings to Souder's automobile;
b. Took funds from the Manor House petty cash drawer for her personal use;
c. Charged personal long-distance phone calls to the Manor House;
d. Utilized the Manor House Food Service for impermissible personal use, including dinners consumed off-site and food provided in conjunction with the graduation party of Souder's daughter;
e. Utilized the Manor House automobile for personal use.

Lord maintains that her position was eliminated because she reported Souder's inappropriate conduct

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to PUMH's Human Resources Director, Hagermann, in August of 1996.

Prior to Lord's discharge, Hagermann encouraged her to explain to him what she knew about Souder's activities. He also asked Lord for names of other employees who knew about those activities. Lord provided the information requested by Hagermann after she sought assurances from him that she would be protected from any reprisals by Souder. Lord has a firm recollection of receiving assurances from Hagermann that she would be protected from reprisals, and Hagermann admitted that he told Lord the information would be kept confidential. However, he denies that he offered her *carte blanche* protection from termination.

**\*2** Hagermann did not keep the information supplied by Lord confidential. He related the information to the president of PUMH, Richard Stazesky ("Stazesky"), including the names of witnesses Lord provided. In addition, Hagermann wrote Stazesky a memorandum confirming the conversation. In response to Lord's information, Stazesky personally interviewed the other employees Lord named as having knowledge of Souder's improper practices. PUMH eventually determined that Souder had engaged in improper conduct, reprimanded her, and directed her to cease such practices.

Lord alleges that as a result of PUMH's reckless dissemination of the information she provided to Hagermann, Souder learned, or began to suspect, that Lord was the upper management's source of such information. On or about March 6, 1997, Lord was informed that she was being discharged because her position was being eliminated for budgetary reasons, however she believes that her termination was retribution for "blowing the whistle" on Souder. At the time of Lord's discharge, no other Manor House employee was discharged for budgetary reasons.

PUMH states that during discovery for this case it learned that Lord had, in anticipation of litigation, photocopied personnel documents belonging to Manor House and removed them from the premises. PUMH considered this conduct so egregious as to warrant termination and notified Lord by letter dated August 25, 2000, that had it been aware of her actions at the time, three years prior, she would have been immediately dismissed.

DISCUSSION

Summary judgment may be granted only when no material issues of fact exist, and the moving party bears the burden of establishing the non-existence of material issues of fact. *Moore v. Sizemore,* Del.Supr., 405 A.2d 679, 680 (1979). Once the moving party meets its burden, then the burden shifts to the non-moving party to establish the existence of material issues of fact. *Id.* at 681.Where the moving party produces an affidavit or other evidence sufficient under Super. Ct. Civ. R. 56 in support of its motion and the burden shifts, then the non-moving party may not rest on its own pleadings, but must provide evidence showing a genuine issue of material fact for trial.Super. Ct. Civ. R. 56(e); *Celotex Corp. v.. Catrett,* 477 U.S. 317, 322-323 (1986). If, after discovery, the non-moving party cannot make a sufficient showing of the existence of an essential element of his or her case, then summary judgment must be granted. *Burkhart v. Davies,* Del.Supr., 602 A.2d 56, 59 (1991), *cert.den.,*112 S.Ct. 1946 (1992); *Celotex Corp. v. Catrett,supra.*If however, material issues of fact exist or if the Court determines that it does not have sufficient facts to enable it to apply the law to the facts before it, then summary judgment is inappropriate. *Ebersole v. Lowengrub,* Del.Supr., 180 A.2d 467, 470 (1962).

Promissory Estoppel

In order to prevail on a promissory estoppel theory plaintiffs must show (1) that a promise was made, (2) that it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee, (3) that the promisee relied on the promise and took action to his detriment, and (4) that such promise is binding because injustice can be avoided only by enforcement of the promise.
**\*3** *Keating v. Board of Education of the Appoquin-*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

imink School District, Del. Ch., C.A. No. 12589, Jacobs, V.C. (November 3, 1993) at 6. A party asserting an estoppel claim in the employment context has the burden of proving it by clear and convincing evidence. *Nat'l Fire Ins. Co. v. Eastern Shore Laboratories, Inc.,* Del.Super., 301 A.2d 526, 529 (1973). To rise to the level of 'clear and convincing', the evidence must be "clear, precise, unmistakable and free from serious doubt."*Ramada Inns, Inc. v. Dow Jones & Co., Inc.,* Del.Super., C.A. No. 83C-AU-56, Poppiti, J., (March 31, 1988).

"As to the first requirement, 'the making of a promise,' [Lord] must prove by clear and convincing evidence that an actual promise or definite assurance in promissory form was made. Whether such a promise was made, however, is a question of fact necessarily determined by a jury."*Konitzer v. Carpenter,* Del.Super., C.A. No. 92C-07-067, Cooch, J. (December 29, 1993) at 23.

Lord has convincingly established that, at the very best, there is a material factual dispute as to whether or not a promise was made. Lord contends that Hagermann promised her protection from any reprisals by Souder if Lord gave him information pertaining to Souder's improper activities, while Hagermann testified that he merely assured Lord that any information she provided would be kept confidential. Taking the facts in the light most favorable to Lord, it appears that, by her testimony, Lord has provided evidence sufficient to meet her burden of establishing the existence of a material factual dispute concerning whether a promise was made.[FN1]

>   FN1. PUMH offers *Shuttleworth v. Abramo,* Del. Ch., C.A. No. 11650, Allen, C. (February 6, 1992) as authority for its claim that Lord's uncorroborated testimony alone does not rise to the level of "clear and convincing" evidence. ("In *Shuttleworth,* the court held that, in applying the clear and convincing standards at the summary judgment stage, the court would not rely on the plaintiff's uncorroborated testimony alone."(Defendant's Opening Brief at 12)). In fact, *Shuttleworth* states the following at 8:
>   "To be clear and convincing, such testimony likely would need some corroboration. (Cite omitted). However, not having heard it, I cannot rule out the possibility that it will be clear and convincing at trial. I accordingly conclude that Plaintiff's evidence as to this element of her claim-although apparently weak-is strong enough to withstand a motion for summary judgment."

Because PUMH does not dispute that Hagermann intended to use the promise of confidentiality to persuade Lord to discuss Souder's activities, the Court need not address the second element of promissory estoppel.

PUMH further contends that Lord's promissory estoppel claim must fail because she cannot produce evidence to show that her reliance on Hagermann's promise was reasonable, and that she took action to her detriment. However, the Supreme Court, after reviewing this case, specifically found that, "Hagermann was reasonably viewed as an authority figure upon whom Lord could rely to insure that Peninsula, her employer, would prevent Souder from making any reprisals against her."*Lord v. Souder,* Del.Supr., 748 A.2d 393, 399 (2000). Hagermann was acting in his professional capacity when he sought information from Lord. Lord maintains that she provided information about Souder only after securing assurances from Hagermann that she would not be fired as a result of her participation in the investigation into Souder's conduct. There is evidence that would allow a jury to find that Lord reasonably relied on Hagermann's promise to her detriment.

PUMH next argues that Lord cannot show a causal connection between her interview with Hagermann and her discharge from employment at Manor House, therefore the interview with Hagermann was not detrimental to her, and her promissory estoppel claim must fail. PUMH argues that Hagermann thoroughly questioned Souder when she sug-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

gested eliminating Lord's position for budgetary reasons. He was satisfied that Souder's motives for discharging Lord were based not on revenge, but on legitimate budgetary concerns. Lord casts doubt on PUMH's reasoning for her termination by asserting that out of Manor House's approximately 200 employees, she was the only person laid off due to concern for the budget. However, PUMH avers that employees at other facilities owned by it were similarly discharged, and some vacated positions were left unfilled.

**\*4** A jury may use circumstantial evidence in evaluating the propriety of the events surrounding the dismissal of an employee. *Bobson v. Lifestyle Resorts, Inc.,* Del.Supr., 599 A.2d 411 (1991)(*"Bobson"*). (Motion for judgment n.o.v. ruled to have been erroneously granted where plaintiff presented some evidence, however weak, that his dismissal was the result of tortious interference with a contract.) Again, I believe that Lord has sufficiently established a material factual dispute concerning the motives behind her discharge from Manor House and whether the conversation she had with Hagermann was to her detriment.

Finally, PUMH argues that Lord's promissory estoppel claim must fail because she cannot show that injustice can be avoided only by enforcement of Hagermann's alleged promise. PUMH points out that Lord was independently dismissed from her position after Hagermann discovered that she had copied confidential employee records for her own personal use,[FN2] and that since leaving PUMH, Lord returned to school and has secured employment paying more than twice the compensation she received at Manor House. Lord argues that manifest injustice was established when she was fired from her job because, at Hagermann's request, she provided information about Souder's inappropriate activities, but was not protected from reprisals as Hagermann assured her she would be.

> FN2. PUMH argues that Lord's conduct with respect to unauthorized photocopying of confidential documents was so egregious as to independently warrant her dis-

missal. This argument will be addressed in the Court's analysis of the after-acquired evidence doctrine and its applicability to the instant case.

"Promissory estoppel may arise where the party to be estopped has promised to do an act in the future, although unsupported by consideration, if it was intended that the promise be relied upon, and if a refusal to enforce it would be virtually to sanction the perpetration of a fraud or would result in injustice."*U.S. Borax & Chem. Corp. v. Szmokaluk,* Del.Super., No. 66 C.A.1977, Taylor, J. (June 23, 1981) at 17. It appears that a reasonable jury could find that an injustice occurred when PUMH guaranteed Lord that her information on Souder would be kept confidential, then failed to keep that promise, and as a result, Souder took retaliatory action against Lord. Whether or not this scenario occurred is a factual dispute for a jury to determine. As the Supreme Court stated, "[t]he principal policy reason for the application of the doctrine [of promissory estoppel] to the employment-at-will context is the prevention of unfairness. [Citation omitted.] That interest is served here by applying promissory estoppel under the standards which attend that doctrine under Delaware law."*Lord v. Souder,* 748 A.2d at 400.

This Court finds that Lord has presented evidence sufficient to raise a material factual dispute on each of the required elements of promissory estoppel outlined above, and therefore denies PUMH's motion for summary judgment with regard to this claim.

PUMH argues that in the event Lord's promissory estoppel claim moves forward, then the Court should rule that punitive damages may not be awarded on the claim. The Court declines to address the issue of damages at this stage of the litigation.

### Fraud

**\*5** As explained in *Stephenson v. Capano Development, Inc.,* Del.Supr., 462 A.2d 1069, 1074 (1983):
At common law, fraud (or deceit) consists of:
(1) A false representation, usually one of fact, made

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

by the defendant;
(2) the defendant's knowledge or belief that the representation was false or was made with reckless indifference to the truth;
(3) an intent to induce the plaintiff to act or to refrain from action;
(4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
(5) damage to the plaintiff as a result of such reliance.

Fraud is never presumed, and must be proven by a preponderance of the evidence. *Nye Odorless Incinerator Corp. v. Felton,* Del.Super., 162 A. 504, 510-511 (1931). If the plaintiff has not made a sufficient showing on any essential element of a fraud claim, the defendant will be entitled to summary judgment on the claim. *In re Asbestos Litig. Spong Trial Group,* Del.Super., C.A. No. 90C-10-72, Gebelein, J. (June 2, 1993). The first, third and fourth elements of fraud, listed above, have been previously addressed in the analysis of the promissory estoppel claim. Therefore, the Court need only determine further if there is a factual dispute concerning 1) whether Hagermann made a representation to Lord that was knowingly false, or made with reckless indifference to its truth, and 2) if Lord's reliance on the representation caused her to suffer damage.

The Court finds that there are material factual questions as to whether Hagermann's representations were made with a reckless indifference to the truth at the time they were made. According to Lord, Hagermann assured her that she would be protected against reprisals from Souder. Hagermann testified that he had no policy of protection and never would have made such an offer to Lord, but he does admit that he promised to keep the information confidential. Hagermann thereafter relayed the information supplied by Lord to Stazesky. Clearly a material factual dispute exists as to whether or not Hagermann ever intended to protect Lord or even to keep in confidence the information she provided about Souder's improper practices. Lord has presented enough evidence to create a question of material fact on this element of fraud. *Bobson v. Lifestyle Resorts, Inc.,supra.*

I conclude that Lord has established a material factual dispute concerning whether she suffered damages as a result of her reliance on Hagermann's representation. PUMH states that Lord was discharged solely for budgetary reasons and that discussing Souder with Hagermann had nothing to do with the elimination of her position. PUMH claims that Lord has not provided evidence to show that her discharge occurred for any other reason. That none of the other approximately 200 employees of Manor House were laid off, that PUMH less than three months before the termination considered Lord an essential employee, and that Souder's behavior towards Lord changed after the conversation with Hagermann provide evidence supporting Lord's contention she was fired for disclosing the information regarding Souder. *SeeId.*Lord's deposition testimony establishes facts to support a finding that her conversation with Hagermann directly triggered the deterioration of her working relationship with Souder and resulted in the termination of her employment at Manor House. *SeeId.*Lord stated,

**\*6** Mrs. Souder never would have treated me the way she treated me. We were very respectful of one another. I got along extremely well. She was extremely pleased with my work. And from the time that I spoke to Mr. Hagermann, that all changed. Up and above the fact that she indicated to Ann that I had talked to Reverend Stazesky when in fact I hadn't; I talked to Mr. Hagermann. There was a reason that all of those incidents that you noted that happened between Linda [Souder] and I happened. We had gotten along tremendously well until the point when I spoke to Mr. Hagermann.

(Appendix to Defendant's Opening Brief, p. A87.) Lord testified, in essence, that were it not for her detrimental reliance on Hagermann's hollow promise of protection or confidentiality, Souder would not have fired her. Examining this claim in the light most favorable to Lord, this Court finds that Lord's loss of employment constitutes damage she suffered as a result of her reliance on Hagermann's promise. The Court denies PUMH's motion for summary judgment on Lord's claim of fraud.[FN3]

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN3. PUMH's heavy reliance on *Scott-Douglas Corp. v. Greyhound Corp.,* Del.Super., 304 A.2d 309 (1973), for its argument denying the existence of fraud on the part of Hagermann is misplaced. In that case, the Court applied the law of Michigan, not Delaware, to determine if fraud could be established under the facts.

After-Acquired Evidence Doctrine

PUMH's final contention is that all of Lord's claims are barred by the after-acquired evidence doctrine. Because the Delaware Supreme Court has not yet sanctioned the use of the after-acquired evidence doctrine, PUMH relies principally on *Schiavello v. Delmarva Systems Corp.,* D. Del., 61 F.Supp.2d 110 (1999)(*"Schiavello"*) as support for its argument. In *Schiavello,* the Court held that where an employee has engaged in resume fraud, the after-acquired evidence doctrine affords an employer a complete defense if the employer would not have hired the employee if it had known of the fraud. The Court reasoned that under ordinary contract principles, agreements entered into in reliance upon material misrepresentations are voidable.

PUMH argues that it learned through discovery that Lord, anticipating litigation, had secretly copied and removed a number of confidential documents belonging to Manor House and containing sensitive personnel information about her coworkers. PUMH further claims that it considered Lord's conduct so egregious as to warrant her termination and notified Lord by letter dated August 25, 2000, that had it been aware of her actions at the time, she would have been immediately dismissed.

The "after-acquired evidence doctrine" appears to have a very short history in Delaware's jurisprudence. In *Davenport Group MG, L.P. v. Strategic Inv. Partners,* Del. Ch., 685 A.2d 715 (1996)(*"Davenport"*) the Chancery Court held that a partnership's limited partners had enough evidence of wrongdoing to remove the general partner. The Court reasoned that "even if misleading information prompted [the limited partners'] removal of [the general partner], time proved their decision to be both correct and properly executed. Their later knowledge of [the general partner's] violation of the Limited Partnership Agreement vitiates any problems which 'misleading' information may have caused initially." *Id.* at 723.The Court further stated that " 'after-acquired' but factually undisputed information alone may support the removal of the General Partner."*Id.*

**\*7** Obviously, neither *Schiavello* nor *Davenport* are factually similar to the instant case. *Schiavello* involves pre-hire resume fraud, and *Davenport* deals with a breach of partnership agreement. In *McNaboe v. NVF Co.,* D. Del., C.A. No. 97-558-SLR, Robinson, J. (March 20, 2000) (*"McNaboe"*), the District Court held that the lower Delaware court decisions which have applied the after-acquired evidence doctrine have done so in the context of breach of contract actions, but not in the employment context. Specifically, the Court cites to *Eastern Elec. & Heating, Inc. v. Pike Creek Prof'l Ctr.,* Del.Super., C.A. Nos. 85L-AP-21, 85L-MY-1, 85C-MR-79, O'Hara, J. (April 7, 1987) (after-acquired evidence used to assess liability in a breach of construction contract action) and *Davenport.*The Court states, "[n]either case ....can be said to support the defendant's assertion that the doctrine acts as a complete bar to recovery in an action involving breach of an employment contract."*Id.* at 57.*McNaboe* makes no mention of *Schiavello* in its opinion.

Viewing the facts in the light most favorable to Lord, this Court will not grant summary judgment in PUMH's favor based upon the after-acquired evidence doctrine. Even if this Court were to find that the doctrine is applicable to the matter *sub judice,* which this Court expressly declines to do at this time, a grant of summary judgment under the doctrine is only appropriate in the absence of a material factual dispute concerning whether Lord's actions warranted independent dismissal. Lord argues that because Hagermann had never before "independently dismissed" an employee despite twenty years of personnel work, and waited three years to do so in this case, a reasonable jury could

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

find that the letter of independent dismissal was purely a strategic defense concocted by PUMH's attorney. Lord also points out that although PUMH claims to have found her conduct "egregious", she was entitled to possess and control the documents in question, and she did not breach their confidentiality by showing them to a third party. Lord questions whether PUMH, a company that tolerated Souder's numerous appropriations of company property for personal use, would have actually dismissed Lord for copying documents which she claims were legitimately entrusted to her. This Court finds that a reasonable jury could find Lord's argument compelling and therefore declines to grant summary judgment in PUMH's favor under the after-acquired evidence doctrine.

CONCLUSION

The Court denies PUMH's Motion for Summary Judgment because Lord has presented evidence which if taken in the light most favorable to her, as it must be, could lead a reasonable jury to find in her favor on the claims of promissory estoppel and fraud. Also, there exists a material factual dispute whether PUMH would have actually dismissed Lord for copying personnel files, which prevents the Court from examining, at this stage of the litigation, whether the after-acquired evidence doctrine is applicable to this case. For the foregoing reasons, the Court denies PUMH's Motion for Summary Judgment on all counts.

**\*8** IT IS SO ORDERED.

Del.Super.,2001.
Lord v. Peninsula United Methodist Homes, Inc.
Not Reported in A.2d, 2001 WL 392237 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.