**EXHIBIT Y**

Not Reported in A.2d                                                                                                          Page 1
Not Reported in A.2d, 2000 WL 1211135 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Dial v. AstroPower, Inc.
Del.Super.,2000.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
James DIAL and Valerie Dial
v.
ASTROPOWER, INC.
**No. 98C-08-150-WTQ.**

Submitted June 8, 2000.
Decided June 20, 2000.

*RE: Letter Opinion and Order on Defendant's Motion for Summary Judgment-MOTION GRANTED in part and DENIED in part*
QUILLEN, J.

Dear Mr. Lank and Ms. Cheek:

**\*1** This is the Court's Letter Opinion and Order on Defendant AstroPower, Inc.'s Motion for Summary Judgment. The Court has permitted AstroPower to file the current Motion for Summary Judgment at the completion of discovery in this case. The Motion has been considered without the benefit of oral argument. For the reasons stated herein, Summary Judgment is GRANTED on behalf of AstroPower as to the insurance claims precluded by ERISA. Summary Judgment is DENIED in part and GRANTED in part as to other claims that AstroPower breached an implied covenant of good faith and fair dealing. Summary Judgment is DENIED as to Mr. Dial's claims concerning promissory estoppel, negligent misrepresentation, and fraud.

*FACTS*

This case concerns the hiring and subsequent firing of Plaintiff James Dial by AstroPower, Inc. ("AstroPower"). James Dial was living in Nevada with his wife Valerie when he received a call from his friend and former co-worker James Emming. At that time, it appears that Mr. Dial was semi-retired and was not looking for work. Dial Dep. at 92. Mr. Emming asked Mr. Dial if he would like to come East to work for AstroPower to help the company in acquiring silicon wafers. In February of 1996, AstroPower created a management position for Mr. Dial. His job entailed purchasing silicon wafers for the solar cells AstroPower manufactures. Mr. Dial was given a starting salary of $50,000 per year, a benefits package, relocation expenses, and stock options. Mr. Dial, however, did not have a written employment contract with AstroPower.

Mr. Dial claims that he stated to his friend, James Emming, that he did not want to work for another ten years. Rather, Mr. Dial states he told Mr. Emming that he just wanted to work two or three more years. Dial Dep. at 40. There is, however, no written confirmation regarding the promised duration of Mr. Dial's employment. *Id.* at 93.

Mr. Dial and his wife proceeded to move across the country so that Mr. Dial could work for AstroPower. Such a move required his wife to relinquish her employment and related benefits. Allegedly, Mrs. Dial was told by an employee of AstroPower that her benefits package was in place and was effective immediately upon Mr. Dial's employment. Apparently, there was a waiting period before insurance coverage was effective. But based on the AstroPower employee's representation of immediate coverage, Mrs. Dial did not take advantage of COBRA coverage from her former employer.

Mr. Dial's employment did not go well with AstroPower. Allegedly, Mr. Dial had trouble finding the silicon wafers for which he was looking. *Id.* at 98.Mr. Dial stated that when he did find the wafers, many suppliers did not want to deal with AstroPower because the company had a poor reputation for paying their bills. *Id.* at 99.Mr. Dial also alleges that AstroPower was unwilling to pay a premium price for the material. *Id.* at 10.

A few months after he began employment began with AstroPower, Mr. Dial was fired, allegedly be-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

cause AstroPower could not acquire enough silicon wafers to increase production. Mr. Dial states that his termination was improper because there were silicon wafers available, but not at a price AstroPower was willing to pay. After terminating Mr. Dial's employment, AstroPower paid for the Dials' move back to Nevada, gave Mr. Dial severance pay, and paid the cost of the Dials' apartment lease here on the East Coast. Mr. Dial lost his health benefits as a result of his firing but was offered COBRA coverage.

**\*2** Mr. and Mrs. Dial filed suit against AstroPower, claiming that AstroPower breached the implied covenant of good faith and fair dealing when AstroPower terminated Mr. Dial's employment after only four months. The Dials also asserted claims for misrepresentation and fraud against AstroPower.

Prior to the completion of discovery in this case, AstroPower filed a Motion for Summary Judgment against Mr. and Mrs. Dial. On December 20, 1999, this Court denied AstroPower's Motion, and allowed Mr. Dial to proceed on his claims of misrepresentation, fraud, and breach of the implied covenant of good faith and fair dealing.[FN1] On January 18, 2000, this Court denied AstroPower's Motion to Reargue. In the January 18, 2000 Opinion, this Court stated: "[i]n short, the present record is too thin for fire, but it passes the smoke test. Presumably, the smoke will disappear or the fire will erupt during discovery."

> FN1. On March 13, 2000, this Court allowed the Plaintiffs to amend the Complaint. The Amended Complaint adds an additional claim for promissory estoppel. Dkt. No. 19.

AstroPower has again filed a Motion for Summary Judgment, claiming that: 1) the Dials' benefit related claims are barred by ERISA because ERISA claims preempt State law relating to an employee benefits plan; 2) that the Dials cannot assert a promissory estoppel claim because there were no promises made by AstroPower representatives; 3) that the Dials' misrepresentation and good faith and fair dealing claims are barred by a recent Delaware Supreme Court decision; and 4) that Mrs. Dial does not have standing to pursue claims based on statements allegedly made to Mr. Dial regarding their medical benefit plan.

*STANDARD OF REVIEW*

When considering a Motion for Summary Judgment, the Court's function is to examine the record to determine whether genuine issues of material fact exist. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.,* Del.Super., 312 A.2d 322, 325 (1973). If, after viewing the record in a light most favorable to the non-moving party, the Court finds that there are no genuine issues of material fact, Summary Judgment will be appropriate. *Id.* Summary Judgment will not be granted if the record indicates that a material fact is in dispute or if it seems desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances. *Ebersole v. Lowengrub,* Del.Supr., 4 Storey 463, 180 A.2d 467 (1962).

*DECISION*

*I. ERISA Claims*

In its current Motion, AstroPower argues that the Plaintiffs' claims as to misrepresentations regarding the employee health insurance claims are barred by ERISA. In *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 95 (1987), the United States Supreme Court held that an employee cannot assert a common law cause of action which relate to an employee benefit plan because ERISA's preemption clause has an "expansive sweep." *Id.* at 47.[FN2] AstroPower claims that the Dials' claims were not raised under ERISA and are therefore preempted.

> FN2. Under ERISA, unless the common law cause of action falls under an exception to the preemption clause, it is preempted. *Id.* at 48. Plaintiffs have not brought before the Court any exception where the common law claims could be asserted under ERISA.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Case 1:05-cv-00428-JJF   Document 65-27   Filed 11/19/2007   Page 4 of 8
Page 3
Not Reported in A.2d, 2000 WL 1211135 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Here, the Plaintiffs are, in part, asserting claims for breach of the implied covenant of good faith and fair dealing, fraud, misrepresentation, and promissory estoppel based on AstroPower telling Mrs. Dial that there would be immediate health insurance benefit coverage for both her and her husband. Because of that representation, Mrs. Dial chose not to exercise her COBRA coverage through her former employer and allegedly incurred $311 in medical expenses for claims rejected during the waiting period for coverage.[FN3] *See* Dkt. No. 32, Ex. 5. While AstroPower should have accurately told the Dials when coverage would be effective, this claim is barred because of the expansive sweep of the ERISA preemption clause. Therefore, Summary Judgment on this limited point, as to both Mr. and Mrs. Dial,[FN4] is GRANTED. IT IS SO ORDERED.[FN5]

> FN3. The Court to notes that the Dials were eventually covered by the AstroPower insurance and they were also granted the option of COBRA coverage when Mr. Dial was fired.
>
> FN4. Additionally, Mrs. Dial seeks recovery in this action for alleged misrepresentations made to her husband under theories of promissory estoppel and negligent misrepresentation. While the Court is sympathetic that Mrs. Dial had to leave her job and move East with her husband, there were no representations made to her concerning the employment. The only representations made to her concerned the health care coverage. Therefore, because no employment representations were made to her, she must be dismissed from this lawsuit. IT IS SO ORDERED. If Mrs. Dial's position was recognized, there would be almost limitless possibilities for contractual liability.
>
> FN5. While the Court understands that Mr. Dial had a heart condition and his wife passed on an opportunity to get COBRA health coverage from her former employer when they left Nevada, such conduct by AstroPower does not rise to the level of a breach of the implied covenant of good faith and fair dealing. The fact is that the Dials did receive coverage eventually.

## II. Implied Covenant of Good Faith and Fair Dealing

**\*3** Our law provides a heavy presumption that a contract for employment, unless otherwise expressly stated, is at-will in nature, with an indefinite duration. *Merrill v. Crothall-American, Inc.,* Del.Supr., 606 A.2d 96, 102 (1992). Just this year, the Delaware Supreme Court reaffirmed that Delaware is an at-will employment State. *See Lord v. Souder,* Del.Supr., 748 A.2d 393 (2000). Indeed, the at-will employment rule authorizes discharge of an employee at any time without cause. *Id.* at 400. There are, however, exceptions to the employment at-will doctrine, but those exceptions are narrow and discrete. *See id.* at 403. The covenant of good faith and fair dealing is one of those limited exceptions to the employment at-will doctrine. *Id.* at 400. There are now four exclusive categories where the covenant of good faith and fair dealing exception can undercut the application of the at-will employment doctrine. *See id.* at 401. These exclusive[FN6] categories are:

> FN6. I recognize that three wise Chancellors formed the Supreme Court panel in the *Lord* case and they "believe[d] that finding the categories to be exclusive is the better approach." But I note that while the implied covenant of good faith and fair dealing is necessarily narrowly defined, and particularly so in the employment at-will context, it is generally recognized (Restatement (Second) of Contracts § 205; Uniform Commercial Code, 6 *Del. C.* § 2-103(1)(b)) and certainly has equitable features. It is hard to define equitable concepts by fixed categories. Compare the much criticized case of *Leonard v. Hart,* N.J. CT. Err. & App., 42 N.J. Eq. 416, 7 A. 856 (1886).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

i. where the termination violated public policy;
ii. where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one;
iii. where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and
iv. where the employer falsified or manipulated employment records to create fictitious grounds for termination.

*Id.* (citing *E.I. DuPont de Nemours v. Pressman,* Del.Supr., 678 A.2d 436, 441-44 (1996)).

To begin with, there is nothing in this case that shows that Mr. Dial's termination was violative of any public policy consideration. And there is no showing here that the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service. *See Dial v. AstroPower, Inc.,* Del.Super., C.A. No. 98C-08-150, Quillen, J. (Dec. 20, 1999), Slip Op. at 4.

This Court has previously held that there was an issue of fact as to whether the employer falsified or manipulated the record to create fictitious grounds to terminate the employee. Mr. Dial was hired in the position of "Manager, Silicon Wafers." *Id.* Mr. Dial's termination latter indeed stated: "[d]ue to the decreased availability of feedstock ... we are terminating your employment as of today."AstroPower 6/11/96 Letter, Dkt. No. 7, Ex. B. There certainly were silicon wafers available; Mr. Dial found wafers to buy from a company in California. But even Mr. Dial recognized that there was a bit of a problem getting the wafers AstroPower needed for its manufacturing process. Dial Dep. at 99. Mr. Dial testified that he called "everywhere in the world to find somebody who had wafers."*Id.* at 12.When wafers were found, AstroPower did not want to pay the money necessary to acquire them. *Id.* at 100.Mr. Dial found more material, but it was at too high a price. *Id.* at 10-13.Mr. Dial's affidavit represents that he was terminated due to the unavailability of feedstock material (Dkt. No. 11, Ex. 1) when his termination letter actually stated that he was released due to the "decreased availability of feedstock material." Looking at all of the facts in totality, firing Mr. Dial because of the decreased availability of feedstock material is not, as a matter of law, a situation where fictitious grounds were used to terminate an employee.[FN7] All parties seem to agree that AstroPower could not seem to acquire the amount of silicon wafers at the price it wanted, and certainly it is clear from the deposition testimony that quantities of the wafers were scarce. *See* Allen M. Barnett Aff. ¶ 3. In any event, whether Mr. Dial was fired due to the unavailability or decreased availability of feedstock material, as a matter of law, the employer did not create fictitious grounds for termination of Mr. Dial in breach of the implied covenant of good faith and fair dealing. Thus, Summary Judgment on this point is GRANTED. IT IS SO ORDERED.

> FN7. In the December 20, 1999 Opinion, this Court relied on the affidavit of Mr. Dial who stated that the reason for his June 1996 termination was the "unavailability of feedstock material." Unfortunately, when the original Motion was filed, the Court did not have the benefit of the same deposition testimony that the Court now has. Mr. Dial's testimony, when read in conjunction with his termination letter, leads the Court to conclude as a matter of law that no fictitious grounds were used to terminate him.

**\*4** The Court in this Motion must also determine whether the employer misrepresented an important fact and the employee relied thereon to accept a new position. In the December 20, 1999 Opinion in this case, this Judge held: "[i]t is doubtful that the current record supports such an aggravated degree of misrepresentation."*Id.* In the current Motion, it appears the Plaintiffs claim that the implied covenant of good faith and fair dealing was breached by two separate misrepresentations. First, the Plaintiffs claim that Mr. Dial was given a promise for employment of three years, which was a misrepresentation because the company only employed him for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00428-JJF     Document 65-27     Filed 11/19/2007     Page 6 of 8

Not Reported in A.2d    Page 5
Not Reported in A.2d, 2000 WL 1211135 (Del.Super.)
(Cite as: Not Reported in A.2d)

four months. Second, Mr. Dial claims that he was not informed by AstroPower that the company was having financial problems, and he made decisions based on the company's misrepresentations of its financial status.

As to the first point, Mr. Dial claims that AstroPower implied that he would be hired for a period of three years, when he was employed for only four months. An employer may not in good faith knowingly allow an employee to assume that the duration of a contract is indefinite, when it is, in secret contemplation of the employer, of limited duration. *Merrill,* 606 A.2d at 102.[FN8] In this case, it clear that neither AstroPower nor Mr. Dial thought Mr. Dial's employment would last for an indefinite period of time. Mr. Dial states that he told AstroPower that he only wanted to take a position until the normal retirement age of 65. It is Mr. Dial's representation that he was assured that his acceptance of a position with AstroPower for three and a half years would fit in with AstroPower's plans and his plans for employment. Dial Aff. ¶ 13, Dkt. No. 11, Ex. 1; Plaintiffs' Ans. to Defendant's Interrogatories at 2, Dkt. No. 35, Ex. B. In his deposition, Mr. Dial stated:

> FN8. In *Merrill,* the Delaware Supreme Court recognized that the implied covenant of good faith and fair dealing applies to employment contracts. In that case, an employer hired a manager into a position. The manager was subsequently fired and brought suit against the employer, claiming a breach of the implied covenant of good faith and fair dealing. The allegation was that the employee was only hired into the position for a period of time until the employer could find a more qualified candidate for the position. In fact, the employee's eventual successor was interviewed two days after he was hired. Under that factual background, the Supreme Court allowed the employee's claim to survive a Motion for Summary Judgment. *Id.* at 102. The factual situation in this case is certainly different from the factual situation in *Merrill.*

A. I said, "Jim, you know, I'm here in Nevada. I don't want to work for another ten years. I just want to work two or three years to retirement."[Jim Emming] says, "They have a new process out in back that Alan is in charge of that is going to revolutionize the world about silicone [sic]." And he said it would take about that length of time to come on and therefore you would not be needed to buy silicone [sic] wafers because this process that he was doing would replace silicone [sic] wafers. I said, "Hey, that's great." So he implied that yea, you can do it for three years. I think he talked-according to him he talked to George, and I'm not sure if he talked to Alan. He said he did. I don't know. About me coming there for that short time.
Q. And by a short time, you meant what?
A. Two or three years, until my retirement age.
Q. And in your mind, what was retirement age?
A. Sixty-five.
Q. So getting back to the first conversation you had with Mr. Emming about the job, you told Mr. Emming you just wanted to work for a few years until retirement?
A. Yes.

Dial Dep. at 40-42, Dkt. No. 32, Ex. 3. Mr. Dial also testified that:***5** Q. Are you contending in this case that Jim Emming made a promise to you that AstroPower would continue to employ you until you were 65 years old?
A. He didn't promise. Not the word promise, no.
Q. Are you contending that Jim Emming deliberately lied to you about whether AstroPower would continue to employ you until you were 65?
A. No, I'm saying that Jim Emming said that the job would be two or three years long because it would-they would not need me probably at the end of three years. The materials that they were developing were coming off the line at that time, not that long. So I assumed and he assumed that the job would be two or three years.

Dial Dep. at 2-3, Dkt. No. 32, Ex. 3.

As Mr. Dial's testimony indicates, he assumed that the job would be for three years (*Id.* at 2-3) but there was no verbal or written statement that used

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the word "promise" to indicate that he would be hired for three years. Furthermore, Mr. Dial did not ask for a written contract, nor did he receive any confirmation that he would have the job until the age of 65. *Id.* at 93.Thus, the question then simply becomes whether there was an implied promise made that Mr. Dial was going to be hired for a limited period of time. And, whether or not there was an implied term of employment seems to be a question of fact. Additionally, if the jury determines that an implied promise was made, then the jury should also determine the duration of the promise for employment. If there was an implied term, this would be a situation where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one, in breach of the implied covenant of good faith and fair dealing. *See Lord, supra.*It may be that good faith and fair dealing here is a mere gloss to support the existence of a contract term for a term of employment. It seems best to hear the evidence. If a trier of fact determines that there was no implied promise, then Mr. Dial was an at-will employee and cannot recover from AstroPower. Thus, this is an issue of fact which precludes Summary Judgment and Summary Judgment on this point is DENIED. IT IS SO ORDERED.

Mr. Dial also makes a vague argument that there was somehow a violation of the implied covenant of good faith and fair dealing because AstroPower misrepresented its financial condition to him. The fact that other companies allegedly did not want to sell AstroPower silicon wafers because AstroPower apparently had problems in paying its bills cannot create a duty on AstroPower to disclose to a prospective employee its financial status. Certainly the at-will employment doctrine would be substantially eroded if a company has to disclose its financial relationship with other companies to potential employees before making hiring decisions. Simply, a failure to disclose this information before hiring Mr. Dial does not rise to the level of a breach of the implied covenant of good faith and fair dealing because there was no duty to disclose AstroPower's financial relationships with Mr. Dial prior to hiring him. Summary Judgment on this point is GRAN-

TED. IT IS SO ORDERED.

### III. Promissory Estoppel

**\*6** Plaintiffs in this case were permitted to amend the Complaint to include a claim of promissory estoppel. In Delaware, in order to assert a claim for promissory estoppel, one must show, by clear and convincing evidence, that:
i. a promise was made;
ii. it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee;
iii. the promisee reasonably relied on the promise and took action to his detriment; and
iv. such promise is binding because injustice can be avoided only by enforcement of the promise.

*Lord,* 748 A.2d at 399;*Hinman v. Red Clay School District,* Del.Super., C.A. No. 98C-08-253, Quillen, J. (Nov. 10, 1999).

As stated *infra,* it appears best to let the jury determine whether or not there was a definite assurance or an implied promise made by AstroPower that Mr. Dial would be hired for a definite period of time. There is a factual determination yet to be made which precludes a grant of Summary Judgment. Therefore, Summary Judgment on this point is DENIED.[FN9] IT IS SO ORDERED.

> FN9. Mrs. Dial's claims for promissory estoppel concerning representations made to her concerning employee benefits are, however, barred under ERISA.

### IV. Misrepresentation

In order to sustain a claim for negligent misrepresentation under Delaware law, one must prove:
i. a pecuniary duty to provide accurate information;
ii. the supplying of false information;
iii. the failure to exercise reasonable care in obtaining or communicating information;
iv. a pecuniary loss caused by justifiable reliance upon the false information.

*Outdoor Technologies Inc. v. Allfirst Financial*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Inc., et al.,* Del.Super., C.A No. 99C-09-151, Quillen, J. (Jan. 24, 2000), Slip Op. at 6.

The independent claims of fraud and negligent misrepresentation mirror claims for breach of the covenant of good faith and fair dealing, at least in this employment at will situation. *Dial,* Super., C.A. No. 98C-08-150 (Dec. 20, 1999). This Court has also stated: "[t]here is a substantial question in my mind whether, in an employment at will situation, a cause of action for negligent misrepresentation can lie."*Id.*

While this Judge still questions whether or not a cause of action for negligent misrepresentation can lie, in light of the interrelatedness of the claims and the holdings already discussed herein, there may be a question of fact as to whether there was a negligent misrepresentation made via an implied promise. If there was not an implied promise, the negligent misrepresentation claims, like the others, will fall by the way side. But, for now, it seems best to DENY Summary Judgment on this point. IT IS SO ORDERED.

### *V. Fraud*

AstroPower also seeks Summary Judgment on the fraud claims asserted by the Plaintiffs. A party claiming common law fraud must prove:

i. a false representation, usually one of fact, made by the defendant;

ii. the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;

iii. an intent to induce the plaintiff to act or to refrain from acting;

**\*7** iv. the plaintiff's action or inaction taken in justifiable reliance on the representation; and

v. damage to the plaintiff as a result of such reliance.

*Lord,* 748 A.2d at 402;*Stephenson v. Capano Development Corp.,* Del.Supr., 462 A.2d 1069, 1074 (1983); *Nye Odorless Incinerator Corp. v. Felton,* Del.Super., 5 W.W.Harr. 236, 162 A. 504, 510-11 (1931).FN10

FN10. In her brief in this case, Ms. Cheek argued that the *Lord* decision barred a claim for fraud in this case. Ms. Cheek withdrew that argument in a June 7, 2000 letter to this Court.

In this case, there is a factual determination to be made as to whether the Defendant knew or believed that any representations made to Dial were false, or whether those statements were made with reckless indifference for the truth. It may be more difficult to prove actual fraud than mere breach of contract, but nothing is grained by forcing that decision now. Therefore, the Dials have stated a claim for common law fraud and Summary Judgment on the fraud claim is DENIED. IT IS SO ORDERED.

### *CONCLUSION*

In sum, it appears that the jury should determine the factual matters remaining in this case. For the foregoing reasons, Summary Judgment is GRANTED on behalf of AstroPower as to the insurance claims under ERISA. Summary Judgment is DENIED in part and GRANTED in part as to claims that AstroPower breached the implied covenant of good faith and fair dealing. Summary Judgment is DENIED as to Mr. Dial's claims concerning promissory estoppel, negligent misrepresentation, and fraud.

Del.Super.,2000.
Dial v. AstroPower, Inc.
Not Reported in A.2d, 2000 WL 1211135 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.