**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LAYNE DREXEL, : | |
| : | |
| Plaintiff, : | |
| : | C.A. No. 05-00428 (JJF) |
| v. : | |
| : | Jury Trial Demanded |
| HARLEYSVILLE INSURANCE CO., : | |
| : | |
| Defendant. : | |

*Plaintiff's Reply Brief in Support of his Motion for Summary Judgment*

SMITH, KATZENSTEIN & FURLOW LLP
Kathleen M. Miller (No. 2898)
Robert K. Beste, III (No. 3931)
Post Office Box 410
Wilmington, Delaware 19899
Telephone:   (302) 652-8400
Facsimile:   (302) 652-8405
Email:         rkb@skfdelaware.com

*Attorneys for plaintiff*

November 29, 2007

04343|BRF|10034268.WPD

*Table of Contents*

**Page**

Table of Authorities .................................................... ii

Argument ............................................................ 1

    I.      The Policy Is Clear and Unambiguous—Harleysville Failed
           to Give the Required Ten Days Advance Notice of Cancellation ....... 1

    II.     Harleysville Failed to Explain Why Drexel's Interpretation of the
           Policy Is Not Reasonable and, Consequently, the Court Should Apply
           Drexel's Reasonable Interpretation under the Principle of Contra
           Proferentem ................................................ 4

    III.    Drexel Has Established that the Nonpayment Provision and
           the Annual Invoice Constituted a Hidden Trap which Delaware
           Law Refuses to Enforce ...................................... 6

Conclusion ........................................................ 8

*Table of Authorities*

**Cases**                                                                                      **Page**

*Hallowell v. State Farm Mutual Automobile Insurance Co.*,
    443 A.2d 925 (Del. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*New Castle County v. National Union Fire Insurance Co.*,
    174 F.3d 338 (3rd. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*State Farm Mutual Automobile Insurance Co. v. O'Brien*,
    535 P.2d 46 (Ariz. Ct. App. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6–7

*State Farm Mutual Automobile Insurance Co. v. Mundorf*,
    650 A.2d 215 (Del. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2–3, 5, 7

*Whistman v. West American of the Ohio Casualty Group of Insurance Cos.*,
    686 P.2d 1086 (Wash. Ct. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6–7

*Argument*

In Drexel's[1] Opening Brief in Support of his Motion for Summary Judgment ("***Opening Brief***" or "***OB***"), he established that no material facts are in dispute and that he is entitled to summary judgment as a matter of law. (D.I. 63) Drexel established the only fact necessary for summary judgment—Harleyville did not cancel his insurance coverage with the ten days advance notice required under the Policy. Because Drexel demonstrated that no disputes of material fact prevent summary judgment, the burden shifted to Harleysville to affirmatively show that a material fact is in dispute. It failed to do so. In fact, Harleysville neither attempted to show that it gave Drexel sufficient advance notice of cancellation nor set forth a basis for its position in the Policy's language. As such, Drexel is entitled to judgment as a matter of law.

**I.     *The Policy Is Clear and Unambiguous—Harleysville Failed to Give the Required Ten Days Advance Notice of Cancellation***

As explained in the Opening Brief, the Policy contains a Nonpayment Provision which required Harleysville to provide advance notice "10 days before the effective date of cancellation" before it canceled Drexel's policy for any "nonpayment of premium."[2] In response, Harleysville did not argue that it gave the required notice, but instead argued that Drexel Policy "expired" for "nonpayment of premium" outside the purview of the Nonpayment Provision. Harleysville, however, fails to mention a single provision or phrase in the Policy which causes that result. Moreover, Harleyville failed to explain why the

---

[1]     Capitalized terms not defined herein have the meaning ascribed to them in the Opening Brief.

[2]     *See* OB, Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least: a. *10 days before the effective date of cancellation* if we cancel *for nonpayment of premium . . . .*").

Annual Invoice, which it asserts Drexel failed to pay in a timely fashion, expressly stated that a late premium payment only gives Harleysville the *right* to "issue[] . . . a notice of cancellation for nonpayment of premium," rather than cause automatic "expiration."[3]

Instead of discussing the Policy at issue, or any of its language, Harleyville points to *State Farm Mutual Automobile Insurance Co. v. Mundorf*, 650 A.2d 215 (Del. 1995) (and a general insurance treatise) and asks the Court to rewrite the Policy to include definitions of "cancellation" and "expiration." Of course, the Court should refuse that invitation and apply the Policy as written. *See*, *e.g.*, *New Castle County v. Nat'l Union Fire Ins. Co.*, 174 F.3d 338, 343 (3rd. Cir. 1999). Harleysville's repeated citations to *Mundorf* are curious, because the Delaware Supreme Court rejected the precise argument Harleysville advances here. The assigned risk policy at issue in *Mundorf* contained a provision nearly identical to the Nonpayment Provision,[4] and the policy failed to distinguish between "cancellation" and "expiration" events. As in *Mundorf*, the Policy here contains only one provision relating to "nonpayment," and the Policy fails to distinguish between "cancellation" and "expiration" events. The Delaware Supreme Court refused to do precisely what Harleysville asks this Court to do here, namely insert such a distinction into its Policy:

> [W]e conclude that the Plan *clearly and unambiguously* mandates that an insurer send its insured a notice of cancellation when the insured *fails to renew by nonpayment of premium*. Whereas Section 3905(b) specifically excepts the insurer from its duty to give notice to the insured when the insured fails to renew for nonpayment of premium, *the Plan makes no such*

---

[3]    OB, Ex. F at 2.

[4]    *Compare Mundorf*, 659 A.2d at 219 ("If the premium is not received by the company by the due date specified, the policy may be cancelled by mailing . . . a notice of cancellation to be effective no sooner than the tenth day following the date of notice."), *with* OB, Ex. B at 481 ("We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least . . . 10 days before the effective date of cancellation if we cancel for nonpayment of premium . . . .").

> *exception. In fact, the Plan makes no distinction between "cancellations" and "nonrenewals." The decision to omit a provision is deemed to be purposeful. . . .*
>
> *If the Insurance Commissioner intended such a distinction with respect to assigned risk policies, she could have easily so provided. The distinction may not be drawn judicially, however, in the absence of such a clearly expressed intention by the Insurance Commissioner. . . .*
>
> *The Plan states that any attempt by an insurer to terminate an assigned risk policy for nonpayment of premium will be ineffective "unless notice of cancellation for nonpayment is mailed to the named insured." It is not the function of the court to read into, or carve out, exceptions to a clearly-worded legislative or regulatory enactment.*

*Id.* at 220 (emphasis added). As in *Mundorf*, the inclusion of the Nonpayment Provision in the Policy is fatal to Harleysville's argument that the Policy "expired" outside the purview of the Nonpayment Provision, and the Court should apply the Policy as written. Despite repeated citations to *Mundorf*, defendant fails to discuss this critical aspect of the opinion.

Harleysville makes several other curious statements in its answering brief that deserve brief attention. For example, Harleysville argues that "[t]he policy contains a cancellation provision which is required by Delaware law . . . [and which] relates only to cancellations." (D.I. 64 at 3) That assertion, which Harleysville fails to support with citation to any authority, appears to be inaccurate, because Delaware law does not set forth any such requirement. Harleysville also states that "it is undisputed that the policy was not cancelled for non premium [*sic*]." (D.I. 64 at 3). As Drexel understands the present dispute, that is the very question before the Court. Finally, Harleysville attempted to distinguish *Whistman v. West American of the Ohio Casualty Group of Insurance Cos.*, 686 P.2d 1086 (Wash. Ct. App. 1984) by arguing that "Harleysville did not state it was cancelling the policy." (D.I.

64 at 3) Harleysville's employees, however, *repeatedly* made that very statement.[5] Besides, close examination of *Whistman* reveals that decision is directly on-point and not distinguishable from this matter in any significant respect. *See*, *e.g.*, *Whistman*, 686 P.2d at 1088–89 ("*The reference to 'premium' is not limited to premiums paid during the term of insurance and reasonably could be read as including premiums due in order to effect renewal. . . .* [W]e construe the policy language here as requiring West to give 10 days notice prior to cancellation for failure to pay a renewal premium.  Since West's notice of cancellation was not effective prior to the date of the fire loss, that loss is covered by the policy.") (emphasis added).

Based on the reasons explained in Drexel's Opening Brief, and those set forth herein, Drexel respectfully requests that the Court apply the Nonpayment Provision and the Policy as they are written and hold that Harleysville failed to cancel coverage before the fire.

**II.     *Harleysville Failed to Explain Why Drexel's Interpretation of the Policy Is Not Reasonable and, Consequently, the Court Should Apply Drexel's Reasonable Interpretation under the Principle of Contra Proferentem***

In its answering brief, Harleysville fails to establish that Drexel's interpretation of the Policy, and particularly the Nonpayment Provision, is not a reasonable interpretation of the language at issue.  Instead, Harleysville appears to argue that its interpretation of the language is more reasonable than Drexel's interpretation.  This approach, however, ignores well-established legal principles requiring the Court to construe an insurance policy against

---

[5]     *See*, *e.g.*, OB, Ex. J ("This policy is cancelled and will not be reinstated."), Ex. K ("According to our records your policy was cancelled for non-payment of premium."), Ex. L ("The policy confirmed cancellation on 7/6/04 effective for 6/30/04."), Ex. M ("The captioned policy was cancelled for non-payment and we have no intention of reinstating coverage."), Ex. N ("[I] told [Drexel] according to the information] we have, policy was cancelled due to non payment.), Ex. O ("This policy has been cancelled Flat Rate for the following reason: Non-Payment.").  At a minimum, Harleysville's assertion that "[t]here certainly was no confusion on the party [*sic*] of Harleysville" is not accurate in any respect.

04343|BRF|10034268.WPD                                              -4-

the insurer as long as the Drexel can present a reasonable interpretation of the language at issue. *See*, *e.g.*, *Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 926 (Del. 1982) ("[A] doctrine has emerged in insurance law which, in essence, states that an insurance policy should be construed 'to effectuate the reasonable expectations of the average member of the public who buys it . . . .'") (citation omitted).

Drexel established in his Opening Brief that a reasonable interpretation of the Nonpayment Provision requires Harleysville to give ten days advance notice before cancellation. In its brief, Harleysville even appears to confirm that Drexel's interpretation is reasonable by confirming that a late premium payment only gives it the right to issue a notice of cancellation: "Plaintiff was informed that those amounts had to be received on the due date in order to avoid a notice of cancellation for non payment of premium." (D.I. 64 at 3) If the Court applies Drexel's interpretation, it will find that Drexel's insurance coverage continued on the date of the fire, because Harleysville failed give notice of cancellation ten days before the fire.

Drexel's interpretation has been accepted and applied by at least three separate courts, including the Delaware Supreme Court. *See Mundorf*, 659 A.2d at 219–20; *Whistman*, 686 P.2d at 1088–89; *State Farm Mut. Auto. Ins. Co. v. O'Brien*, 535 P.2d 46, 48 (Ariz. Ct. App. 1975) ("The appellant's contention that the policy automatically expired at the end of the policy period is clouded by that clause which states that cancellation for nonpayment shall not occur without prior notice."). Drexel submits that, standing alone, the fact that three courts accepted and applied Drexel's interpretation of the Nonpayment Provision establishes, as a matter of law, that Drexel's interpretation is reasonable. Moreover, in the context of this case (where this Court must apply Delaware law), Drexel submits that the Delaware

Supreme Court's opinion in *Mundorf* conclusively establishes that his interpretation of the Nonpayment Provision is a reasonable interpretation which should be applied by this Court. *See Mundorf*, 659 A.2d at 220 ("[W]e conclude that the Plan clearly and unambiguously mandates that an insurer send its insured a notice of cancellation when the insured fails to renew by nonpayment of premium.").

For the reasons explained his Opening Brief and herein, Drexel respectfully requests that the Court apply his reasonable interpretation of the Nonpayment Provision under the principle of *contra proferentem*.

**III.    *Drexel Has Established that the Nonpayment Provision and the Annual Invoice Constituted a Hidden Trap which Delaware Law Refuses to Enforce***

In its answering brief, Harleysville states that Drexel "has not explained why he is a victim or why there was a trap." Again, this statement is curious because Drexel explained in his Opening Brief how, if the Court were to hold the Policy "expired" outside the operation of the Nonpayment Provision, the Nonpayment Provision and the Annual Invoice operated as a trap by falsely describing the potential impact of a late premium payment. To restate, the Nonpayment Provision expressly informed Drexel that Harleysville will provide ten days advance notice if the Policy is cancelled for "nonpayment of premium." The Policy fails to explain, or even hint, that Harleysville interpreted that provision to apply only to mid-term premium payments and not annual premium payments. *See* OB, Ex. B, *passim*. It is reasonable, therefore, to interpret the Nonpayment Provision as applying to any premium payment. *See Mundorf*, 659 A.2d at 219–20; *Whistman*, 686 P.2d at 1088–89; *O'Brien*, 535 P.2d at 48.

Moreover, the Annual Invoice stated that late payments gave Harleysville only the right to cancel, with advance notice, and provided no indication the Policy would "expire" if the premium payment was late. *See* OB, Ex. F ("Minimum due shown on the front of this invoice must be received by [Harleysville] on or before the due date show *to avoid issuance of a notice of cancellation for nonpayment of premium*.") (emphasis added).

Under these circumstances, the Nonpayment Provision and the Annual Invoice constituted a hidden trap which Delaware courts refuse to enforce. *See Hallowell*, 443 A.2d at 926 ("In recent decades, a doctrine has emerged in insurance law which, in essence, states that an insurance policy should be construed 'to effectuate the reasonable expectations of the average member of the public who buys it . . . .'") (citation omitted); *id.* ("As a general rule, . . . an insurance contract is construed strongly against the insurer, and in favor of the insured, because the insurer drafted the language that is interpreted."); *id.* at 928 ("Therefore, we hold that the doctrine of reasonable expectations is applicable in Delaware to a policy of insurance only if the terms thereof are ambiguous or conflicting, or if the policy contains a hidden trap or pitfall, or if the fine print purports to take away what is written in large print.).

*Conclusion*

The plain, unambiguous language of the Policy required Harleysville to give notice at least ten days prior to the fire at issue in order for it to deny coverage. It cannot make that showing, and Drexel is entitled to summary judgment for that reason. Further, even if Harleysville comes forward with an alternate, but reasonable, interpretation of the language at issue, the Court should apply the principle of *contra proferentem* and construe the policy in Drexel's favor.

SMITH, KATZENSTEIN & FURLOW LLP

   */s/ Robert K. Beste*
Kathleen M. Miller (No. 2898)
Robert K. Beste, III (No. 3931)
Post Office Box 410
Wilmington, Delaware 19899
Telephone:  (302) 652-8400
Facsimile:  (302) 652-8405
Email:       rkb@skfdelaware.com

*Attorneys for plaintiff*

November 29, 2007