IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LAYNE DREXEL,                          :
                                       :
        Plaintiff,                     :
                                       :
    v.                                 : Civil Action No. 05-428-JJF
                                       :
HARLEYSVILLE INSURANCE CO.,            :
                                       :
        Defendant.                     :

Robert Karl Beste, III, Esquire, SMITH, KATZENSTEIN & FURLOW, Wilmington, Delaware.

Attorney for Plaintiff.

Stephen P. Casarino, Esquire, CASARINO, CHRISTMAN & SHALK, P.A., Wilmington, Delaware.

Attorney for Defendant.

**MEMORANDUM OPINION**

February 11, 2008
Wilmington, Delaware.

*Joseph J. Farnan Jr.*
Farnan, District Judge.

Presently before the Court are Defendant's Motion for Summary Judgment (D.I. 60) and Plaintiff's Motion for Partial Summary Judgment (D.I. 62). For the reasons discussed, Plaintiff's Motion for Partial Summary Judgment (D.I. 62) will be denied, and Defendant's Motion for Summary Judgment (D.I. 60) will be granted in part, and denied in part.

### Nature and State of the Proceedings

Plaintiff, Layne Drexel ("Mr. Drexel") filed this action in Delaware State Court on May 29, 2005, alleging that Defendant, Harleysville Mutual Insurance Company ("Harleysville"), had breached its insurance contract with Mr. Drexel by refusing to provide coverage for property damage for a fire loss that occurred on June 22, 2004. Mr. Drexel also asserted claims for promissory estoppel, and breach of the implied covenant of good faith and fair dealing, seeking attorneys' fees, costs and prejudgment interest. Harleysville removed the matter to this Court on June 24, 2005 on the basis of diversity of citizenship.

Both parties filed motions for summary judgment on October 31, 2007. Harleysville moved for summary judgment on all of Mr. Drexel's claims, while Mr. Drexel moved for summary judgment on his breach of contract claim and his claim for attorneys' fees and costs.

**Factual Background**

Mr. Drexel, a Delaware resident, owned property located at 1740 West Fourth Street, Wilmington, Delaware ("the property"). As a result of a fire on June 22, 2004, the property sustained heavy damages. (D.I. 63 at 1.) Beginning in June 1999, Mr. Drexel insured the property with Harleysville under Commercial Package Policy No. MPA 912988 ("the Policy"). Under the Policy, Mr. Drexel was allowed the option of paying the Policy's premium annually, or in biannual, quarterly or nine-month installments.

On March 26, 2004, Harleysville sent Mr. Drexel a "Premium Invoice" ("the Invoice") for renewal of the Policy from June 2004 to June 2005. The Invoice required payment by June 8, 2004, and states:

> Minimum due shown on the front of this invoice must be received by the company on or before the due date shown to avoid issuance of a notice of cancellation for nonpayment of premium. If a cancellation notice issues, all amounts past due plus the current installment must be paid to reinstate your policy. You make also be required to pay an additional service fee. The company must receive this payment before the cancellation date.

(D.I. 61 at Exh. A.) Contemporaneously, Harleysville issued its annual policy form to Mr. Drexel, which states, "[we] renew this policy for the period [June 8, 2004 to June 8, 2005] in return for your payment of the premium." (D.I. 63 at Exh. B.)

Mr. Drexel did not make any payments to Harleysville, and, on June 15, 2004, Harleysville mailed him a "Notice of Policy

2

Expiration," notifying him that Harleysville had not received his premium payment, and that his insurance coverage had expired on June 8, 2004.¹ (D.I. 61 at Exh. B.) The Notice further stated that continuous protection was possible if the past due amount was received by Harleysville before the extended due date of June 30, 2004, 12:01 a.m.² (Id.) Harleysville did not receive payment from Mr. Drexel by June 30, 2004, and on July 7, 2004, a "Confirmation of Termination" was sent to Mr. Drexel which advised that his policy had expired on June 8, 2004 because Mr. Drexel had not accepted Harleysville's renewal offer.³

Harleysville ultimately received Mr. Drexel's payment on July 13, 2004. Mr. Drexel dated the check June 6, 2004. Harleysville has an automatic processing system for the receipt of checks: all checks are deposited in the bank on the date received, and payment activity is then entered into the billing

---

¹Harleysville's company procedures allow for a five-day grace period. Accordingly, after Mr. Drexel's policy expired on June 8, 2004, Harleysville allowed him five additional days before mailing him the "Notice of Policy Expiration," which was prepared on June 14, 2004. (D.I. 61, Exh. F at 28-30.)

²It is undisputed that Mr. Drexel received this Notice because he returned the bottom portion of the Notice with his eventual payment on July 13, 2004. (D.I. 61 at 4.)

³The "Notice of Policy Expiration" allowed Mr. Drexel until June 30, 2004 to pay his premium, plus the five-day grace period. Therefore, when Mr. Drexel did not pay his premium by July 5, 2004, the Confirmation of Termination was automatically generated, and mailed to Mr. Drexel on July 7, 2004. (D.I. 61, Exh. F at 28-30.)

3

system overnight. The following morning, the system identifies any issues regarding billing, and these issues are brought to the attention of Harleysville's Policy Support Services Department. (D.I. 65, Exh. L at 15-16.) On July 14, 2004, Harleysville's records indicated that Mr. Drexel's account had been terminated on June 8, 2004, and a check was issued to Mr. Drexel remitting the amount he had paid towards his premium. Harleysville mailed this check to Mr. Drexel, along with a letter indicating that his policy had been cancelled and would not be reinstated, on July 14, 2004.

Mr. Drexel reported the damages to the property resulting from the June 22, 2004 fire to his Harleysville agent, S.T. Good ("Mr. Good"), on or about June 22, 2004. Mr. Good notified Harleysville of the loss, and the case was assigned to Sherry Clodfleter ("Ms. Clodfleter") in the Harleysville claims department on June 22, 2004. Ms. Clodfleter checked Mr. Drexel's coverage, and his policy was listed as "active," since the loss occurred during the period encompassed by the Notice of Policy Expiration mailed to Mr. Drexel on June 15, 2004, which allowed Mr. Drexel until June 30, 2004 to remit payment of the premium to ensure continuous coverage.

Because Mr. Drexel's policy was listed as "active," Ms. Clodfleter began to adjust the loss by retaining the services of an independent claims adjuster, and, ultimately, a contractor.

4

The claims adjuster and the contractor reached a final agreement as to the cost of repairs to the property on August 13, 2004. However, on August 13, 2004, Harleysville determined that Mr. Drexel's Policy had expired on June 8, 2004, and refused to pay Mr. Drexel's claim.

## Parties' Contentions

Harleysville contends that it is entitled to summary judgment on all of Mr. Drexel's claims. First, Harleysville contends that Mr. Drexel's Policy lapsed because he failed to timely renew, and his insurance coverage terminated prior to his loss. Harleysville also contends Mr. Drexel cannot establish waiver or estoppel, and summary judgment is therefore appropriate on these claims, as well.

Mr. Drexel contends that he is entitled to summary judgment on his breach of contract claim because Harleysville failed to provide ten-days notice of cancellation as required by the Policy's nonpayment provision. Mr. Drexel also contends that, even if Harleysville can set forth another reasonable interpretation of the Policy's nonpayment provision, <u>contra proferentem</u> requires that the Court give effect to Mr. Drexel's reasonable interpretation of the Policy language. Mr. Drexel contends that, if the Court finds with Harleysville that Mr. Drexel's Policy had expired, the nonpayment provision constitutes a "hidden trap or pitfall," which Delaware courts will not

enforce. Finally, Mr. Drexel contends that, if the Court determines that Harleysville was required to provide coverage for the loss resulting from the June 22, 2004 fire, he is entitled to attorneys' fees and costs.

## Legal Standard

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. Valhal Corp. v. Sullivan Assocs., Inc., 44 F.3d 195, 200 (3d Cir. 1995).

However, a court should not make credibility determinations or weigh the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to

6

the extent that that evidence comes from disinterested witnesses." Id. at 151 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts. . . . In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)(internal citations omitted). However, the mere existence of some evidence in support of the non-movant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-movant on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. Id.

### Discussion

A.  *Mr. Drexel's Breach of Contract Claim*

Mr. Drexel contends that the Policy's provision regarding nonpayment for cancellation governs this dispute. This provision states, in relevant part:

    2.    [Insurer] may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least: (a) 10 days before the effective date of cancellation if we cancel for nonpayment of premium...
    4.    Notice of cancellation will state the effective

7

>  date of cancellation. The policy period will end on that date.

(D.I. 63 at Exh. B.) Mr. Drexel contends that because Harleysville did not provide written notice of cancellation of the Policy by June 12, 2004 (10 days before the loss occurred), he is entitled to coverage under the Policy. In response, Harleysville contends that the Policy's provision regarding notification of cancellation does not apply here, where the Policy expired due to Mr. Drexel's failure to timely pay the renewal premium when it became due.

As stated by Williston, "[c]ancellation involves an ending of the agreement *prior to the stated expiration date* by the act of one of the parties, and is an abrogation of that part of the contract that remains unperformed." 17 Williston on Contracts § 49:129 (4th ed.)(emphasis added). There is an obvious difference between expiration of a policy and cancellation of a policy:

> The right to cancel [is] distinct from a policy's lapse, or expiration by its own terms. When by the terms of the policy all coverage, or certain coverage, terminates upon the occurrence of a specified event, the termination of coverage is not a matter of cancellation but is merely a question of the duration of the risk provided by the policy. Cancellation must be distinguished from termination of the policy under its own terms since in the latter case, notice is not generally required.

2 Couch on Ins. § 30:2.

Mr. Drexel had subscribed to Harleysville's Policy for several years, and the Court thus finds it unlikely that he was

8

unaware that the Policy required annual renewal. The Invoice sent by Harleysville in March 2004 indicates that it regarding Mr. Drexel's "06/05 Commercial Package," and that the minimum due amount must be received by Harleysville by June 8, 2004. Mr. Drexel, however, failed to make a payment by June 8, 2004, and a Notice of Policy Expiration was issued which allowed Mr. Drexel through June 30, 2004 to pay his premium and ensure continuous coverage. The Notice states that Mr. Drexel's coverage expired on June 8, 2004, and that, in order to receive continuous coverage, Mr. Drexel was required to make payment by June 30, 2004, 12:01 a.m. But Mr. Drexel did *not* make any payments to Harleysville by June 30, 2004, failing to take advantage of Harleysville's offer for continuous coverage. In fact, Harleysville did not receive *any* payments from Mr. Drexel until almost *two weeks* after the June 30, 2004 deadline. Mr. Drexel's failure to make timely payments on his Policy caused it to lapse; Harleysville did not cancel the Policy for nonpayment.

Accordingly, the Court finds that Mr. Drexel was not covered by the Policy from June 8, 2004 to June 30, 2004, as he failed to comply with Harleysville's offer for continuous coverage as set forth in the Notice of Policy Expiration.[4] The Court will grant

---

[4] Since the Court does not find the Policy's provision regarding cancellation for nonpayment to be ambiguous, the rule of contra proferentem does not apply. Nor does the Court find that the nonpayment provision creates a "hidden trap or pitfall," as Mr. Drexel contends.

Harleysville's motion for summary judgment on Mr. Drexel's breach of contract claim.[5]

B.  *Mr. Drexel's Promissory Estoppel, Estoppel and Waiver Claims*

Harleysville contends that it is entitled to summary judgment on Mr. Drexel's claims for promissory estoppel, estoppel and waiver because Mr. Drexel was fully aware that had not paid his premium in a timely manner, as evidenced by the fact that he back-dated his check for payment of the premium.  Harleysville also contends that Mr. Drexel cannot establish waiver because Harleysville did not make payment on the claim with knowledge that the Policy had been terminated.  Mr. Drexel contends that triable issue of material fact preclude the Court's entry of summary judgment on these claims.

In order to succeed on a claim for promissory estoppel, a plaintiff must prove (i) the making of a promise; (ii) with the intent to induce action or forbearance based on the promise; (iii) reasonable reliance; and (iv) injury.  <u>Brooks v. Fiore</u>, No. 00-803, 2001 WL 1218448, at *5(D.Del., Oct. 11, 2001)(<u>quoting</u>

---

[5]Mr. Drexel has argued that a new contract was formed when he sent his premium payment to Harleysville, and it deposited his check on July 13, 2004.  The Court concludes that no new contract was formed by Mr. Drexel's payment.  Harleysville's offer for renewal of insurance coverage under the terms of the existing Policy expired on June 30, 2004, and Mr. Drexel therefore cannot have accepted Harleysville's offer almost two weeks later.  Further, on July 14, 2004, upon realizing that Mr. Drexel's Policy had expired, Harleysville immediately issued Mr. Drexel a check in the amount of his premium payment.

Scott-Douglas Corp. v. Greyhound Corp., 304 A.2d 309, 319 (Del.Super. 1973). Mr. Drexel has set forth evidence sufficient to establish triable issues of fact as to whether the actions of Harleysville's Claims Department constituted promises to pay on his fire damage claim, and as to whether Mr. Drexel was reasonably entitled to rely upon any alleged promises by Harleysville in light of the fact that he back-dated his premium check by several weeks.[6] Thus, the Court will deny Harleysville's motion for summary judgment on Mr. Drexel's estoppel claim.

## CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Partial Summary Judgment (D.I. 62) will be denied, and Defendant's Motion for Summary Judgment (D.I. 60) will be granted in part, and denied in part.

An appropriate order will be entered.

---

[6]To the extent that Mr. Drexel advances arguments regarding waiver and equitable estoppel, the Court finds triable issues of fact exist with regard to those issues as well, and accordingly trial is required.

11